IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

**Criminal Action No. 20-cr-00305-DDD**

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. **MICHAEL AARON TEW**;

2. **KIMBERLEY ANN TEW**; and
a/k/a Kimberley Vertanen

3. **JONATHAN K. YIOULOS**,

    **Defendants.**

---

GOVERNMENT'S MOTION FOR INQUIRY REGARDING
JOINT REPRESENTATION PURSUANT TO
FEDERAL RULE OF CRIMINAL PROCEDURE 44

---

The United States of America, by Assistant United States Attorneys Hetal J. Doshi and Matthew T. Kirsch, hereby moves this Court to inquire about the propriety of joint representation pursuant to Federal Rule of Criminal Procedure 44. This issue is ripe as Tor Ekeland has recently entered an appearance on behalf of both Michael Aaron Tew and Kimberley Ann Tew. *See* Dkt. 106.

Procedural Background

1.    On February 3, 2021, the defendants were charged by an indictment that alleged violations of Title 18, United States Code, Sections 1343, 1349, 1956(h), and 1957, and Title 26, United States Code, Section 7203. Dkt. 83. The indictment alleges, in part, that Mr. Tew and Mrs. Tew, along with Mr. Yioulos, were engaged in a conspiracy to commit wire fraud, *see* Count 1, and that they

1

were engaged in a scheme to defraud, *see* Counts 2-40. *Id.* Mrs. Tew is charged with some, but not all, of the executions of the scheme to defraud alleged in Counts 2-40. Mr. and Mrs. Tew are also separately charged with a conspiracy to commit money laundering, Count 41, and each of them is charged with individual substantive counts of violation of 18 U.S.C. § 1957.

2.       At their respective initial appearances, arraignments, discovery conferences, and detention hearings, Mr. Tew was represented by Tom Ward and Mrs. Tew was provisionally represented for only those hearings by Jamie Hubbard. Until February 25, 2021, no lawyer was entered as counsel of record for Mrs. Tew.

3.       On February 26, 2021, Mr. Ekeland filed an entry of appearance on behalf of both Mr. Tew and Mrs. Tew. *See* Dkt. 106.

4.       The government has conferred by telephone call with Mr. Ekeland, who does not oppose the narrow issue of a request for a Federal Rule of Criminal Procedure Rule 44 inquiry.

## Attorney Conflict of Interest

5.       Defendants in criminal cases are guaranteed the right to counsel, including "the right to representation that is free from conflicts of interest." *United States v. Williamson*, 859 F.3d 843, 851 (10th Cir. 2017) (internal quotation marks omitted). "A conflict of interest is 'a division of loyalties that affected counsel's performance.'" *Id.* (quoting *Mickens v. Taylor*, 535 U.S. 162, 172 n.5 (2002)). The government has "a duty to alert the court to defense counsel's *potential* and actual conflicts of interest." *United States v. Schneider*, 704 F.3d 1287, 1293 (10th Cir. 2013) (citing *United States v. McKeighan*, 685 F.3d 956, 966 (10th Cir. 2012) (emphasis in *Schneider*).

6.       One type of potential conflict that can arise is from joint representation where "more than one codefendant is represented by the same attorney." *Williamson*, 859 F.3d at 851. "Joint representation occurs when . . . the defendants are represented by the same counsel . . . ." Fed. R.

Crim. Pro. 44(c)(1)(B).  Joint representation creates a tension between the defendant's right to be represented by their attorney of choice and the institutional interest of the courts and the public in ensuring that verdicts are just and legal proceedings appear fair to all who observe them.  *See generally Wheat v. United States*, 486 U.S. 153 (1988).  Joint representation also implicates the Sixth Amendment right to counsel.  In *Wheat*, the Supreme Court held that the "essential aim" of the Sixth Amendment "is to guarantee an effective advocate for each criminal defendant rather than ensure that a defendant will inexorably be represented by the lawyer whom he prefers."  *Id.* at 159.

7.   Contemplating the tension that is created by joint representation, Federal Rule of Criminal Procedure 44 requires a prompt inquiry into the joint representation:

> The court must promptly inquire about the propriety of joint representation and must personally advise each defendant of the right to the effective assistance of counsel, including separate representation. Unless there is good cause to believe that no conflict of interest is likely to arise, the court must take appropriate measures to protect each defendant's right to counsel.

Fed. R. Crim. P. 44(c)(2); *see also Williamson*, 859 F.3d at 852 (noting that the "court has a duty to inquire into a potential joint representation conflict of interest when defense counsel informs the court of the alleged conflict prior to trial" (internal quotation marks omitted)).

8.   "[J]oint representation is not *per se* violative of constitutional guarantees of effective assistance of counsel," *Holloway v. Arkansas*, 435 U.S. 475, 482 (1978), but an actual conflict of interest arises "when counsel [is] forced to make choices advancing other interests to the detriment of his client."  *Williamson*, 859 F.3d at 851 (internal quotation marks omitted).  In a joint representation, a conflict may arise if, for example, "one defendant might be advantaged in accepting a plea offer or testifying against his codefendant, but the second defendant could be disadvantaged if the first defendant chooses to do so."  *Id.* at 852.

9. The Court may consider the applicable rules of professional conduct in making this determination. *See e.g.*, *United States v. Anderson*, 319 F.3d 1218 (10th Cir. 2003), *United States v. Collins*, 920 F.2d 619, 627 (10th Cir. 1990). The Colorado Rules of Professional Conduct have been adopted as the standards of professional responsibility for the Court. *See* D.C.COLO.LAttyR. 2. Rule 1.7 of the Colorado Rules of Professional Conduct states that "a lawyer shall not represent a client if the representation invoices a concurrent conflict of interest" which includes those representations where "there is a significant risk that the representation of one of more clients will be materially limited by the lawyer's responsibilities to another client…" unless "the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client; the representation is not prohibited by law; the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and each affected client gives informed consent, confirmed in writing."

10. Comment 8 to Colorado Rule of Professional Conduct 1.7 notes that "[e]ven where there is no direct adverseness, a conflict of interest exists if there is a significant risk that a lawyer's ability to consider, recommend or carry out an appropriate course of action for the client will be materially limited as a result of the lawyer's other responsibilities or interests." But "[t]he mere possibility of subsequent harm does not itself require disclosure and consent. The critical questions are the likelihood that a difference in interests will eventuate, and if so, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client." Colo. RPC 1.7, Cmt. 8. Comment 23 also states that "[t]he potential for conflict of interest in representing multiple defendants in a criminal case is so grave that ordinarily a lawyer should decline to represent more than one codefendant."

11. In conducting this analysis, the district court "must recognize a presumption in favor of [the defendant's] counsel of choice." *Wheat*, 486 U.S. at 164. Indeed, "in some cases multiple defendants can appropriately be represented by one attorney … certain advantages might accrue from joint representation…. Joint representation is a means of insuring against reciprocal recrimination. A common defense often gives strength to a common attack." *Holloway*, 435 U.S. at 482-83 (internal citations and punctuation marks omitted). Furthermore, an "attorney representing two defendants in a criminal matter is in the best position professionally and ethically to determine when a conflict of interest exists or will probably develop in the course of a trial." *Id.* at 485 (internal citations and punctuation marks omitted). The Court should credit the fact that "attorneys are not fungible; often the most important decision a defendant makes in shaping his defense is his selection of an attorney." *United States v. Collins*, 920 F.2d 619, 625 (10th Cir. 1990) (internal citations and punctuation marks omitted), *superseded by statute on other grounds as recognized by Lewis v. Comm'r of Int. Rev.*, 523 F.3d 1272 (10th Cir. 2008).

12. "In order for a defendant effectively to waive his right to conflict-free counsel, the trial judge should affirmatively participate in the waiver decision by eliciting a statement in narrative form from the defendant indicating that he fully understands the nature of the situation and has knowingly and intelligently made the decision to proceed with the challenged counsel." *United States v. Schneider*, 704 F.3d 1287, 1292 (10th Cir. 2013) (citing *United States v. Migliaccio*, 34 F.3d 1517, 1527 (10th Cir. 1994)). Further, the "district court should also determine whether the defendant understands the facts underlying the conflict and the dangers and risks associated with waiving the conflict." *United States v. Hunt*, No. 01-6426, 62 F. App'x, 272, 276 (citing *Edens v. Hannigan*, 87 F.3d 1109, 1118 (10th Cir. 1996)).

13. Even where a defendant validly waives a conflict, the district court is "allowed substantial latitude in refusing waivers of conflicts of interest." *Wheat*, 486 U.S. at 163; *see also United States v. Evanson*, 584 F.3d 904, 909 (10th Cir. 2009). The district court may refuse a waiver "not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." *Wheat*, 486 U.S. at 163. Because of the importance of a defendant's interest in representation by counsel of his or her choice, the evaluation of whether to allow counsel with a potential conflict of interest to proceed "must be left primarily to the informed judgment of the trial court." *Id.*

14. In cases of joint representation, a conflict occurs when the defendants' interests "diverge with respect to a material factual or legal issue or to a course of action[;]" *Cuyler v. Sullivan*, 446 U.S. 335, 356 n.3 (1980); "when counsel cannot use his best efforts to exonerate one defendant for fear of implicating the other," *United States v. Kaufman*, 354 F. Supp. 2d 1201, 1204 (D. Kan. 2005) (citing *Dokes v. Lockhart*, 992 F.2d 833, 836 (8th Cir. 1993) (internal citations and punctuation omitted); and "whenever one defendant stands to gain significantly by advancing plausible arguments that are damaging to the cause of a co-defendant whom counsel is also representing." *Kaufman*, 354 F. Supp. 2d at 1204 (citing *United States v. McCaskey*, 9 F.3d 368, 381 (5th Cir. 1993). This is particularly true when "the available evidence points to significantly different levels of culpability between the jointly represented defendants." *Kaufman*, 354 F. Supp. 2d at 1204 (quoting *United States v. Stantini*, 85 F.3d 9, 19 (2d Cir. 1996). Joint representation is also problematic where an attorney proposes to represent multiple co-conspirators in an alleged complex scheme. *See e.g., Wheat*, 486 U.S. at 163. Ultimately, "[j]oint representation of conflicting interests is suspect because of what it tends to prevent an attorney from doing," like "challenging the admission of evidence prejudicial to one client but perhaps

6

favorable to another or from arguing at the sentencing hearing the relative involvement and culpability of his clients in order to minimize the culpability of one by emphasizing that of another." *Holloway*, 435 U.S. at 489-90.

15. Here, Mr. and Mrs. Tew are spouses, co-defendants, and are alleged to be co-conspirators. *See* Dkt. 83 (Indictment, Counts 1 & 41). Their preference for chosen counsel is, of course, entitled to significant deference. Their interests, decisions about testifying, defenses, and legal strategies (including strategies involving blame-shifting, pointing to relative culpability, potential cooperation and testimony for the government) may, however, be adverse to the other.

16. While we are currently at the beginning of the criminal proceedings, these types of conflicts can arise at any stage of a case, to include plea negotiations, trial, or sentencing hearings. *Holloway*, 435 U.S. at 490-91. Even if Mr. and Mrs. Tew agree about their defenses now, it may well be that such agreement changes as the prosecution continues. Should that occur, Mr. Ekeland may have to withdraw entirely. The potential need for Mr. Ekeland to withdraw entirely is one of the topics that the Court may wish to explore with defendants in its colloquy so that Mr. and Mrs. Tew understand that if they proceed jointly with Mr. Ekeland now, it is possible that neither of them will be able to proceed with Mr. Ekeland should a conflict arise later because of his possession of privileged information from both defendants.[1] This is why accepting a waiver at this early stage of the proceedings is particularly fraught because the Court must evaluate "whether or not to allow a waiver… not with the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial contexts when relationships between parties are seen through a glass, darkly." *Wheat*, 486 U.S. at 163. The Supreme Court stated in *Wheat*:

---

[1] Should it be helpful to the Court, the government can submit to the Court some topics/areas of discussion for the Court's colloquy with Mr. and Mrs. Tew on the issues raised by this motion.

> The likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials. It is a rare attorney who will be fortunate enough to learn the entire truth from his own client, much less be fully apprised before trial of what each of the Government's witnesses will say on the stand. A few bits of unforeseen testimony or a single previously unknown or unnoticed document may significantly shift the relationship between multiple defendants. These imponderables are difficult enough for a lawyer to assess, and even more difficult to convey by way of explanation to a criminal defendant untutored in the niceties of legal ethics.

486 U.S. at 162-63.

For the reasons stated above, the government respectfully requests that the Court inquire into the propriety of joint representation pursuant to Federal Rule of Criminal Procedure 44.

Dated this 28th day of February, 2021.

Respectfully submitted,

JASON R. DUNN
United States Attorney

By:   s/ *Hetal J. Doshi*
Hetal J. Doshi
Matthew T. Kirsch
Assistant United States Attorneys
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: (303) 454-0100
Facsimile: (303) 454-0404
E-mail: hetal.doshi@usdoj.gov
            Matthew.kirsch@usdoj.gov
Attorneys for the Government

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in the Court's Practice Standard III(A)(1).

*s/ Hetal J. Doshi*

Pursuant to the Court's Practice Standard III.C, the government notes that this motion tolls the speedy trial clock. 18 U.S.C. § 3161(h)(1)(D). The speedy trial clock was reset and started running on the indictment on February 11, 2021 as the last defendant appeared on February 10, 2021. *See* 18 U.S.C. § 3161(h)(6); Dkt. 101. Seventeen days have since elapsed, and therefore fifty-three days remain on the speedy trial clock.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of February, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

                                                   *s/ Hetal J. Doshi*
                                                   Hetal J. Doshi