1

```
 1                    UNITED STATES DISTRICT COURT
                         DISTRICT OF COLORADO
 2

 3  UNITED STATES OF AMERICA,     .   Case No. 20-cr-00305-DDD
                                  .
 4            Plaintiff,          .
                                  .
 5  vs.                           .
                                  .
 6  MICHAEL AARON TEW,            .   901 19th Street
    KIMBERLEY ANN TEW, also       .   Denver, CO  80294
 7  known as Kimberley            .
    Vertanen, and JONATHAN K.     .
 8  YIOULOS,                      .
                                  .
 9            Defendants.         .
                                  .   February 5, 2021
10  . . . . . . . . . . . . . .   .   2:21 p.m.

11        TRANSCRIPT OF PROCEEDINGS HELD BEFORE THE HONORABLE
             KRISTEN L. MIX, UNITED STATES MAGISTRATE JUDGE
12
    APPEARANCES:
13
    For the Plaintiff:          United States Attorney
14                              By:  Hetal J. Doshi*
                                By:  Matthew T. Kirsch*
15                              1801 California Street
                                Suite 1600
16                              Denver, CO  80202
                                (303) 454-0100
17
    For the Defendant,          McDermott Stuart & Ward, LLP
18  Michael A. Tew:             By:  Thomas R. Ward*
                                140 East 19th Avenue
19                              Suite 300
                                Centennial, CO  80111
20                              (303) 832-8888

21  Also Present:               Michael A. Tew
                                Jordan Buescher
22
    Court Recorder:             Clerk's Office
23                              U.S. District Court
                                901 19th Street
24                              Denver, CO  80294

25  *All appearances telephonic.
```

1  Appearances continued:

2  Transcription Service:              AB Litigation Services
                                       216 16th Street, Suite 600
3                                      Denver, CO  80202
                                       (303) 296-0017
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
   Proceedings recorded by electronic sound recording;
25 transcript produced by transcription service.

```
 1                    (Time noted:  2:21 p.m.)

 2              THE COURT:  All right.  Case number 20-cr-00305,

 3   United States of America versus Michael Tew.

 4              Let's have counsel enter appearances, please.

 5              MS. DOSHI:  Good afternoon, Your Honor.  Hetal

 6   Doshi and Matthew Kirsch, for the United States.

 7              THE COURT:  Ms. Doshi, Mr. Kirsch, good afternoon.

 8              MR. WARD:  Good afternoon, Your Honor.  Tom Ward

 9   on behalf of Michael Tew.  Mr. Tew also appears via video

10   conference.

11              THE COURT:  Mr. Ward, good afternoon.  Mr. Tew,

12   can you hear me?

13         (No response)

14              THE COURT:  I can't hear you.

15         (Pause)

16              THE COURT:  I don't know if that means you can't

17   hear me, or you just can't un-mute.

18         (Pause)

19              THE COURT:  He can hear me.  He's nodding,

20   although I think he's unable to un-mute his microphone.

21              All right, well that might create a problem, but

22   we'll continue.

23              Mr. Ward, is your client consenting to a video

24   appearance for purpose of this hearing?

25              MR. WARD:  Yes, he is.
```

4

1            THE COURT:  All right.  I have this down on my

2   docket as an initial appearance.

3            However, I'm not sure that that's exactly

4   precisely why we're here this afternoon.

5            Ms. Doshi, can you help to bring the Court up to

6   speed?

7            MS. DOSHI:  Yes, Your Honor.  There was previously

8   a criminal complaint that was filed that ended up in front of

9   Your Honor.

10           And then after that, there was a waiver of

11  indictment and a criminal information that was filed.

12           And subsequent to that, the parties -- the notice

13  of disposition was withdrawn, and so the indictment has now

14  been returned by the Grand Jury.

15           And so as a result of that, we're here for an

16  initial appearance.

17           And if the Court is amenable, we are prepared to

18  proceed with an arraignment, detention, and discovery

19  conference.

20           The discovery conference memorandum has been

21  reviewed and jointly executed by the parties and submitted to

22  the Court.

23           THE COURT:  All right, thank you.  And, Mr. Ward,

24  anything to add to that in terms of the Defendant's

25  understanding of the purpose of the hearing today?

5

1          MR. WARD:  No, I think that sums it up.

2          THE COURT:  All right, thank you.  All right, Mr.

3  Tew, you've been charged with 1 count of conspiracy to commit

4  wire fraud, 38 counts of wire fraud, 1 count of conspiracy to

5  commit money laundering, 15 counts of engaging in monetary

6  transactions in property derived from specified unlawful

7  activity, and 3 counts of willful failure to file tax

8  returns.

9          On the conspiracy count, the penalty is not more

10 than 20 years imprisonment, not more than a $250,000.00 fine,

11 or two times the gain or loss, whichever is greater, or both

12 imprisonment and a fine, not more than three years of

13 supervised release, and a $100.00 special assessment fee.

14         On the wire fraud counts, the penalty for each

15 count is not more than 20 years imprisonment, not more than a

16 $250,000.00 fine, or two times the gain or loss, whichever is

17 greater, or both imprisonment and a fine, not more than three

18 years of supervised release, and a $100.00 special assessment

19 fee.

20         On the conspiracy to commit money laundering

21 count, the penalty is not more than 20 years imprisonment,

22 not more than a $500,000.00 fine, or two times the amount

23 laundered, or both imprisonment and a fine, not more than

24 three years of supervised release, and a $100.00 special

25 assessment fee.

1              On the engaging in monetary transactions in

2    property derived from specified unlawful activity count, the

3    penalty for each count is not more than 10 years

4    imprisonment, not more than a $250,000.00 fine, or two times

5    the amount laundered, whichever is greater, or both

6    imprisonment and a fine, not more than three years of

7    supervised release, and a $100.00 special assessment fee.

8              And finally, on the tax return counts, the penalty

9    for each count is not more than one year imprisonment, not

10   more than a $100,000.00 fine, not more than one year of

11   supervised release, a $25.00 special assessment fee, plus the

12   costs of prosecution.

13             Mr. Tew, do you understand the general nature of

14   the charges against you?  And if you can un-mute yourself,

15   please respond orally.  If you cannot, just nod.

16             All right, I see that Mr. Tew is nodding and

17   raising his thumb.  Is everybody willing to accept that as

18   his representation that he can understand these charges?

19             Ms. Doshi?

20             MS. DOSHI:  Yes, Your Honor.  And if I may I have

21   missed it, Your Honor.  It's actually 39 counts of wire

22   fraud, 14 counts of the 1957 charge, and 4 counts of the

23   failure to file tax returns.

24             I may have gotten that incorrect, or missed it, or

25   heard you incorrectly.  I just wanted to clarify that.

1           THE COURT:  No, you're correct.  My math was

2    wrong.  So I'll stand corrected with respect to the number of

3    counts on each charge.  Thank you.

4           All right.  Mr. Tew, you have the right to remain

5    silent.  You do not need to speak to anyone about the

6    circumstance that brought you to Court today.

7           If you do choose to speak to someone other than

8    your attorney about those circumstances, what you say can and

9    probably will be used against you in Court.

10          If you are questioned by the police or law

11   enforcement, you have the right to refuse to answer

12   questions.  You also have the right to insist that an

13   attorney be present with you during questioning.

14          If you choose to remain silent, your silence

15   cannot be used against you in Court.

16          Sir, do you understand your right to remain

17   silent?

18          Mr. Tew is raising his thumb, and nodding.  And I

19   will take that as his indication that he does understand his

20   right to remain silent.

21          Sir, you have the right to an attorney.  And if

22   you cannot afford an attorney, I will appoint one for you at

23   no cost to you.

24          I assume Mr. Ward is retained counsel.  Is that

25   right, Mr. Ward?

1          MR. WARD:  No, actually CJA.

2          THE COURT:  You are a CJA appointed counsel.  All

3   right.  Were you appointed in connection with the previous

4   matters?  The complaint and the information?

5          MR. WARD:  I was.  The Federal Public Defender

6   initially was appointed, and then I was appointed when they

7   withdrew.

8          THE COURT:  All right.  So it's your position that

9   there is no need to formally qualify Mr. Tew for appointment

10  of counsel, given your previous appointment.  Is that right?

11         MR. WARD:  I believe that's correct.

12         THE COURT:  All right.  Does the Government have

13  any issue with that, Ms. Doshi?

14         MS. DOSHI:  No, Your Honor.  It's my understanding

15  that there was a separate restricted document that the

16  Government did not have access to with respect to the

17  financial disclosure and some other information about Mr.

18  Tew's finances that was filed by Mr. Creizman.

19         We have not reviewed that, obviously, because of

20  the restriction on that document -- that information.  So

21  assuming there's nothing to correct the record, we would

22  defer to defense counsel on that.

23         THE COURT:  Thank you.  And you agree, however,

24  that that document was purportedly reviewed by the Court, and

25  he was qualified for the appointment of counsel?

1              MS. DOSHI:  Yes, Your Honor.  Thank you.

2              THE COURT:  All right.  Thank you.  Then let's

3    proceed to the arraignment with respect to these charges

4    today.

5              Mr. Ward, how does your client plead?

6              MR. WARD:  Your Honor, we would waive reading of

7    the charges, and enter a not guilty plea as to all counts.

8              THE COURT:  All right, thank you.  The not guilty

9    pleas are received.

10             Speedy trial dates, counsel, 30 days is October

11   29, 2020; 70 days is April 3, 2021.

12             I have the discovery conference memorandum and

13   order.  I note that counsel have been through this, and they

14   have signed it.

15             And I have a disclosure date for the Government of

16   March 5th.  Mr. Ward, how much time would you like for

17   disclosure?

18             MR. WARD:  Two weeks after that?

19             THE COURT:  I'm sorry?

20             MR. WARD:  An additional two weeks.

21             THE COURT:  Two weeks is fine.  I'll put you down

22   for March 19, 2021, and I will sign and date the discovery

23   order and make it an order of the Court effective today.

24             And is the Government seeking detention with

25   respect to Mr. Tew?

1          MS. DOSHI:  We are not seeking detention, but

2     there is a motion to modify the conditions of the pre-trial

3     release that we're prepared to address if the Court would

4     like us to.

5          THE COURT:  All right.  And, Mr. Ward, are you

6     prepared to address that motion, as well?

7          MR. WARD:  I am, Your Honor.

8          THE COURT:  Am I the Magistrate Judge who put Mr.

9     Tew on pre-trial release?  Because if not, it has to be heard

10    by the Magistrate Judge who did that.

11         MS. DOSHI:  You were, Your Honor.

12         THE COURT:  Okay.

13         MS. DOSHI:  On the original complaint.

14         THE COURT:  Thank you for reminding me.  Let me

15    take a look at the motion.  Give me one moment to find it.

16       (Pause)

17         THE COURT CLERK:  Your Honor, I can print it out

18    for you.

19         THE COURT:  Would you print it for me?  That would

20    be helpful.  Thank you.

21       (Pause)

22         THE COURT:  Thank you.

23       (Pause)

24         THE COURT:  Thank you.  I have had an opportunity

25    to read the motion.

1        Mr. Ward, do you want to add to your written

2   motion?

3        MR. WARD:  Your Honor, I don't have anything

4   substantive to add.  It's pretty well set forth there.

5        I just want to emphasize that, you know, the most

6   important factor to us is that there doesn't -- certainly

7   doesn't appear to be any kind of public safety reason for

8   this 9:00 p.m. curfew and GPS condition.

9        So really the only reason for continuing this in

10  place would be a perception that there's a risk of flight.

11  And realistically, there is no risk of flight.

12        I understand why it seemed at the outset in this

13  case back last July that there might be, but, you know, Mr.

14  Tew has demonstrated by complying with all conditions of his

15  bond going back to July 9th of 2020, that he's not going

16  anywhere.  He doesn't have the ability to go anywhere, even

17  if he wanted to, which he doesn't.

18        And his intention is to remain here in the

19  District of Colorado and face these charges.

20        And at the same time, you know, it may not seem

21  extremely restrictive to have an ankle monitor with GPS, but

22  over the amount of time that Mr. Tew has been living with

23  this condition, it does on a pretty regular basis interfere

24  with the daily activities of life.  Specifically, the ways

25  that are mentioned in the written motion.

1    A couple of other things I would point out with

2  respect to Mr. Tew's kids.  When he's out parenting them in

3  the community, particularly one of his daughters is non-

4  verbal, and he basically is the only way to kind of speak for

5  her and interact with other adults.  And he is perceived on

6  many occasions that sort of his parental authority is

7  automatically questioned when people observe that he's got

8  this monitor on.

9    So for a variety of reasons, I don't think that

10  this particular condition is necessary.  I don't think it

11  meets the standard of the least restrictive combination of

12  conditions that are reasonably required to ensure that he

13  attends his Court appearances and doesn't flee the

14  jurisdiction, or anything like that.

15    THE COURT:  All right, thank you.  Ms. Doshi?

16    MS. DOSHI:  Thank you, Your Honor.  As an initial

17  matter, I would point out that the original conditions of

18  bond were reflected at docket number 12, and then they were

19  modified on the record at docket number 52.

20    As the Court is aware, when we were initially in

21  front of the Court in July of 2020, the Government opted not

22  to seek detention despite the fact that Mr. Tew, or a phone

23  number associated with Mr. Tew, had made contact based on the

24  knowledge or fear that the FBI was about to knock on his

25  door, and concerned that he was going to jail.

1          He was trying to raise money to "get himself and

2    his daughters out of the country."  And, as a result of that,

3    the Government sought less restrictive conditions for that

4    period of time.  The Court required Mr. Tew to be in a

5    position of home detention at that time in addition to the

6    GPS monitoring and all of the other conditions that are

7    articulated at docket number 12, as modified by 52.

8          In a couple of months since from that, the parties

9    were in a different posture than we are today.  We came back

10   to the Court, and the Defendant asked for a step down with

11   respect to the restrictions on him so that there's a curfew

12   and the GPS monitoring, but he no longer was subject to home

13   determine.

14         At the time, the Government did not object to

15   that, and we think it is appropriate to continue it at this

16   point in time.

17         But as Mr. Ward says, the issue squarely is the

18   question of flight risk.  And so, you know, the thing that's

19   interesting here is that although Mr. Ward points to a number

20   of factor that inure in the benefit of Mr. Tew in terms of

21   the conditions in place, those items were already considered

22   by the Court back in July of 2020.

23         And they don't meet the standard under 3142(f)(2),

24   which requires that when we're going to reopen the question

25   of bond, or to modify bond, there has to be a new or added

1  information.   A new type of information that we colloquially

2  refer to as change in circumstances.

3           There is no change in circumstances that apply

4  here.   And a periodic check-in based on good behavior of the

5  Defendant isn't sufficient.

6           As I said, the lack of criminal history, the

7  advanced education of the Defendant, and his corresponding

8  employment responsibilities or abilities, the local ties to

9  the community have already been taken into account for the

10  Court.

11          The new items that are before the Court today are

12  the social stigma associated with wearing the ankle monitor,

13  the desire to swim as a preferred form of exercise, simply

14  doesn't meet the standard with respect to the 3142

15  requirement of new information, and in the risk of flight

16  that was presented at the beginning of this case.

17          And then the last thing we're left with, with

18  respect to the potential change in circumstances, is the care

19  of Mr. Tew's minor child.

20          And, of course, I am sympathetic to the issues

21  presented by the special needs of his daughter.

22          That being said, you know, there is nothing in the

23  record before the Court to suggest that the United States

24  probation officer hasn't been cooperative or working with the

25  Defendant, should emergencies arise.

1            And in the one circumstance that I'm aware of

2    where an emergency did arise, my understanding is that Mr.

3    Tew ran out to the grocery store, purchased the item he

4    needed, and there wasn't an issue with probation.

5            In addition to that, as Mr. Tew's counsel has

6    pointed out, he has presence of family locally that can

7    assist.

8            And while I am sympathetic to the unique

9    challenges presented by the special needs of his daughter

10   here, Your Honor, respectfully, every Defendant who is facing

11   Federal criminal charges is inconvenienced in a variety of

12   ways, and it is not unique to Mr. Tew that he's facing those

13   inconveniences as a result of being a Defendant in a Federal

14   criminal action.

15           There are a variety of other solutions, including

16   delivery services.  And like I said, family that could assist

17   with these issues.

18           But the most important being that there is no

19   evidence in the record that probation has in any way

20   prevented Mr. Tew from addressing the needs of his daughter.

21           And then finally, the motion states that it's

22   unthinkable that Mr. Tew would try to move his daughter,

23   given her particular issues.  And I would simply state that

24   that's belied by the facts here, because certainly when was

25   concerned about the possibility of charges and FBI

1   investigation.

2          What I will point out is that there are two things

3   that are changed circumstances here.

4          The first is that although the parties

5   contemplated reaching a resolution, Mr. Tew has withdrawn the

6   notice of disposition.  And so that changes the posture of

7   Mr. Tew with respect to responsibility.

8          Again, he's perfectly within his right to do that,

9   but that is a factor that's relevant here in terms of the

10  change of circumstances.

11         And the second change in circumstances is, of

12  course, more than telling, which is that Mr. Tew is now

13  facing 59 new Federal charges.  I think it's 59.  But it's

14  certainly more than the charges that were in front of the

15  Court on the information.

16         And now they are articulated in more detail, and

17  certainly available based on the public's right of access to

18  them.

19         And so it seems premature, certainly at this time,

20  and certainly doesn't meet the requirements under 3142 to say

21  that now is the time to simply just trust that Mr. Tew is

22  going to continue to cooperate -- excuse me, continue to

23  abide by the conditions of bond.

24         The facts in this case counsel against making that

25  change at this particular moment, because the independent

1  variables of the new indictment hasn't been revealed through

2  conduct with respect to the other variables.

3         And then the other thing I'd like to point out is

4  that although Mr. Tew has court appointed counsel, as the

5  Court may be aware from review of the indictment and the

6  prior history of this case, Mr. Tew's wife and the details of

7  this case reflect access to use of crypto-currency, which is

8  not a traditional asset that is available to the Court, and

9  all of us have expertise in, with respect to understanding

10  how much money Mr. Tew has available.

11         And finally, with respect to the bond conditions,

12  we would respectfully request that the GPS and curfew remain

13  in place, but we would ask that the bond condition number 17

14  that says that Mr. Tew not share the complaint or arrest

15  documents with anyone other than his attorney, it's no longer

16  relevant.  And so we would ask that that be struck.

17         But in addition to that, I would ask that

18  condition 7(g), which was not previously identified, now be

19  checked, which is to avoid all contact, directly or

20  indirectly, with any person who is or may be a victim or

21  witness in the investigation or prosecution, including in

22  this circumstance, simply co-Defendant Jonathan Yioulos and

23  any witnesses in this case.

24         We certainly are not asking that Mr. Tew not have

25  contact with his wife.

1          Unless the Court has any other questions, that's
2   the Government's position on bond.
3          THE COURT:  So out of curiosity, I think I
4   understood you to be saying that you think that the fact that
5   there no longer is a disposition likely, is a change in
6   circumstances under the Statute that would allow the Court to
7   reconsider.  Is that what you said?
8          MS. DOSHI:  I'm saying that the change in
9   circumstances -- I suppose yes.  The answer is that is a
10  change in circumstances, but it is a change in circumstances
11  that counsel is against removing a bond condition.
12         THE COURT:  All right, thank you.
13         MR. WARD:  Your Honor, may I respond to those
14  arguments briefly?
15         THE COURT:  Certainly.
16         MR. WARD:  So, first of all, I don't think that
17  this is a situation that implicates Section 3142(f).  We are
18  not asking to re-open a detention hearing where the Court
19  needs to weigh on the issue of detention or release.
20         This is covered by Section 3142(c), which says
21  that the Court has the authority to modify the conditions of
22  release at any time.  That does not require a full reopening
23  of the detention hearing under 3142(f).
24         Secondly, the main change of circumstances, if the
25  Court requires one, is the fact that Mr. Tew has now

1  demonstrated over the course of about seven months that he is

2  not a flight risk, because he hasn't gone anyway, and that he

3  is able to comply with all of the conditions that the Court

4  has imposed upon him.

5          I also want to say a couple of things about the

6  charges.

7          First of all, the fact that there are now 59

8  counts, or whatever it adds up to, does not change at all

9  really what Mr. Tew is facing in this case.

10          But going back to the original complaint, it's the

11  exact same conduct.  It's just now that greater than one

12  count that was in the complaint to charge a conspiracy for

13  all of the wire fraud counts, we have each transaction

14  charged in a separate count.

15          But it's the exact same thing.  He's not at risk

16  of serving more time than he was before, and that more time

17  that he was during the last seven months when he hasn't gone

18  anyway.

19          And lastly, you know, the fact that the proposed

20  disposition did not go through, and that is somehow an

21  indication that there's not some acceptance of responsibility

22  factor that was previously present, that, to me, does not

23  counsel against modifying this bond condition.

24          In fact, I don't know that acceptance of

25  responsibility is really an appropriate consideration for the

1   Court in deciding what a condition of release should be.

2          We're dealing with a person who obviously it

3   doesn't even need to be stated enjoys a presumption of

4   innocence.

5          The Court will have to decide what the least

6   restrictive means are to make sure that he appears in Court.

7          THE COURT:  Thank you.  Ms. Doshi, do you want to

8   address Defendant's contention that this actually falls under

9   3142(c) and not 3142(f)?

10          MS. DOSHI:  Your Honor, it's the Government's

11   position that while the Court retains the authority to modify

12   at any point in time, that it does so under the direction of

13   3142(f)(2), which says that when you consider those bond

14   conditions, you do so based on information not known to the

15   Defendant, the Movant, at the time.

16          And the reason that it makes sense, is because

17   otherwise we're just going to be re-litigating the same

18   issue, as we have here before.  And that doesn't insure to

19   judicial economy.  It certainly doesn't inure to the finality

20   of the decision.

21          The other thing I want to make sure that I'm clear

22   on, and I apologize, is that I'm not suggesting that

23   acceptance of responsibility is a salient factor or

24   consideration with respect to bond conditions.  I'm simply

25   saying that in earlier hearings, that was one of the

1  arguments in favor of the step down with respect to the bond

2  conditions, and that is a circumstance that is now changed.

3          That's all -- that's simply the argument that I'm

4  trying to make.  I apologize.

5          THE COURT:  All right, thank you.  Well, let me

6  say several things.

7          I agree with the Government that this falls under

8  18 U.S.C. section 3142(f).  That is the section of the Bail

9  Reform Act that talks about the detention hearing, and also

10 identifies circumstances under which the hearing may be

11 reopened.

12         We have had a detention hearing in this matter

13 previously.  And a motion to modify bond under these

14 circumstances, I think, is the equivalent of reopening the

15 hearing and asking for a change.

16         So the Statute says that the hearing may be

17 reopened before or after a determination by the judicial

18 officer at any time before trial, if the judicial officer

19 finds that information exists that was not known to the

20 Movant at the time of the hearing, and that has a material

21 bearing on the issue whether there are conditions of release

22 that will reasonable assure the appearance of the person as

23 required, and the safety of any other person and the

24 community.

25         The real changed circumstance here, the only one

1   that I've been able to identify, and the Government counsel

2   agrees with, at least, is the fact that there's no longer a

3   disposition being negotiated or pending in the case.

4          And I understand Mr. Ward's argument that Mr. Tew

5   has remained in town and has not attempted to flee for seven

6   months while these negotiations were underway.

7          But I must say that I cannot necessarily draw the

8   same conclusion that Mr. Ward draws that that indicates that

9   Mr. Tew is not a flight risk.

10          Frankly, a person facing significant Federal

11   charges, who is attempting to negotiate a disposition with

12   the Government of those charges, has much less incentive to

13   flee than a person who has thrown in the towel on a plea

14   agreement and is now simply going to go forward with a

15   defense of the charges.

16          It's an entirely different world to a person

17   facing charges under those circumstances.

18          So I cannot conclude that although the fact that

19   there is no longer a disposition being negotiated or pending

20   is a change in circumstances that may justify reopening the

21   hearing.

22          I cannot find that it weighs in favor of a

23   modification of the conditions that were put in place to

24   prevent Mr. Tew from fleeing, including the GPS monitoring

25   and the curfew.

1          I am also persuaded because I know how the United

2    States Probation Office in the District of Colorado works,

3    that the 9:00 p.m. curfew cannot be such a great

4    inconvenience to the Defendant.  The Defendant can work with

5    the United States Probation Office in emergency circumstances

6    to get relief from the curfew for purpose of going to the

7    grocery store or getting needed items after the curfew

8    exists.

9          So the motion to modify the conditions of bond is

10   respectfully denied.

11         The GPS monitoring will remain in place, as will

12   the 9:00 p.m. curfew.

13         The Court will strike, at the Government's motion,

14   condition number 17 about not sharing the complaint, as that

15   is no longer applicable.

16         The Court will also add the condition that the

17   Defendant must avoid all contact with any person who is a

18   victim or a witness in the pending prosecution, excluding, of

19   course, the Defendant's wife.

20         Is there anything further from the Government with

21   respect to Mr. Tew this afternoon?

22         MS. DOSHI:  No, thank you, Your Honor.

23         THE COURT:  Anything further from defense counsel,

24   Mr. Ward?

25         MR. WARD:  No, Your Honor.  Thank you.

1          THE COURT:  Thank you.  We're in recess on Mr.

2     Tew.

3                    (Time noted:  2:49 p.m.)

4                         *  *  *  *  *

5                         CERTIFICATE

6          I, RANDEL RAISON, certify that the foregoing is a

7     correct transcript from the official electronic sound

8     recording of the proceedings in the above-entitled matter, to

9     the best of my ability.

10

11

12    _____        May 13, 2021

13    Randel Raison

14

15

16

17

18

19

20

21

22

23

24

25