1

1      UNITED STATES DISTRICT COURT
       DISTRICT OF COLORADO
2

3  UNITED STATES OF AMERICA,    .   Case No. 20-cr-00305-DDD
                                .
4            Plaintiff,         .
                                .
5  vs.                          .
                                .
6  MICHAEL AARON TEW,           .   901 19th Street
   KIMBERLEY ANN TEW, also      .   Denver, CO  80294
7  known as Kimberley           .
   Vertanen, and JONATHAN K.    .
8  YIOULOS,                     .
                                .
9            Defendants.        .
                                .   February 10, 2021
10 . . . . . . . . . . . . . .  .   2:31 p.m.

11      **TRANSCRIPT OF PROCEEDINGS HELD BEFORE THE HONORABLE**
            **KRISTEN L. MIX, UNITED STATES MAGISTRATE JUDGE**
12

   APPEARANCES:
13

14 For the Plaintiff:          United States Attorney
                               By:  Matthew T. Kirsch*
                               By:  Hetal J. Doshi*
15                             1801 California Street
                               Suite 1600
16                             Denver, CO  80202
                               (303) 454-0100
17

18 For the Defendant,          Stimson Stancil LaBranche &
   Kimberley A. Tew:             Hubbard
                               By:  Jamie L. Hubbard*
19                             1652 North Downing Street
                               Denver, CO  80218
20                             (720) 689-8909

21 Also Present:               Kimberley A. Tew
                               Tommie Anderson
22

   Court Recorder:             Clerk's Office
23                             U.S. District Court
                               901 19th Street
24                             Denver, CO  80294

25 *All appearances telephonic.

1   Appearances continued:

2   Transcription Service:          AB Litigation Services
                                    216 16th Street, Suite 600
3                                   Denver, CO  80202
                                    (303) 296-0017

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
    Proceedings recorded by electronic sound recording;
25  transcript produced by transcription service.

```
 1                    (Time noted:  2:31 p.m.)
 2            THE COURT:  Case number 20-cr-00305, United States
 3   of America versus Kimberley Ann Tew.
 4            Let's have counsel enter appearances, please.
 5            MR. KIRSCH:  Good afternoon, Your Honor.  Matthew
 6   Kirsch and Hetal Doshi appearing for the United States.
 7            THE COURT:  Mr. Kirsch, Ms. Doshi, good afternoon.
 8            Counsel for the Defendant present?
 9            MS. HUBBARD:  Good afternoon, Your Honor.  This is
10   Jamie Hubbard appearing on behalf of Ms. Tew, who appears by
11   video conference from her apartment in Denver.
12            As I indicated to the Court in email earlier
13   today, I'm here entering a special appearance, because I had
14   represented Ms. Tew pre-indictment.  So I wanted to kind of
15   get her started on the right foot, but I do not have a
16   current agreement.
17            THE COURT:  All right.  So to the extent that this
18   is a motion for a special appearance by Ms. Hubbard, it is
19   granted.
20            And we'll proceed.
21            MS. HUBBARD:  Thank you, Your Honor.
22            THE COURT:  Ms. Tew, can you hear me?
23            MS. TEW:  I can, Your Honor.
24            THE COURT:  All right.  Ms. Tew, you're here for
25   an initial appearance, but we're going to take care of a
```

1   number of matters today.

2           The purpose of this initial appearance is for me

3   to inform you of the charges against you and make sure you

4   understand them, and understand what your rights are.

5           You've been accused of 1 count of conspiracy to

6   commit wire fraud, 4 counts of wire fraud, 1 count of

7   conspiracy to commit money laundering, 5 counts of engaging

8   in monetary transactions in property derived from specified

9   unlawful activity.

10          On the conspiracy to commit wire fraud count, the

11  penalty is not more than 20 years imprisonment, not more than

12  a $250,000.00 fine, or two times gain or loss, whichever is

13  greater, or both imprisonment and a fine, not more than three

14  years of supervised release, and a $100.00 special assessment

15  fee.

16          On the wire fraud counts, the penalty for each

17  count is not more than 20 years imprisonment, not more than a

18  $250,000.00 fine, or two times the gain or loss, whichever is

19  greater, or both imprisonment and a fine, not more than three

20  years of supervised release, and a $100.00 special assessment

21  fee.

22          On the conspiracy to commit money laundering

23  count, the penalty is not more than 20 years imprisonment,

24  not more than a $500,000.00 fine, or two times the amount

25  laundered, or both imprisonment and a fine, not more than

1    three years of supervised release, and a $100.00 special

2    assessment fee.

3           And on the engaging in monetary transactions in

4    property derived from specified unlawful activity counts, for

5    each count the penalty is not more than 10 years

6    imprisonment, not more than a $250,000.00 fine, or two times

7    the amount laundered, whichever is greater, or both

8    imprisonment and a fine, not more than three years of

9    supervised release, and a $100.00 special assessment fee.

10          Ma'am, do you understand the general nature of the

11   charges against you?

12          MS. TEW:  Yes, Your Honor.

13          THE COURT:  You have the right to remain silent.

14   You do not need to speak to anyone about the circumstances

15   that brought you to Court today.

16          If you do choose to speak to someone other than

17   your attorney about those circumstances, what you say can and

18   probably will be used against you in Court.

19          If you are questioned by the police or law

20   enforcement, you have the right to refuse to answer

21   questions.

22          You also have the right to insist that a lawyer be

23   present with you during questioning.

24          If you choose to remain silent, your silence

25   cannot be used against you in Court.

1        Do you understand your right to remain silent?

2            MS. TEW:  Yes, Your Honor.

3            THE COURT:  You also have the right to an

4   attorney.  And if you cannot afford an attorney, I will

5   appoint one for you at no cost to you.

6            Ms. Hubbard has entered a special appearance to

7   represent you today.

8            Are you asking me to appoint free counsel for you

9   today, or not?

10           MS. TEW:  No, I am not, Your Honor.

11           THE COURT:  All right, thank you.  Then I think

12  we're ready to proceed to arraignment and discovery and

13  detention issues.

14           Is the Government ready to proceed, Mr. Kirsch,

15  Ms. Doshi?

16           MR. KIRSCH:  We are ready, Your Honor.

17           THE COURT:  Thank you.  And, Ms. Hubbard, are you

18  ready, as well?

19           MS. HUBBARD:  I am.

20           THE COURT:  All right.  With respect to the

21  arraignment, Ms. Hubbard, how does your client plead?

22           MS. HUBBARD:  She would enter not guilty pleas to

23  all charges.

24           THE COURT:  Thank you.  Does she waive any further

25  formal reading of the charges and advisement of rights?

1           MS. HUBBARD:  Yes, Your Honor.

2           THE COURT:  Thank you.  The not guilty pleas are

3    received.

4           Speedy trial dates, counsel:  30 days is March 12,

5    2021; 70 days is April 22, 2021.

6           I do have the discovery conference memorandum and

7    order.  I note that counsel have been through this.  They

8    have signed it and provided disclosure dates, so I'll sign it

9    and make it an order of the Court effective today.

10          With respect to the issue of detention, I've

11   received and reviewed the pre-trial services report, and I

12   take judicial notice of it.

13          Is the Government seeking detention here?

14          MR. KIRSCH:  Your Honor, we are not seeking

15   detention.  However, we are seeking some additional

16   conditions that are not reflected in the proposed bond that

17   we received from the pre-trial services office.

18          THE COURT:  All right, thank you.  I'll hear from

19   you first, then, Mr. Kirsch, with respect to the Government's

20   position on bond.

21          MR. KIRSCH:  Thank you, Your Honor.  I'll just

22   move down the list in terms of the bond paperwork for

23   conditions of release.

24          The first condition that we're seeking, which I

25   suspect is an oversight, is that Ms. Tew surrender her

1    passport.   As the pre-trial services report indicates, she

2    does have a valid passport, and we believe that it should be

3    a condition that that be surrendered.

4           The second that we're seeking is under 7(g), as we

5    have with respect to the other Defendants in this case.   We

6    would ask the Court to enter a no-contact order with other

7    witnesses or Defendants in this case.

8           Again, as we did with Mr. Tew, we would except her

9    spouse from that rule, but otherwise we would ask for that

10   provision to be a part of the bond paperwork, as well.

11          With respect to the other issue that we're --

12   well, there are two other issues that we're seeking to

13   change.

14          The first has to do with home detention and/or

15   electronic monitoring or a curfew.

16          The Government's position is that there are

17   additional reasons to think that Ms. Tew poses a potential

18   flight risk in this matter.

19          As the bond report indicates, her only ties to the

20   community come from her husband and two children.   She

21   doesn't have other family here.   She doesn't have employment

22   here.   And she hasn't lived here for a particularly long

23   time.

24          What's more concerning to the Government, however,

25   is the information that's been revealed during the

1    investigation of this case, which is that Ms. Tew has both

2    substantial experience with and has engaged over the course

3    of the past few years with a number of transactions on the

4    dark net and transactions involving exchange and arbitrage of

5    Bitcoin and other sorts of crypto-currency.

6            As the Court is aware, those forms of currency are

7    difficult for the Government and the probation officer to

8    monitor and track, and the fluctuation in the value of those

9    can allow her substantial profits to be generated in

10   relatively short periods of time.

11           So we're concerned that Ms. Tew might have a means

12   financially that we simply aren't able to track.

13           And with the return of this indictment and the

14   serious charges that she's no facing, she has an incentive

15   for that flight, as well.

16           So we are asking, in order to address that risk,

17   that the Court either impose a curfew with electronic

18   monitoring, just as has been imposed on her husband, or, in

19   the alternative, that the Court impose a home detention

20   condition.

21           And we think that either of those conditions would

22   reasonably assure her appearance.  But we don't think that we

23   can be sure of that without those conditions.

24           The final set of additions that we would request,

25   again, are the same additional conditions of release that we

1  tend to request in financial cases, and that we requested

2  them and the Court imposed with respect to co-Defendant, Mr.

3  Yioulos.

4         So in terms of the additional conditions of

5  release, those would be conditions T through Z, and then also

6  condition AA, again, on the sort of standard bond paperwork.

7         I'm happy to answer any questions that the Court

8  has about any of those now.

9         THE COURT:  The only question I have is because of

10  my declining hearing.  Did you say conditions T through V

11  like Victory, or T through Z like Zoo?

12         MR. KIRSCH:  I said Z like Zoo, Your Honor, and as

13  well as AA.  Thank you.

14         THE COURT:  All right, thank you.  Ms. Hubbard, do

15  you want to address the Government's position on additional

16  conditions?

17         MS. HUBBARD:  Yes, Your Honor.  I find myself in

18  the rare position of just asking the Court to follow the

19  experts in the case, and impose the conditions of whatever is

20  recommended by the pre-trial office.

21         I'm usually the one fighting their recommended

22  conditions, but here I agree with them.

23         I have been working with Ms. Tew since August of

24  this year.  She has been responsive to me.  She has known

25  she's under investigation.  She has known the potential

 1  penalties for the charges.

 2          These charges are not a surprise to her, Your

 3  Honor.  It's similar to what her husband has been facing, and

 4  she has known since her husband's arrest that she was

 5  potentially going to be named as a co-conspirator.

 6          She hasn't tried to flee.  And, to me, that is the

 7  very best evidence that she's not going to try to flee.

 8          I also question -- or I take issue with the idea

 9  that only having a husband and two children in the Denver

10  area is not enough of a tie to the community.

11          She is a stay-at-home mom to her kids.  They live

12  in Denver.  Their one six year old attends Denver Public

13  Schools.  Your Honor, the other six year old has significant

14  special needs that Mrs. Tew is the caretaker for.

15          She has ties to the community.  Yes, she's not

16  born and raised here, but very few of us who live here are.

17          So I don't think that the fact that she doesn't

18  have extended family here is a strong indicator that she

19  doesn't have ties to the community.

20          She's a mom.  She has little kids.  They are

21  integrated into the community, and she is integrated into the

22  community.

23          I also take issue with the fact that anybody who

24  has access to resources, whether that is yacht currency,

25  which I will tell Your Honor that's a new term for me that

1    I've learned in the case, or Bitcoin or crypto-currency.

2            Just because people have access to money doesn't

3    mean that they are likely to flee.

4            As the Court knows, there are plenty of criminal

5    Defendants in this case who have access to money and are not

6    placed on GPS monitoring or home detention.

7            Again, to me, the best evidence that she is not a

8    flight risk is that we're on now month seven or eight of her

9    knowing that this case was coming down the pipeline, and she

10   has not fled.

11           So I take issue with the fact that just because

12   someone has potential access to money means that they are

13   likely to flee.

14           It's my understanding -- and just, Your Honor, I

15   meant to start with this, and I apologize for not.

16           Mrs. Tew has no objection to surrendering her

17   passport.  She understands that's going to be a condition of

18   pre-trial release.

19           She also has no objection to the no-contact order,

20   with the exception of allowing her to have contact with her

21   husband.

22           So I had talked with those that I told her were

23   going to be conditions, and we have no objection to those.

24           Again, I would just ask the Court to follow the

25   guidance of the pre-trial services office here.  I don't

1  believe there are any other conditions that are necessary to

2  ensure that she's going to stay and fight this case.

3         She has been consistent with me that she intends

4  to fight this case, and actually fighting this case is very

5  important.

6         THE COURT:  All right, thank you.  Mr. Kirsch, I

7  have a question for you with respect to home detention.

8         In many previous circumstances where the Court has

9  considered home detention, I've gotten a quizzical look from

10 the United States Probation Office about what's the point of

11 ordering home detention without some enforcement mechanism

12 like GPS monitoring.

13        Am I to understand that the Government in this

14 case is willing to suggest home detention without electronic

15 monitoring?

16        MR. KIRSCH:  Your Honor, my understanding is that

17 home detention would have a monitoring component that is

18 still done through a land line.  It may be that that's a

19 function of it being a while since I've done a case where

20 home detention was really an option.

21        Our preference is to have some sort of electronic

22 monitoring system.  And, frankly, I think GPS monitoring is

23 superior, because it works all the time.

24        So that's the Government's first preference.

25        THE COURT:  All right, thank you.

1    MS. HUBBARD:  And, Your Honor, I apologize.  I
2  just forgot this in my notes, as well.

3    But I was instructed to tell the Court that if you
4  are inclined to believe that Ms. Tew's physical presence
5  needs to be monitored in some way, her preference would be
6  for home detention.

7    Ms. Tew, for a number of reasons that aren't worth
8  going into here, rarely leaves her home.  Again, one of the
9  children she has, has significant special needs, and then she
10 has her own reasons.  But leaving home is difficult for her.

11    So it is her express preference for home
12 detention, if the Court believes that condition is necessary.
13 It is still our position that that condition is not necessary
14 to ensure she will show up.

15    THE COURT:  All right, thank you for the
16 clarification.

17    And let me ask the United States Probation Officer
18 who is present to enter his appearance for us, and then I
19 have a question for him.

20    MR. ANDERSON:  Yes, Your Honor.  Officer Anderson
21 from the United States Probation Department.

22    THE COURT:  All right, Officer Anderson, thank
23 you.  Why don't you clear up -- maybe try to clear up my
24 confusion on this point once and for all.

25    I think my confusion derives from the fact that

1  the standard bond additional conditions of release form has

2  separate paragraphs for participating in one of the following

3  location restriction programs, which can include home

4  detention, and submitting to location monitoring, as if those

5  are two separate and distinct conditions that the Court can

6  order.

7          But every time that I've discussed home detention

8  in the past with officers from the United States Probation

9  Office, my understanding is that their preference is that if

10  a person is placed on home detention that there be some

11  enforcement mechanism, like GPS or radio frequency

12  monitoring, to enforce that the home detention condition is

13  being complied with.

14          Is my understanding in that regard correct?  Is

15  that the Probation Office's preference?

16          MR. ANDERSON:  Yes, Your Honor, I believe that is

17  correct.

18          THE COURT:  All right.  And the difference between

19  the GPS monitoring and the radio frequency monitoring, again

20  is what?

21          MR. ANDERSON:  So with the GPS, we always have

22  reportage.  And the radio frequency, we can just pretty much

23  look up and find out where they are.

24          THE COURT:  Okay.

25          MR. ANDERSON:  If that makes sense, Your Honor.

1        THE COURT:  All right, thank you.

2        MR. KIRSCH:  Your Honor, I don't know if my

3   understanding is still correct.

4        But the understanding that I've always had is that

5   the radio frequency monitoring allowed the Probation Office

6   to determine whether or not the Defendant was actually at

7   home.  It doesn't operate outside of the home.

8        The GPS monitoring, in contrast, operates 24/7 and

9   allows the probation officer to determine any location, not

10  just the sort of binary at-home, or not.

11       MR. ANDERSON:  That is correct.

12       THE COURT:  All right, thank you.  So let me ask a

13  practical question, Mr. Anderson.

14       If the Defendant is placed on home detention with

15  radio frequency monitoring, the home detention condition has

16  a lot of exceptions.

17       For example:  Exceptions for attorney visits, and

18  exceptions for religious services, et cetera.

19       So, if by radio frequency monitoring you can only

20  tell whether the Defendant is at home, or not, I assume that

21  if the Defendant plans to leave her home, if placed on home

22  detention, to go to one of the excepted, you know, exceptions

23  -- that's a complicated phrase, permitted, like medical

24  treatment, Court and attorney visits, et cetera.

25       Does she have to receive permission from the

1   probation officer to do that in advance?

2        MR. ANDERSON:  Yes, Your Honor.  And then we could

3   put that time in when she's allowed to leave.  So if it's for

4   a hour, we can have a hour time slot where she can leave and

5   come back.

6        THE COURT:  And the radio frequency monitoring

7   would not tell you that she exactly went to whatever

8   appointment you gave her permission to attend, but it would

9   tell you whether she returned to the home in time.  Is that

10  right?

11       MR. ANDERSON:  That's correct, Your Honor.

12       THE COURT:  All right, thank you.

13     (Pause)

14       THE COURT:  All right.  The Court has jurisdiction

15  over the subject matter of the action, and over the parties.

16       Venue is proper in the District of Colorado, and

17  each party has been given a fair opportunity to be heard on

18  the issue of detention.

19       Ms. Tew, there are certain factors under the law

20  that I must examine in determining whether there are

21  conditions of release that will reasonably assure your

22  appearance in Court, as required, and the safety of the

23  community.

24       And those conditions include:

25       The nature and circumstances of the offenses

1    charged, and the weight of the evidence against you.

2           I must also consider your history and

3    characteristics, including your character, your physical and

4    mental condition, your family ties, your employment, your

5    financial resources, your length of residence in the

6    community and community ties, your past conduct, your history

7    related to drug or alcohol abuse, your criminal history, your

8    record concerning appearances at Court proceedings, whether

9    you were on any type of release at the time of commission of

10   the alleged incidents and offense, and the nature and

11   seriousness of the danger to any person or to the community

12   that would be posed by your release.

13          I have carefully reviewed the pre-trial services

14   report, and I take judicial notice of it.

15          I note several things from the pre-trial services

16   report:

17          I note that this 39-year old Defendant became a

18   naturalized citizen in the United States in 1981, and that

19   she is financially reliant on her husband, because she does

20   not work.

21          I note that she does take care of six year old

22   twins full-time, including one who has special needs.

23          I note that the Defendant was diagnosed with

24   depression when she was 12 years old, and she has mostly

25   taken medication for that condition at -- throughout her life

1   since that time.

2          The United States Probation Office has recommended

3   that the Defendant be released on a personal recognizance

4   bond, and that she surrender her passport.  And she, of

5   course, does not object to those conditions.

6          The Government is asserting that due to the nature

7   of the offenses, and due to the Defendant's familiarity, for

8   lack of a better word, and experience with transactions on

9   the dark net, and alternative forms of currency, like Bitcoin

10  and crypto-currency, that that warrants some additional

11  restrictions on the Defendant.

12         I note for the record that these are very serious

13  charges, of course, that the Defendant is facing.

14         I also note that one of the co-Defendants in this

15  case is her husband, and that the conditions of release

16  relating to her husband require her husband to submit to

17  electronic monitoring.

18         I'm very familiar with the file on this matter.

19  It does appear to me that Mr. Tew is the primary Defendant in

20  the case, but that really doesn't matter.  This is a husband

21  and wife team, both of whom are facing extremely serious

22  charges, and who live together, and who will continue to live

23  together and to care for two children.

24         Now, in light of the particular circumstances at

25  issue here, and in light of the Government's allegation of

1    Ms. Tew's substantial experience with transactions conducted

2    on the dark net, that include alternative currency forms, and

3    the Court's understanding and acknowledgment that familiarity

4    with those types of transactions can, in fact, result in an

5    accrual of significant wealth under the radar, so to speak,

6    and outside of the knowledge or ability to obtain knowledge

7    of the Government.

8            The Court will find that there is a combination of

9    conditions that I can impose that will reasonably assure the

10   appearance of this Defendant in Court in the future, and the

11   safety of the community.

12           This will be an unsecured bond in the amount of

13   $10,000.00.

14           The conditions of release will be as follows:

15           The Defendant must submit to supervision and

16   report for supervision to the United States Probation Office.

17           The Defendant must surrender any passport to the

18   Clerk of the Court within two business days, and may not

19   obtain a new passport or other international travel document.

20           Ms. Tew, your travel will be restricted to

21   Colorado, unless you get permission from the Court to go

22   elsewhere.

23           And you must avoid all contact, directly or

24   indirectly, with any person who is or who may be a victim or

25   witness in this investigation or prosecution, except your

1   husband.

2          You may not possess a firearm or destructive

3   device, or another weapon.

4          You may not use alcohol excessively.

5          You may not use or unlawfully possess narcotic

6   drugs or other controlled substances, and that includes

7   marijuana.

8          You must participate in a program of home

9   detention, which means you're restricted to your residence at

10  all times, except for employment, education, religious

11  services, medical, substance abuse, or mental health

12  treatment, attorney visits, Court appearances, Court ordered

13  obligations, or other activities approved in advance by the

14  pre-trial services officer, or the supervising officer.

15         You'll submit to location monitoring by radio

16  frequency, and you must pay all or any part of the costs of

17  that program based on your ability to pay.

18         You must report as soon as possible to the pre-

19  trial services officer.

20         If you have any contact with law enforcement while

21  you are on release, and that includes even a minor traffic

22  stop, you may not act as an informant for any law enforcement

23  agency without permission from the Court.

24         Your employment, if you have any, must be approved

25  in advance by your supervising officer.

1          You must provide verification of any income or

2    funds received.

3          You must provide access to any financial records

4    requested by the supervising officer.

5          You may not commingle personal and business funds.

6          You shall not register any business entities

7    without prior disclosure to the supervising officer.

8          You must notify the supervising officer of the

9    registration of any business entities by your family members.

10         You shall notify third parties of any risks that

11   may be occasioned by your personal history or

12   characteristics, and you must permit the probation officer to

13   make those notifications and to confirm your compliance with

14   the notification requirement.

15         You must not conduct any financial transactions

16   through the financial account of any business entity not

17   previously disclosed to the supervising officer or through

18   any other individual's financial account, and you may not

19   solicit or receive money from third parties without prior

20   approval by the supervising officer.

21         Of course, you must always -- you must also not

22   commit any violation of Federal, State, or local law while on

23   release.

24         You must cooperate in the collection of a DNA

25   sample, if that is authorized by the law.

1          You must advise the Court or the Pre-Trial

2    Services Office or the supervising officer, in writing,

3    before you make any change in your residence or your

4    telephone number.

5          And, of course, you must appear in Court as you

6    are directed to appear in the future.

7          Ma'am, do you understand the conditions of your

8    release?

9          MS. TEW:  I'm sorry.  I just wanted to clarify,

10   ma'am.  Bitcoin is not in the dark web.  I am not on the dark

11   web.  I don't necessarily understand that.

12         And I have lived her since 2015.  I moved here on

13   July 6th, Fourth of July weekend, in 2015.

14         I will be there.

15         THE COURT:  I understand.  And what I've taken

16   into account is the Government's suggestion that you have a

17   familiarity with and experience with the dark web.  It

18   doesn't matter so much to me in deciding a condition of bond

19   as to whether that experience is recent, or not.  But I

20   understand what you're saying.

21         MS. TEW:  Thank you.

22         THE COURT:  Do you understand your conditions of

23   release?

24         MS. TEW:  Yes.

25         THE COURT:  All right.  And do you promise to obey

1   all conditions of release, to appear as directed, and to

2   surrender to serve any sentence imposed?

3             MS. TEW:  Yes, ma'am.

4             THE COURT:  All right.  And are you authorizing me

5   to sign this bond paperwork on your behalf, acknowledging

6   that you understand these conditions and you promise to obey

7   them?

8             MS. TEW:  Yes, Your Honor.

9             THE COURT:  All right.  I will do that then.

10            MR. ANDERSON:  Excuse me, Your Honor.  Can we have

11  the Defendant report to the Probation Office tomorrow at

12  10:00 a.m. so we can get her set up?

13            THE COURT:  Yes.  Ms. Tew, you will have to report

14  to the Probation Office.  The probation officer is requesting

15  that you report tomorrow at 10:00 a.m.

16            That will be for the purpose of setting up your

17  radio frequency monitoring.

18            Any problem with that, Ms. Hubbard, that you're

19  aware of?

20            MS. HUBBARD:  Your Honor, other than that Ms. Tew

21  is primarily responsible for supervising kindergarten between

22  the hours of 9:00 and noon, so I would just ask the pre-trial

23  officer if they could make it 1:00 or 2:00 o'clock.

24            But otherwise, I'm confident that she can find a

25  way to make it work, but it would just be the afternoon

1    typically is much easier.

2            THE COURT:  Could we do it, Mr. Anderson, in the

3    afternoon, as opposed to at 10:00 a.m.?

4            MR. ANDERSON:  Yes, Your Honor, 1:00 o'clock would

5    be fine.

6            THE COURT:  All right, thank you.  Then I'll

7    modify my order, Ms. Tew, and ask you to report to the United

8    States Probation Office at 1:00 p.m. tomorrow for purposes of

9    getting set up for the radio frequency monitoring.

10           And I was in the process of signing the bond, and

11   let me return to that.

12       (Pause)

13           MS. HUBBARD:  Your Honor, I'm happy to continue

14   being a conduit until another attorney enters an appearance

15   on behalf of Ms. Tew, if your staff or anybody wants to shoot

16   me any documents that need to get sent to us by email.

17           THE COURT:  All right, that's fine.  You know, I'm

18   going to leave it to the United States Attorney's Office to

19   keep in touch with you, Ms. Hubbard, with respect to what's

20   going on in the case.  I appreciate that.

21       (Pause)

22           THE COURT:  All right.  I have signed the bond

23   paperwork.

24           Ms. Tew has received her instructions for

25   reporting to the United States Probation Office.

1        Is there anything further from the Government with

2   respect to Ms. Tew this afternoon, Mr. Kirsch?

3        MR. KIRSCH:  No, thank you, Your Honor.

4        THE COURT:  Thank you.  And anything further from

5   the Defendant, Ms. Hubbard?

6        MS. HUBBARD:  No, thank you.  Thank you for

7   letting me make a special appearance on this case, Your

8   Honor.  I do appreciate that.

9        THE COURT:  You are welcome.  And we will be in

10  recess.  Thank you.

11                    (Time noted:  2:59 p.m.)

12                         *  *  *  *  *

13                          CERTIFICATE

14       I, RANDEL RAISON, certify that the foregoing is a

15  correct transcript from the official electronic sound

16  recording of the proceedings in the above-entitled matter, to

17  the best of my ability.

18

19

20  _____         May 13, 2021

21  Randel Raison

22

23

24

25