1

```
 1                UNITED STATES DISTRICT COURT
                      DISTRICT OF COLORADO
 2

 3   UNITED STATES OF AMERICA,    .  Case No. 20-cr-00305-DDD-2
                                  .
 4             Plaintiff,         .
                                  .
 5   vs.                          .
                                  .
 6   MICHAEL AARON TEW,           .  901 19th Street
     KIMBERLEY ANN TEW, also      .  Denver, CO  80294
 7   known as Kimberley           .
     Vertanen, and JONATHAN K.    .
 8   YIOULOS,                     .
                                  .
 9             Defendants.        .
                                  .  July 15, 2021
10   . . . . . . . . . . . . . .  .  11:08 a.m.

11        TRANSCRIPT OF PROCEEDINGS HELD BEFORE THE HONORABLE
            KRISTEN L. MIX, UNITED STATES MAGISTRATE JUDGE
12
     APPEARANCES:
13
     For the Plaintiff:           United States Attorney
14                                By:  Matthew T. Kirsch
                                  By:  Hetal J. Doshi
15                                By:  Andrea L. Surratt
                                  1801 California Street
16                                Suite 1600
                                  Denver, CO  80202
17                                (303) 454-0100

18   For the Defendant:           Tor Ekeland Law, PLLC
                                  By:  Tor B. Ekeland
19                                By:  Michael Hassard
                                  30 Wall Steet, 8th Floor
20                                New York, NY  10005
                                  (718) 737-2764
21
     Also Present:                Kimberly A. Tew
22                                Carlos Morales

23   Court Recorder:              Clerk's Office
                                  U.S. District Court
24                                901 19th Street
                                  Denver, CO  80294
25
```

**EXHIBIT A**

```
 1  Appearances continued:

 2  Transcription Service:        AB Litigation Services
                                  216 16th Street, Suite 600
 3                                Denver, CO  80202
                                  (303) 296-0017
 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24
    Proceedings recorded by electronic sound recording;
25  transcript produced by transcription service.
```

3

                    (Time noted: 11:08 a.m.)
         THE COURT CLERK:  All rise.  Court is in session.
         THE COURT:  Thank you.  Please be seated.
         Good morning.  This is case number 20-cr-00305, United States of America versus Kimberley Ann Tew, et al.
         Let's have counsel enter appearances, please, starting with counsel for the Government.
         MR. KIRSCH:  Good afternoon, Your Honor.  Matthew Kirsch, Hetal Doshi, and Andrea Surratt, here for the Government.
         THE COURT:  Good morning.
         MR. EKELAND:  Good morning, Your Honor.  I'm Tor Ekeland appearing for the Defendant.
         THE COURT:  Good morning.  We're here on the Defendant's motion to modify the terms of her pre-trial release.
         I have received and reviewed the motion.
         I'll hear from defense counsel first.  Mr. Ekeland?
         MR. EKELAND:  May I proceed?
         THE COURT:  You may.
         MR. EKELAND:  Thank you, Your Honor.  So I think we've stated clearly, Your Honor, our argument in our motion papers, and we'll stand on those papers.  I'm just asking that we can reply to anything that the Government may raise.

1               It is my understanding that Mr. Morales, who is
2    the PO for both of the Tews is in Court today, and I think he
3    can inform the Court as to what he thinks are necessary
4    conditions for Mrs. Tew.
5               But basically we're asking for the same conditions
6    of release that co-Defendant, Jonathan Yioulos has, who is
7    facing 25 more felony counts than Ms. Tew.
8               And we would just submit to the Court that there
9    is no evidence in the record, and the Government has the
10   burden here, as the Court knows, by the preponderance of the
11   evidence, to establish that she's a flight risk. And there
12   is nothing in the record that indicates she's any type of
13   flight risk.
14              Pre-trial's original recommendation was that she
15   be freed on her own recognizance.
16              And I'd note that the Government raised the issue
17   that she had access to Bitcoin cryptocurrency, but financial
18   means by itself is not dispositive of somebody being a flight
19   risk. You need something more, because Mr. Yioulos has the
20   same resources.
21              And if the seriousness of the charges is
22   determinative of the flight risk here, then Mr. Yioulos
23   should be on home confinement with an ankle bracelet, as
24   well, because his cooperation with the Government is not a
25   factor under the BRA.

1          THE COURT: All right. Thank you. Well, let me
2 address one issue relating to the so-called "record" and the
3 repeated statements in the motion and statements by counsel
4 this morning about the lack of any evidence in the record
5 justifying the conditions of release that were previously
6 imposed on the Defendant.
7          I know, Mr. Ekeland, that you probably don't
8 practice in the District of Colorado much, and I don't know
9 how they do things in the Eastern District of New York.
10         But I want to make sure that you understand that
11 the statements that were made by Government counsel at the
12 time of the initial detention hearing are considered evidence
13 in the record. There is no transcript of that hearing on the
14 Court's electronic docket because a transcript was not
15 ordered by counsel.
16         Nevertheless, those statements and the recording
17 that was made of that proceeding are considered to be part of
18 the record in this case.
19         So to the extent that you're suggesting that there
20 is no record that supports the Court's order with respect to
21 the conditions of release that were placed on your client,
22 that's just incorrect. There is no transcript of the hearing
23 that was held, but there was, indeed, a record made with
24 respect to the Government's statements.
25         My other concern relates to, of course, the

1  Statutory requirement for reopening the proceeding. And, as
2  you know, under 18 U.S.C. section 3142(f)(2), the Court may
3  reopen the detention hearing if:
4          "[I]nformation exists that was not known to the
5  movant at the time of the hearing and that has a material
6  bearing on the issue whether there are conditions of release
7  that will reasonably assure the appearance of the person as
8  required and the safety of any other person and the
9  community."
10         That's the Statutory requirement.
11         Now, I understand that the parties may have
12 reached some agreement with respect to modification of the
13 conditions of this Defendant's release. The Government may
14 not have reached an agreement with the Defendant on that.
15 The Government may have a different proposal from what the
16 Defendant is proposing.
17         But as far as I'm concerned, this is the Statutory
18 threshold that must be met for the hearing to even be
19 reopened. And I haven't heard any suggestion from the
20 Defendant that there is information that exists that was not
21 known to the Defendant at the time of the original detention
22 hearing.
23         But to the extent that such information exists, I
24 think you have the burden of establishing what it is. What
25 is it?

1           MR. EKELAND:  Your Honor, we're not arguing new
2   information, but we are arguing that this detention is un-
3   Constitutional and arbitrary under the Bail Reform Act, and
4   that when you compare Ms. Tew's conditions of confinement to
5   Mr. Yioulos, the disparity becomes clear.
6           And, Your Honor, to the extent that there is
7   evidence in a transcript that hasn't been ordered, we will
8   review that.  And I apologize to the Court because it is not
9   our intention to say that the Court has done something wrong.
10          But our main argument as stated in our papers is
11  that the current conditions of release are un-Constitutional
12  under the Fifth Amendment of the United States Constitution,
13  because they appear to have been punitively imposed in order
14  to coerce a plea, and that what we've seen of the evidence,
15  and it's my understanding that the law is the same in the
16  Eastern District as it is in the District of Colorado, seems
17  to indicate that there is not -- the least restrictive means
18  have not been imposed, and there seems to be an arbitrary
19  disparity that we are unaware of a rationale for between Mr.
20  Yioulos' conditions and Ms. Tew's.
21          THE COURT:  All right.  Well, I understand what
22  you're arguing.  I'll hear from the Government with respect
23  to this, as well.
24          Let me just say that, you know, it would not have
25  been difficult for the Defendant and defense counsel to do a

1  little homework about this matter and to discover two things:
2              First, that motions to modify conditions of
3  release are assigned to the Magistrate Judge who placed the
4  Defendant on release in the first place.
5              The motion, the written motion in this case, has a
6  tone which appears to me to be under the false impression
7  that the District Judge assigned to the case, Judge Domenico,
8  would be rehearing this motion.
9              If you had done your homework and had understood
10 how things work in the District of Colorado, you would know
11 that this motion would come back to this Magistrate Judge,
12 because I'm the person who put Ms. Tew on the conditions of
13 release in the first place.
14             The other thing which I cannot let go without
15 commenting on are the repeated assertions in the written
16 motion that this Court is racist, in that the Court imposed
17 conditions on this Defendant due to her status as an Asian-
18 American.
19             Again, had you done any research whatsoever into
20 this Judge, I think you would have learned easily, clearly,
21 and definitively, that that is not who I am and that is not
22 who I have ever been.
23             And to the extent that you are suggesting that the
24 Court somehow imposed conditions because of the color of your
25 client's skin, the Court is deeply offended. And I have to

```
 1  make that statement for the record.
 2              All right.  I'll hear from the Government counsel,
 3  please, Mr. Kirsch.
 4              MR. KIRSCH:  Thank you, Your Honor.  First of all,
 5  the Government agrees with the Court with respect to the
 6  relevant standard here under 3142(f).
 7              The Defendant, in order to have a hearing in the
 8  first place, the Defendant needs to have alleged not only
 9  material that was not available at the time of the original
10  hearing, but that information has to be material.
11              As we read the Defendant's motion as favorably as
12  possible, you could characterize the -- you could
13  characterize the information that she -- that the Defendant
14  temporarily suffered from bruising --
15              THE COURT:  Bruising.
16              MR. KIRSCH:  -- somewhere on her leg, that there
17  is no evidence that's actually connected to the ankle
18  monitor, that is arguably new evidence.  It's the only
19  arguable new evidence, and it is not material to the question
20  before the Court about whether or not what is the combination
21  of conditions that would reasonably satisfy her appearance.
22              To the extent that the Court is entertaining the
23  argument that this constitutes a due process violation,
24  because there is no valid interest in seeking her detention,
25  the Government would refer the Court back to all of the
```

1   arguments and evidence that the Government presented at the
2   initial detention hearing.
3            The Government believes there is obvious and
4   adequate justification for seeking detention of Ms. Tew.
5            I would also make sure that the Court is aware
6   that there has, in fact, been a transcript prepared of those
7   original proceedings. It's at docket number 128. And as far
8   as the Government is aware, it had been prepared at the time
9   Ms. Tew's motion was filed.
10           Finally, I would -- I want to make, on behalf of
11  the United States Attorney's Office, a similar statement to
12  the one that the Court made with respect to the allegation
13  that there is a racial animus that's motivating the
14  Government's position in this case. That's not true.
15           As the Court is aware, the Government has sought
16  and obtained different conditions of release with respect to
17  each of the Defendants.
18           THE COURT: From different Judges, right? I don't
19  think I was the one who put Mr. Yioulos, or whatever the
20  other Defendant's name is, on release. I believe it was
21  Judge Hegarty, wasn't it? Maybe not. I don't remember. But
22  anyway, go ahead.
23           MR. KIRSCH: It was -- I believe it was you.
24           THE COURT: Was it me? Okay.
25           MR. KIRSCH: Yes, Your Honor.

1          THE COURT: Okay. Fair enough.
2          MR. KIRSCH: But there are different bond amounts
3  in each cases. The Government put forth different evidence
4  with respect to Mr. Yioulos and Ms. Tew.
5          And, in particular, two things that bear on the
6  issue of flight risk:
7          One, that Mr. Yioulos had begun cooperating
8  immediately, and had continued to cooperate, and, therefore,
9  had an additional interest to appear.
10         And second, that he doesn't have the substantial
11 experience with cryptocurrency and/or the dark net that --
12         THE COURT: Or a degree in accounting.
13         MR. KIRSCH: That's also true. The last thing
14 that I feel like I have to point out on that point, Your
15 Honor, and, again, the Court probably remembers this already.
16         But at that hearing, there was actually a question
17 about whether or not Ms. Tew should get a curfew and have a
18 GPS monitor, or whether she should be subject to home
19 detention.
20         The Government actually expressed as its first
21 preference that she get GPS monitoring with a curfew. It's
22 was Ms. Tew's attorney who said her client had asked her to
23 ask for home detention instead.
24         And so the idea that after she requested that,
25 that that could somehow be used as evidence of racial animus,

```
 1  is shocking.
 2           So the Government's position is there is no
 3  evidence to justify the new hearing here in the first place,
 4  but to be absolutely fair, the Government's position before
 5  was that GPS monitoring with a curfew was fine.  The
 6  Government hasn't changed its position about that.
 7           And if the Court, despite the lack of proper
 8  procedural status to be able to make that modification, if
 9  the Court wanted to do that, the Government wouldn't object.
10           THE COURT:  So let's talk about that.  And I will,
11  of course, allow defense counsel to address that, as well.
12           That is my recollection that the Government sought
13  GPS monitoring and curfew at the time of the initial hearing,
14  that defense counsel suggested that Defendant preferred radio
15  frequency monitoring and home confinement.
16           But to the extent that the Government is now
17  saying the Government has no objection to changing the
18  conditions of release to electronic monitoring and a curfew,
19  does the Government have a position with respect to the
20  timing of the curfew?
21           I understand from the pre-trial services report
22  that Ms. Tew does not drive, and, therefore, my thinking is
23  that a curfew, you know, with two small children, of around
24  7:00 p.m. would probably work for the Defendant.
25           What is the Government's position with respect to
```

1  the curfew?
2          MR. KIRSCH:  I didn't discuss this with the
3  probation officer in advance.  I'm sorry.  7:00 p.m. would be
4  completely reasonable to the Government under those
5  circumstances.
6          Our memory is that Mr. Tew's curfew is 9:00 p.m.
7  If the Court were to find that it made sense for them to have
8  the same curfew, the Government wouldn't object to that
9  either.
10         And if Officer Morales has a suggestion for a
11 different time, then we would be likely to defer to that
12 suggestion.
13         THE COURT:  Okay.  And I'll let you talk, Mr.
14 Ekeland.  I promise I will.
15         But Mr. Morales, as I understood it, you don't
16 have a particular preference with respect to a curfew 7:00
17 p.m., 9:00 p.m.?
18         MR. MORALES:  No, Your Honor.
19         THE COURT:  All right.  Thank you.  And I
20 understand also from Mr. Morales that Ms. Tew has done very
21 well on her release to-date.  There is no dispute with
22 respect to that.  There is no allegation of violations of the
23 conditions of her release whatsoever.  I am taking judicial
24 notice of that, as well.
25         All right, Mr. Ekeland, what is your position with

1  respect to a potential modification that would include
2  electronic monitoring instead of radio frequency monitoring,
3  and a curfew of 8:00 a.m. to 9:00 p.m.?
4              MR. EKELAND:  Your Honor, we would obviously like
5  no ankle monitoring, as we've argued before, release on
6  personal recognizance.
7              But if there was to be a curfew that ends at 9:00
8  p.m., is acceptable.  And if we could eliminate the home
9  confinement, that's excellent, as well, Your Honor.
10             THE COURT:  All right.  Well, we're in a bit of a
11 procedural quandary here because of the language of the Bail
12 Reform Act.
13             But I am inclined to construe loosely the language
14 requiring information exists that was not known to the movant
15 at the time of the hearing, and to give her the benefit of
16 the doubt with respect to the bruising that was caused by the
17 radio frequency monitor.
18             Arguably, that is information that was not --
19 certainly was not known to the movant at the time of the
20 hearing.
21             And so for that reason, the Court will find that
22 it is appropriate to reopen the hearing to address the issue
23 of the conditions of release.
24             I do take judicial notice of the fact that the
25 Defendant has performed well on the conditions of the release

1  to-date.  I also take notice of her affidavit with respect to
2  the bruising from the radio frequency monitoring.
3           I do agree with the Government that given the
4  unique circumstances of this Defendant's background, there is
5  a reason to impose some conditions that will not be overly
6  restrictive, but will guarantee her appearance in Court in
7  the future.
8           I am well aware of the Defendant's
9  responsibilities for her two children, including one of whom
10 is a special needs child.  I am aware of the Defendant's
11 husband's bond conditions at this time.
12          And the Court finds that the bond conditions
13 should be modified, in part, to remove the condition of home
14 confinement, to replace the radio frequency monitoring with
15 electronic monitoring, and to also impose a curfew of 8:00
16 a.m. to 9:00 p.m., so that the Defendant's movements will be
17 monitored between 8:00 a.m. and 9:00 p.m. pursuant to the GPS
18 monitoring, but she won't be dealing with the radio frequency
19 monitoring, which sets off every time she wants to take the
20 kids to the pool, or anything like that.
21          Mr. Morales, is there something you wanted to add?
22          MR. MORALES:  No, Your Honor.  I just wanted it to
23 be clear it's going to be GPS monitoring with a curfew from
24 8:00 to 9:00 p.m.?
25          Could there be some discretion also to allow for

1  changes in that?
2         THE COURT: I was just going to get to that.
3         MR. MORALES: Okay.
4         THE COURT: So, you know, we're fortunate that
5  we're dealing with a very experienced United States Probation
6  Officer, who is responsible for Ms. Tew's monitoring while
7  she's on her conditions of release.
8         And in the past, I have modified the authority of
9  the United States Probation Officer to provide essentially
10 exceptions for emergency circumstances, for leisure
11 circumstances, when, in the judgment of the United States
12 Probation Officer, it is appropriate to do that.
13        And I will do that here, as well. In other words,
14 to the extent that some exception would like to be -- the
15 Defendant would like some exception to her curfew to be made
16 for purposes of leisure activities or anything else, she may
17 ask the United States Probation Officer to authorize that
18 exception, and I'll allow him to do that in his judgment.
19        And there will be no second guessing of that by
20 the Court. So the United States Probation Officer will have
21 the authority to speak to the Defendant and/or her counsel
22 with respect to modifications of the curfew on an as-needed
23 basis, and to make a decision as to whether it's appropriate
24 based on the circumstances that arise.
25        Does that make sense?

| | |
|---|---|
| 1 | MR. EKELAND: Yes, Your Honor. Thank you. |
| 2 | THE COURT: All right. You're welcome. |
| 3 | THE COURT CLERK: Would Your Honor like to execute |
| 4 | an amended order setting the conditions? |
| 5 | THE COURT: I think we can cover this, frankly, in |
| 6 | the minutes of today's proceeding. I want to make sure I |
| 7 | have the Defendant's statement on the record that she |
| 8 | understands the modification of the conditions of her |
| 9 | release. |
| 10 | The motion, for the record, is granted in part and |
| 11 | denied in part. |
| 12 | The Defendant's conditions of release are modified |
| 13 | to remove the home confinement condition, to remove the radio |
| 14 | frequency monitoring condition, to add a condition for GPS |
| 15 | monitoring. That's going to have to be put in place, of |
| 16 | course, by the United States Probation Officer. To add a |
| 17 | curfew of 8:00 a.m. to 9:00 p.m., and to allow the U.S. |
| 18 | Probation Officer to have discretion to allow exceptions to |
| 19 | the curfew when requested by the Defendant on the judgment of |
| 20 | the United States Probation Officer, as appropriate. |
| 21 | Do you understand those conditions, or |
| 22 | modification of your conditions, Ms. Tew? |
| 23 | MS. TEW: Yes. |
| 24 | THE COURT: All right. Then the minutes will |
| 25 | reflect the modifications, and the minutes will reflect that |

1  the Defendant understands the modifications of the
2  conditions.
3           And, of course, you also agree to comply with
4  these modified conditions, Ms. Tew.
5           MS. TEW:  I wasn't aware that I would have to be
6  switched to a GPS monitor, which is unfortunately much
7  heavier than the RF monitor, and it also has a separate
8  battery attachment.  And to my knowledge, there's only one
9  unit available.
10          And previously, the first time, and that was on-
11 line, but I believe my former attorney had worked out an
12 agreement where there would be home confinement with a land
13 line, not even an RF ankle monitor, which is how I ended up
14 here.  There was just some confusion there.  But I never once
15 elected for the GPS location just because of the size, and
16 it's just -- it's not a great fit for my current situation
17 with two children.
18          THE COURT:  I mean, I understand that you'd prefer
19 not to have monitoring.  I get that.  You know, I understand
20 that there -- it's difficult, especially in the summertime,
21 to have monitoring because they are visible on a person's
22 leg.
23          For example, going to the pool is a perfect
24 example of a time when a monitor is visible.  And there is a
25 stigma, and it can be an issue of embarrassment and all of

1 that stuff.
2          But the fact of the matter is that based on the
3 record before the Court, the Court is going to impose some
4 kind of monitoring requirement.  The GPS monitoring allows
5 you greater freedom, because you can leave your home.  You'll
6 still be monitored, but never -- and I understand it's
7 heavier and maybe more cumbersome to you, but generally the
8 GPS monitoring is a better situation in terms of your ability
9 to move around and to move around with your children if you
10 wish to do that.
11          So, you know, it's sort of a -- the Court is going
12 to impose it.  And I understand your objection to it.  I
13 understand your concerns about it.
14          What I need to know from you is that you
15 understand that that's going to be imposed, and that you
16 agree that you're going to abide by the conditions that I am
17 imposing.
18          MS. TEW:  Yes, Your Honor.  Thank you for your
19 time.
20          THE COURT:  All right, thank you.  So the minutes
21 will reflect the modification of the conditions, the partial
22 granting of the motion to modify.
23          Is there anything else that we need to address
24 today from the Government's point of view.
25          MR. KIRSCH:  No, thank you, Your Honor.

1  THE COURT: Thank you. Anything else from the
2 Defendant?
3  MR. EKELAND: No, Your Honor, thank you.
4  THE COURT: Thank you. We're in recess.
5  THE COURT CLERK: All rise. Court is in recess.
6  (Time noted: 11:30 a.m.)
7  * * * * *
8  CERTIFICATE
9  I, RANDEL RAISON, certify that the foregoing is a
10 correct transcript from the official electronic sound
11 recording of the proceedings in the above-entitled matter, to
12 the best of my ability.
13
14  *[signature: Randel Raison]*
15  _____    August 20, 2021
16 Randel Raison
17
18
19
20
21
22
23
24
25