IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Daniel D. Domenico**

Civil Action No. 1:20-cr-00305-DDD

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. MICHAEL AARON TEW;

2. KIMBERLEY ANN TEW,
   a/k/a Kimberley Vertanen

    Defendants.

---

## ORDER DENYING MOTION TO SUPPRESS EVIDENCE FROM SEARCH OF 3222 EAST FIRST AVENUE, APARTMENT 224

---

Defendants Michael A. Tew and Kimberley A. Tew move to suppress from evidence two bank bags and all photographs derived from a July 31, 2020 search of their residence. (Doc. 221.) For the following reasons, the motion to suppress is denied.

### BACKGROUND

The Tews's charges stem from an alleged scheme to defraud National Air Cargo (NAC), a Florida company at which Mr. Tew served as a contracted chief financial officer between 2015 and September 2018. Between August 2018 and July 2020, Mr. Tew allegedly conspired with Ms. Tew and others to defraud NAC via wire of more than $4 million. Mr. Tew was arrested on July 8, 2020 pursuant to a Criminal Complaint (Doc. 1) and arrest warrant (Doc. 2) issued the same day. Mr. and Ms.

- 1 -

Tew were later indicted on February 3, 2021 on counts stemming from the conspiracy. (Doc. 84.)

On July 31, 2020 Special Agent Sarah Anderson of the FBI applied for a search warrant in federal district court, seeking to search all rooms in Mr. and Ms. Tew's place of residence, 3222 East First Avenue, Apartment 224, for two cloth bank bags and an Apple iPhone. (Doc. 221-1.) Magistrate Judge Michael E. Hegarty issued a search warrant on the same day. (Doc. 221-2.) On July 13, 2022, Mr. and Ms. Tew filed the instant motion to suppress. (Doc. 221.) On October 12, 2022, the court held a hearing on the motion, at which testimony and evidence were received.

During the July 31 search of Mr. and Ms. Tew's residence, agents entered into Apartment 224 with a warrant authorizing them to seize two cloth bags, one bearing the insignia of Wells Fargo, and the other bearing an insignia of another bank; and an Apple iPhone. (Doc. 221-2.) Mr. Tew was home, Ms. Tew was not. Mr. Tew showed the agents where the bags were located and explained that Ms. Tew was not in the apartment, and she was in possession of the iPhone identified in the warrant. Mr. Tew called Ms. Tew on the number associated with the specified iPhone while agents searched the apartment. The agents seized the bank bags and took three sets of photographs of the apartment: the first set was taken in order to make a record of the residence pre-search, the second set was taken of evidence and its surroundings upon its discovery, and the third was taken after the search to make a record of the state of the residence following execution of the warrant. Agents took extensive photographs of the Tew residence, as well as the seized bank bags. The agents did not recover the iPhone at that time, as it was in Ms. Tew's possession.

## ANALYSIS

Mr. and Ms. Tew argue that all evidence from the search was derived in violation of the Fourth Amendment and must be suppressed. Specifically, they contend that there was not probable cause to issue a search warrant authorizing the seizure of the bank bags, and that the photographs taken by the agents amounted to a seizure that falls outside the scope of authorization of the search warrant.

### I.   Probable Cause to Seize Bank Bags

I agree with the government that the supporting affidavit to the search warrant established probable cause for the search and seizure of the bank bags. Pursuant to the Fourth Amendment, no judge may issue a warrant without probable cause. Probable cause exists "when the supporting affidavit sets forth sufficient facts that would lead a prudent person to believe that a search of the described premises would uncover contraband or evidence of a crime." *United States v. Sanchez*, 725 F.3d 1243, 1247 (10th Cir. 2013) (citations omitted). Probable cause requires "a nexus between suspected criminal activity and the place to be searched." *United States v. Corral-Corral*, 899 F.2d 927, 937 (10th Cir. 1990) (citations omitted). "Although neither hard evidence nor personal knowledge of illegal activity are required to demonstrate an adequate nexus, an affidavit must demonstrate circumstances which would warrant a person of reasonable caution in the belief that the articles sought are at a particular place." *United States v. Khan*, 989 F.3d 806, 816 (10th Cir. 2021) (internal quotation marks omitted) (citations omitted).

Mr. and Ms. Tew argue that the affidavit by Special Agent Anderson "failed to [establish] probable cause for the search and seizure of the items seized," and that there was no nexus "between the bank bags, the

residence, the criminal conduct, or the proceeds or evidence of criminal conduct." (Doc. 221 ¶7.) But the affidavit shows that agents had multiple reasons to believe that the bank bags had been used to move the proceeds of criminal conduct and were kept at the Tew residence. (Doc. 221-1.) In a July 28, 2020 interview Mr. Tew told agents that he used two bank bags, one from Wells Fargo and another from Guarantee Bank and Trust to carry cash withdrawn from traditional bank accounts that received proceeds from the alleged NAC fraud. In the same interview Mr. Tew stated that the bank bags were stored at Apartment 224. Special Agent Anderson did not only rely on Mr. Tew's word in her affidavit. Agents had video footage from March 27, 2020 of Mr. Tew holding a black cloth bag that matched his description of the bank bag while he fed cash into a XBTeller Bitcoin ATM. Agents were also in possession of photos from July 4, 2020 that pictured Mr. Tew carrying a black cloth bag with "Wells Fargo" written on the front at an ATM at a Navy Federal Credit Union. Navy Federal Credit Union records show that at the time the photos were taken, Mr. Tew withdrew cash from several named accounts that received NAC funds.

Contrary to Mr. and Ms. Tew's contention, the information provided to the magistrate judge is sufficient to establish the nexus required for probable cause. Search warrants should be reviewed in a commonsense manner. *See, e.g.*, *United States v. Ventresca*, 380 US 102, 109 (1965). The affidavit uses Mr. Tew's own statements and photo and video evidence to establish a clear chain between the proceeds from the alleged fraud, named bank accounts, the bank bags, and Apartment 224. The affidavit succinctly lays out the relationship between the bank bags and the commission of the alleged crime such that a reasonable person would consider the bank bags to be evidence of a crime. The affidavit thoroughly explains that Apartment 224 is the shared residence of Mr. and

Ms. Tew. *See United States v. Gonzalez*, 399 F. 3d 1225, 1231 (10th Cir. 2005) (holding that an affidavit must link the place to be searched with suspected criminal activity and may not simply list the address of the location to be searched). Given Mr. Tew's statements that the bank bags were kept at Apartment 224, a person of reasonable caution could safely assume that a search of the residence would uncover the bank bags. The affidavit established a nexus between the crime, the bank bags, and the residence. The magistrate judge did not err in finding probable cause to issue a search warrant.

When reviewing the issuing magistrate judge's probable-cause determination, the Court should afford "great deference" unless "there is no substantial basis for concluding that probable cause existed." *United States v. Sanchez*, 725 F.3d 1243, 1247 (10th Cir. 2013) (citations omitted). I do not consider this a borderline case, and decline to disrupt Judge Hegarty's determination.

## II. Photographs

Mr. and Ms. Tew also seek to suppress all photographs taken at Apartment 224. They argue that the photographs taken by agents during the execution of the search warrant exceeded the scope of the warrant and amount to an illegal seizure. Neither argument is persuasive.

### A. Scope of the Search Warrant

The warrant requirement serves two primary objectives: (1) to ensure that the government's intrusion is necessary; and (2) that it is "as limited as possible." *Coolidge v. New Hampshire*, 403 US 443, 467 (1971). The second goal is accomplished by requiring a particular description of things to be seized. *Id*. Blanket suppression is the required remedy when execution of a warrant amounts to a flagrant fishing

expedition for the discovery of incriminating evidence. *See United States v. Foster*, 100 F.3d 846, 850 (10th Cir. 1996) ("The particularity requirement is undermined and [the otherwise] valid warrant is transformed into a general warrant thereby requiring suppression of all evidence seized under that warrant.") (quoting *United States v. Medlin*, 842 F.2d 1194, 1199 (10th Cir. 1988)). Mr. and Ms. Tew argue that agents exceeded the scope of the warrant when they photographed every "room, closet, and drawer in the apartment" even after Mr. Tew led them to the bank bags and explained that Ms. Tew was in possession of the iPhone described in the warrant. (Doc. 221 at ¶15.) Defendants argue that the agents' search following Mr. Tew's explanation for the whereabouts of the phone constituted an "unauthorized illegal search." (Doc. 246.)

The warrant issued on July 31, 2020 specified "[the] place to be searched includes all rooms for the apartment unit 224." Had Mr. Tew immediately presented the agents with the bank bags and the iPhone, an extensive search and photographic documentation of the rest of the apartment may have raised the possibility of a fishing expedition. But he did not. After Mr. Tew led agents to the bank bags, the other particularized item in the warrant remained missing. Law enforcement officials are not required to halt execution of a search warrant because a suspect alleges that named items in the warrant are not present in the place to be searched. Certainly fewer criminal cases would reach this court were that the case. While Mr. Tew may have truthfully asserted that the iPhone was not in the apartment, agents were not required to take his word for it and halt their search of the apartment. The scope of

the warrant was thus not exceeded when agents continued to execute the search warrant following receipt of the bank bags.

### B. Photographs as Seizures

A seizure under the Fourth Amendment occurs when "there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 US 109, 113 (1984). The government argues in their response to Defendants' motion that because agents did not physically seize anything observed in the photographs apart from the bank bags, agents did not interfere with either of the Tews's possessory interests. (Doc. 236.) I agree.

Courts have found in limited circumstances that photographs can amount to seizures. *See, e.g.*, *United States v. Johnson*, 452 F.2d 1363, 1371 (D.C. Cir. 1971) ("[The] photographic seizure of [defendant's] person during an involuntary detention may run afoul of the Fourth Amendment's proscription against unreasonable searches and seizures."); *United States v. Jefferson*, 571 F. Supp. 2d 696, 704 (E.D. Va. 2008) (holding that high-resolution photographs of documents for later review constitute a seizure). *But see, e.g.*, *United States v. Mastronardo*, 987 F. Supp. 2d 569 (E.D. Pa. 2013) (photographing documents is not a seizure but subsequent examination of the photographs may constitute a second search). The present facts meet none of these limited circumstances and Defendants do not make a compelling case for why a deviation from the case law should be made for them. In photographing the Tews's apartment, agents did not meaningfully interfere with any of the Tews's possessory interests in their property, tangible or intangible. The agents lawfully searched the apartment and took photographs as would

be reasonably expected given the scope of the warrant. The photographs did not amount to a seizure and should not be suppressed.

Even if some of the photographs had exceeded the scope of the warrant, blanket suppression is an inappropriate remedy. First, as the government points out, several of these photographs are of the bank bags explicitly authorized to be seized. (Doc. 236.) In the defendants' reply, Mr. and Ms. Tew acknowledge that they are "not challenging the right of agents to photograph that which they are seizing in a search" yet seek to suppress photographs of just that. (Doc. 246.) The bank bags were justified by the warrant and legitimately found during the search, making any motion for suppression that includes these photographs inappropriate under even Defendants' theory. Second, the Court notes the government's stated intent to only offer selected photographs at trial. Third, in executing a search warrant, "officers may take reasonable action to secure the premises and to ensure their own safety and the efficacy of the search." *Los Angeles Cnty., California v. Rettele*, 550 U.S. 609, 614 127 S. Ct. 1989, 167 L. Ed. 2d 974 (2007). The first and third rounds of photographs taken at Apartment 224 were taken as routine procedure that protects the defendants' interests as well as the government's—these photographs are taken to accurately represent the premises, including any evidence seized, and ensure that any property damage that may result from a search is recorded.

Blanket suppression is an extreme remedy that should only be applied in extraordinary cases. *See United States v. Foster*, 100 F.3d 846, 852 (10th Cir. 1996). Mr. and Ms. Tew fail to explain why the present circumstances meet such demanding criteria. Should the government offer any particular photographs as evidence that Mr. or Ms. Tew

believes was obtained improperly, they may make a motion to that effect at the appropriate time.

## CONCLUSION

Mr. and Ms. Tew's Motion to Suppress Evidence from Search of 3222 East First Avenue, Apartment 224 (Doc. 221) is DENIED as explained above.

DATED: October 27, 2022     BY THE COURT:

~~Daniel~~ D. Domenico
United States District Judge