IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico

Civil Action No. 1:20-cr-00305-DDD

UNITED STATES OF AMERICA,

    Plaintiff,

v.

2.  KIMBERLEY ANN TEW,
        a/k/a Kimberley Vertanen

    Defendant.

---

## ORDER DENYING MOTION FOR SEVERANCE

---

Defendant Kimberley A. Tew seeks to sever her trial from that of her codefendant, Michael A. Tew. Ms. Tew argues that severance is necessary because admission of her non-testifying codefendant's out-of-court statements would violate Sixth Amendment's Confrontation Clause, and because joinder of the defendants will prejudice her case. For the following reasons, the motion for severance is denied.

## BACKGROUND

The Tews's charges stem from an alleged scheme to defraud National Air Cargo (NAC), a Florida company at which Mr. Tew served as a con-tracted chief financial officer between 2015 and September 2018. Be-tween August 2018 and July 2020, Mr. Tew allegedly conspired with Ms. Tew and others to defraud NAC via wire of more than $4 million. On July 7, 2020, alleged co-conspirator Jonathan Yioulos telephoned Mi-chael Tew to discuss the NAC fraud. Mr. Yioulos did so in cooperation with the IRS and FBI and was attempting to elicit incriminating

statements from Mr. Tew. Multiple times in the conversation Mr. Tew made statements that incriminated both him and Ms. Tew.

Mr. Tew was arrested on July 8, 2020 pursuant to a Criminal Complaint (Doc. 1) and arrest warrant (Doc. 2) issued the same day. Following his arrest Mr. Tew had multiple interviews with the government per proffer agreements. The proffers took place on July 15, 2020, July 28, 2020, and July 29, 2020. Ms. Tew did the same. Her proffer took place on October 23, 2020. In their proffers, both Mr. and Ms. Tew made incriminating statements. Mr. and Ms. Tew were later indicted on February 3, 2021 on counts stemming from the conspiracy. (Doc. 84.) Ms. Tew is charged with twelve counts of the Indictment, Mr. Tew is charged with sixty counts. On July 13, 2022, Ms. Tew filed the instant motion to sever. (Doc. 218.) On October 12, 2022, the court held a hearing on the motion, at which testimony and evidence were received.

## ANALYSIS

In relevant part, Federal Rule of Criminal Procedure 8(b) provides that the "indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Joint trials are preferred in the federal system for defendants who are indicted together. *See Zafiro v. United States*, 506 U.S. 534, 537 113 S. Ct. 933, 122 L. Ed. 2d 317 (1993). Joint trials "generally serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability." *Richardson v. Marsh*, 481 U.S. 200, 107 S. Ct. 1702, 1708-9 95 L. Ed. 2d 176 (1987). While this preference exists, a trial severance decision is "within the sound discretion of the trial court." *United States v. Morales*, 108 F.3d 1213, 1219 (10th Cir. 1997).

## I.  *Bruton* Challenge

Prejudice requiring severance exists if a joint trial will compromise a defendant's Sixth Amendment right to confront and cross-examine witnesses against him. *See United States v. Zar*, 790 F.3d 1036, 1051-52 (10th Cir. 2015). Specifically, when a non-testifying codefendant's out-of-court statements expressly implicate the defendant and are so "powerfully incriminating" that a court cannot presume the effectiveness of a limiting instruction advising the jury to consider the statements only as to the non-testifying codefendant, the statements may not be used in a joint trial. *Id.* at 1052 (citing *Bruton v. United States*, 391 U.S. 123, 135-36 (1968)). But where a codefendant's out-of-court statements can be redacted to eliminate references to the defendant, admission of the statements against the codefendant can be proper when accompanied by a limiting instruction. *Id.* (citing *Richardson v. Marsh*, 481 U.S. 200, 208 (1987)); *See also United States v. Shaw*, 758 F.3d 1187, 1195-96 (10th Cir. 2014).

Ms. Tew asserts that admission of Mr. Tew's out-of-court statements from a recorded phone call and from Mr. Tew's proffers will violate her Sixth Amendment rights because she will be unable to confront and cross-examine Mr. Tew, who cannot be compelled to testify at his own trial. In her motion Ms. Tew refers to "multiple statements" made by Mr. Tew after July 4, 2018 that name and incriminate Ms. Tew. (Doc. 218 ¶7.) The only specific statements Ms. Tew pointed to at the October 12, 2022 hearing, however, were the phone call from Mr. Yioulos to Mr. Tew, and Mr. Tew's proffers.

### A. Michael Tew's Telephone Call with Jonathan Yioulos

In his telephone call with Jonathan Yioulos, Mr. Tew made statements that incriminated Ms. Tew. Mr. Yioulos made the call in

cooperation with government agents, who were recording and listening to the conversation. Ms. Tew contends that the phone call violates the *Bruton* rule and justifies severance. It does not.

Neither the defendant nor the government has provided a transcript of the phone call or the statements from the call that would allegedly violate the *Bruton* rule if introduced. From the information provided, I surmise that during the phone call Mr. Yioulos steered the conversation toward the topic of Ms. Tew, and Mr. Tew mentioned that Ms. Tew was involved with some part of the alleged scheme, and was not involved in others. As an initial matter, it seems these statements are not testimonial and therefore cannot constitute a *Bruton* violation. In *Crawford v. Washington*, the Supreme Court held that the Confrontation Clause's reach is limited to testimonial statements. 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). While not definitively laying out what constitutes testimonial versus non-testimonial statements, the Court explained that "[an] accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." *Id*. at 1364. In *Michigan v. Bryant* the Court noted that "the most important instances in which the Clause restricts the introduction of out-of-court statements are those in which state actors are involved in a formal, out-of-court interrogation of a witness to obtain evidence for trial." *Michigan v. Bryant*, 562 U.S. 344, 131 S. Ct. 1143, 1155, 179 L. Ed. 2d 93 (2011). The more formal the situation and the interrogation, the more likely a statement is to be testimonial. *Ohio v. Clark*, 576 U.S. 237, 245, 135 S. Ct. 2173, 192 L. Ed. 2d 306 (2015).

Mr. Tew's statements to Mr. Yioulos were part of an informal conversation, and while the government may have been listening in, the

- 4 -

statements were not to law enforcement. They bear none of the hall-marks of testimonial statements. The government has stated their intent to offer the conversation under 801(d)(2)(E) of the Federal Rules of Evidence, and the defendant has indicated opposition. I do not need to determine whether the statements are admissible, however. I simply note that assuming the statements are admissible, the Confrontation Clause must be implicated to trigger *Bruton* concerns, and it does not appear to be here.

Even if the statements in the phone call were testimonial, moreover, it is not apparent that redaction and a limiting instruction would be insufficient to cure potential Confrontation Clause violations. The government has stated that they will work to appropriately redact the audio and/or transcripts of the conversation to avoid any *Bruton* issues. Defendant has not argued, beyond asking how audio files can be redacted on a practical level, that the statements made in the phone call are "so inculpatory as to the defendant that the practical and human limitations of the jury system cannot be ignored." *United States v. Rahseparian*, 231 F.3d 1267, 1277 (10th Cir. 2000) (internal quotation marks omitted).

## B. The Proffer Agreements

Ms. Tew also argues for severance on the basis that the proffers violate the Sixth Amendment. The government explained at the hearing and in its response (Doc. 230), however, that per the parties' proffer agreement, the proffer statements cannot be introduced against either defendant unless one or both of the defendants presents a defense at trial that is inconsistent with the proffer statements. If the defendants "open the door" to the proffer statements by doing so, then the government may choose to introduce them. The proffers are testimonial, given in a formal capacity to law enforcement, and thus would be subject to

*Bruton*. However, the defendants have complete control over whether the proffers can come in. They choose whether to present a defense inconsistent with the proffers, and can keep the proffers out of the trial entirely. If one defendant chooses to breach the proffer agreement, the proffer may come in against the breaching party. The government has stated that if this occurs, it will work with the defendants to redact whatever portions of the proffers present potential Confrontation Clause violations so that the proffer does not implicate the non-breaching defendant. As with the telephone call, Defendant has not presented evidence to me that the substance of the proffers could not be redacted properly or that a limiting instruction to the jury would be insufficient. I do not find a *Bruton* violation based on the proffers at this time.

## II.    Prejudicial Joinder

Rule 14(a) allows for severance of defendants' trials when "consolidation for trial appears to prejudice a defendant or the government." A defendant must satisfy the "heavy burden of real prejudice to his case" to persuade the Court to exercise its discretion to sever her trial. *United States v. Hall*, 473 F.3d 1295, 1302 (10th Cir. 2007). A defendant is prejudiced when "there is a serious risk that a joint trial will compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *United States v. Pursley*, 577 F.3d 1204, 1215 (10th Cir. 2009).). Ms. Tew argues that she will suffer from real prejudice because of the mismatch in culpability and counts between her case and Mr. Tew's, and because of the "special prejudice that arises from the joint trial involving a husband and wife." (Doc. 218 ¶19.) Defendant indicates that a jury will impute Mr. Tew's actions to Ms. Tew because of their marital bond. Defendant cites no law on this matter, stating only "[t]his is just natural." (Doc. 218 ¶21.)

Rule 14(a)'s prejudice standard is not met, however, merely because there is a "negative spill-over effect from damaging evidence presented against codefendants." *United States v. Caldwell*, 560 F.3d 1214, 1221 (10th Cir. 2009The Court noted in *Richardson* that joint trials assist juries in assessing relative culpability. 481 at 1708-9. Disparate culpability is not unusual in joint trials. *United States v. Youngpeter*, 986 F.2d 349, 354 (10th Cir. 1993 ) ("It would be normal and usual to assume one of two or more co-defendants would be more or less culpable than the others.").Serious risk of prejudice can arise when a jury considers evidence against a defendant "which is only admissible against a co-defendant and would not be admitted against the defendant in a separate trial" and the defendants are "tried together in a complex case and they have markedly different degrees of culpability." *United States v. Sarracino*, 340 F.3d 1148, 1165 (10th Cir. 2003). Ms. Tew relies on *Sarracino* but fails to point out any evidence that would come in at a joint trial but not in a severed trial. Evidence of Mr. Tew's actions would likely be admissible in a separate trial to show the existence, scope, and nature of the Tews's conspiracy. Further, were the trials severed Mr. Tew's proffer could likely come in against Ms. Tew. The difference in number of counts and culpability between Defendants does not present a risk of real prejudice in this case.

Nor would a jury be unable to independently evaluate Mr. and Ms. Tew because of their status as spouses. A "central assumption of our jurisprudence is that juries follow the instructions they receive." *United States v. Castillo*, 140 F.3d 874, 884 (10th Cir. 1998). As previously noted, Defendant cites no law that indicates juries are unable to separately evaluate married codefendants.

Ms. Tew has not met her burden of demonstrating real prejudice that would compromise her trial rights. The strong interests of judicial economy and consistency are served by holding a joint trial.

## CONCLUSION

Ms. Tew's Motion for Severance (Doc. 218) is DENIED as explained above.

DATED: October 27, 2022          BY THE COURT:

Daniel D. Domenico
United States District Judge