IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Daniel D. Domenico**

Civil Action No. 1:20-cr-00305-DDD

UNITED STATES OF AMERICA,

     Plaintiff,

v.

    1.  MICHAEL AARON TEW;

    2.  KIMBERLEY ANN TEW,
       a/k/a Kimberley Vertanen

     Defendants.

---

## ORDER DENYING MOTION TO SUPPRESS EVIDENCE

---

Before the court is Defendants Michael A. Tew and Kimberley A. Tew's Motion to Suppress. (Doc. 200). Mr. and Ms. Tew move to suppress evidence derived from searches and seizures utilizing provisions of the Stored Communications Act. For the following reasons, the motion to suppress is denied.

## BACKGROUND

Michael A. Tew and Kimberley A. Tew's charges stem from an alleged scheme to defraud via wire National Air Cargo, Mr. Tew's former place of work. While investigating these charges, the government sought and obtained judicial authority to seize stored communications records and related data from 13 separate electronic service providers' ("ESP") accounts that the government claims are associated with the defendants. The government obtained the records using the procedures in the Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701-2713. In all 13

instances, the government obtained records via judicial orders issued by a magistrate judge pursuant to SCA § 2703(d). For 5 of the 13 accounts, the government obtained additional evidence by executing search warrants pursuant to SCA § 2703(a). On May 12, 2022, Defendants filed the instant motion to suppress (Doc. 200). On October 12, 2022, I held a hearing on the motion.

## APPLICABLE LAW

The defendants bear the burden of proving that the search here was improper. *United States v. Carhee*, 27 F.3d 1493, 1496 (10th Cir. 1994) ("Generally, if the search or seizure was pursuant to a warrant, the defendant has the burden of proof."); *United States v. Madrid*, 30 F.3d 1269, 1275 (10th Cir. 1994) ("The proponent of a motion to suppress bears the burden of proof.").

Defendants contend that the warrantless seizure of information utilizing § 2703(d) orders is unconstitutional, and thus, that the government bears the burden of proving that the warrantless searches were justified by an exception to the requirement of the Fourth Amendment.

Together, SCA §§ 2703(a) – (d) delineate between several different situations where a governmental entity may require an ESP to disclose information. §§ 2703(a) & (b) place greater restrictions on the government if it seeks the *contents* of a wire or electronic communication. § 2703(c), on the other hand, requires ESPs to disclose a record or other information pertaining to a subscriber of such service (not including the contents of communications) when the government obtains a court order under § 2703(d).

To receive a court order under § 2703(d), the government must offer specific and articulable facts showing that there are reasonable grounds

to believe that the records or other information sought are relevant and material to an ongoing criminal investigation. This is a lower standard than the Fourth Amendment's probable cause standard to obtain a warrant.

## DISCUSSION

### I.   Constitutional Framework

The two cases that each party relies on to advance the merits of their argument are *US. v. Warshak* and *Carpenter v. US.*

#### A.   *US v. Warshak*

In *US v. Warshak*, the Sixth Circuit deemed the SCA unconstitutional in the limited circumstance where SCA § 2703(d) allows the government to obtain the contents of one's emails without a warrant. The basis for this holding was that people have a subjective, reasonable expectation of privacy in the contents of their emails, and this expectation is one that society is objectively prepared to recognize. This follows the rationale of *Katz v. US. See Katz v. United States*, 389 U.S. 347 (1967) (creating reasonable expectation of privacy test). In finding a reasonable expectation of privacy in the content of emails, the Court analogized emails to letters and ESPs to the post-office which the content must flow through. *United States v. Warshak,* 631 F.3d 266, 286 (6th Cir. 2010). If a post-office employee was required to open an envelope and share the contents of a letter with the government absent a warrant, one would suffer an unreasonable violation of privacy in the eyes of the Fourth Amendment. Conversely, if the government obtains only the information on the outside of the envelope, the intrusion is not unreasonable.

Defendants now seek to extend the holding of *Warshak* to cover the *non-content* information about email addresses. The SCA's explicitly

different treatment of content versus non-content information, however, forecloses this extension. *Warshak* held that SCA §2703(b)(2), which authorizes the government to get the *content* of emails without a warrant (though with notice), was unconstitutional. Here, the government obtained the non-content information specifically authorized in SCA §§ 2703(c)(1)(B) & (E), for which there is no reasonable expectation of privacy.

Because of this, the government did not violate any of the principles set forth in *Warshak* when it obtained information related to the Defendants' email accounts via court order pursuant to SCA §2703(d).

### B.   Carpenter v. US

In *Carpenter v. US*, the Supreme Court held that the government must obtain a warrant whenever it wishes to search a cellphone. The Court recognized that carrying a cellphone is "indispensable to participation in modern society." *Carpenter v. United States*, 138 S. Ct. 2206, 2210 (2018). At issue in *Carpenter* was the Cell-Site Location Information (CSLI) that the government obtained from an ESP while investigating criminal charges against defendant Carpenter. This information allowed investigators to obtain an average of 101 data points per day tracking Carpenter's movements. *Id.* at 2212. The Court grappled with the advancement of technology, recognizing that "the accuracy of CSLI is rapidly approaching GPS-level precision" in arriving at its conclusion that cellphones deserve special protection from searches. *Id.* at 2219.

Defendants now argue that, based on the holding of *Carpenter*, the same logic should apply to the situation at hand and the government should be required to obtain a warrant to access the non-content information about the defendant's email addresses.

The problems the Supreme Court identified with respect to cell-phones, though, are generally not present in the context of the non-content information about an email address. There is no risk that this information becomes more inherently sensitive due to technological advancement, as is the case with CSLI's increasing accuracy over time. This is because no matter how much non-content information about an email address is gathered, accessing the content of those emails would still require a warrant under *Warshak*.

As the government mentions in its Response, moreover, all the non-content information that the 2703(d) orders required ESPs to disclose in this case fall within the scope of prior decisions. (Doc. 204 at 3 – 5.) The most notable decisions that the government point to are *Smith v. Maryland* and *United States v. Miller*. Together, these cases establish what courts refer to as "third-party doctrine." *Carpenter*, 138 S. Ct. at 2263.

In *Smith v. Maryland,* the Supreme Court held that people have no reasonable expectation of privacy in the phone numbers they dial since telephone users realize they must share that information with the telephone company. *Smith v. Maryland*, 442 U.S. 735, 742 (1979). In *United States v. Miller,* the Supreme Court found no reasonable expectation of privacy in the contents of checks and deposit slips since they contain only information voluntarily conveyed to banks and are simply negotiable instruments to be used in transactions. *United States v. Miller*, 425 U.S. 435, 442 (1976).

Like phone records and checks, users of email addresses understand that they must share information related to their account with the service provider. The non-content information about the account is nothing more than evidence that the user created and used a certain email

address. This does not require extra protection like the CSLI in *Carpenter* since there is no reasonable expectation of privacy.

The Tews recognized that they are asking me to extend *Carpenter* beyond the specific context of that case. Whatever the merits of their arguments, I am unable to do so. The Court in *Carpenter* flatly "decline[d] to extend *Smith* and *Miller* to the collection of CSLI." *Carpenter*, 138 S. Ct. at 2220. In 2020, the Tenth Circuit also applied *Smith* and *Miller* to business reports collected by the IRS, finding no reasonable expectation of privacy in these reports on behalf of the business owners. This holding was based on the voluntary conveyance of the information to the government and the low sensitivity of the reports when compared to CSLI from *Carpenter. See Standing Akimbo, LLC v. United States through Internal Revenue Serv.*, 955 F.3d 1146, 1164-65 (10th Cir. 2020). Furthermore, vertical *stare decisis* is an absolute command, and lower courts are forbidden from revisiting a higher court's binding holding, no matter how little sense a bound party – or the lower court – may think the applicable rule of law makes. *In re Am. Express Anti-Steering Rules Antitrust Litig.*, 361 F. Supp. 3d 324, 340 n.10 (E.D.N.Y. 2019).

Since the non-content information at issue bears a much closer resemblance to the records collected in *Smith* and *Mille*r than it does to CSLI, it would be improper to extend *Carpenter* to this circumstance.

## II.  Probable Cause

The Fourth Amendment requires probable cause before a warrant can be issued. "Probable cause to issue a search warrant exists when the supporting affidavit sets forth sufficient facts that would lead a prudent person to believe that a search of the described premises would uncover contraband or evidence of a crime." *United States v. Sanchez*, 725 F.3d 1243, 1247 (10th Cir. 2013) (citations omitted). Put another way,

whether there exists probable cause is a "commonsense, practical question" answered by evaluating the totality of the circumstances and turning on whether there is a "fair probability" that contraband or evidence will be in a particular place. *United States v. Biglow*, 562 F.3d 1272, 1281 (10th Cir. 2009) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983). If the circumstances are "doubtful or marginal," the district court should give deference to the judgment of the magistrate judge. *Biglow*, 562 F.3d at 1282 (quoting *Massachusetts v. Upton*, 466 U.S. 727, 734 (1984).

When reviewing the issuing magistrate judge's probable-cause determination, the Court should afford "great deference" unless "there is no substantial basis for concluding that probable cause existed." *United States v. Sanchez*, 725 F.3d 1243, 1247 (10th Cir. 2013) (citations omitted). The defendants urge me to give zero deference to the magistrate judge's determination that each of the warrants at issue was supported by probable cause. This argument, however, is based on a hyper-technical reading of specific paragraphs in the affidavits that were filed by an AUSA under the penalty of perjury and which aimed to accurately summarize voluminous financial records. The warrants described the items to be seized with sufficient particularity, limiting them to evidence related to specific statutes and to a specific scheme against the named victim company. (Def. Mot. Ex. D at SW_00000065; Def. Mot. Ex. F at SW_0000005; Def. Mot. Ex. H at SW_00000102; Def. Mot. Ex. I at SW_00000126; Def. Mot. Ex. K at SW_00000151).

The warrants here also are limited to the time frames set forth in the affidavits. (Def. Mot. Ex. D (limited to between May 1, 2018 and September 17, 2020); Def. Mot. Ex. F (limited to between June 1, 2018 and July 7, 2020); Def. Mot. Ex. H (limited to between August 12, 2020 and October 22, 2020); Def. Mot. Ex. I limited to after August 1, 2018); Def. Mot. Ex. K (same)). In the Tenth Circuit, it is generally sufficient for a

warrant to specify that the evidence is seeks is tied to specific criminal statutes and is cabined to a particular date range. *United States v. Burgess*, 576 F.3d 1078, 1091 (10th Cir. 2009). This is sufficient to defeat Defendants' arguments regarding both the magistrate judge's analysis and the warrants' alleged overbreadth.

Because of this, the totality of the information contained in the affidavits provided a substantial basis for finding there was a fair probability that the evidence of criminal activity would be found in the respective electronic documents obtained by the government.

### III. Good Faith

Finally, even if the warrants were somehow infirm, Defendants' motion would be denied because the agents relied on and executed the warrants in good faith. In *Davis v. United States*, the Supreme Court made it clear that that the sole purpose of the exclusionary rule is to deter misconduct by law enforcement officers. 564 U.S. 229, 245 (2011) (emphasis in original). The "extreme sanction of exclusion" should be applied only as a "last resort" to deter police conduct that is "deliberate, reckless or grossly negligent." *United States v. Leon*, 468 U.S. 897, 916, 926 (1984); *Herring v. United States*, 555 U.S. 135, 144 (2009).

A warrant issued by a magistrate judge normally suffices to establish that a law enforcement officer has "acted in good faith in conducting the search." *United States v. Ross*, 456 U.S. 798, 823 n.32 (1982).

At the motions hearing on October 12, 2022, I orally denied Defendants' motion for a *Franks* hearing, finding that an opportunity for the Defendants to contest the validity of the probable cause in the government's warrants was not necessary. In doing so, I rejected the

Defendants' argument that the affidavits in support of the warrants were merely "bare bones" affidavits. (Doc. 226 at 14.)

Because the affidavits here support probable cause, it was not an obvious error for the magistrate judge to issue the warrants. Since the government relied in good faith on the warrant issued by the magistrate judge, its agents were permitted to execute the warrant without triggering the exclusionary rule.

## IV. Standing

Finally, the government argues in its Response that the Defendants' lack standing to challenge the warrants. (Doc. 204 at $10 - 12$). Since the validity of the warrants is supported by the merits of the government's argument, I need not address this issue.

**CONCLUSION**

It is ORDERED that:

The MOTION (Doc. 200) is DENIED

DATED: October 27, 2022      BY THE COURT:

Daniel D. Domenico
United States District Judge