IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00305-DDD

UNITED STATES OF AMERICA,

Plaintiff,

v.

1.   MICHAEL AARON TEW
2.   KIMBERLEY ANN TEW, and
3.   JONATHAN K. YIOULOS,

Defendants

---

### MOTION OF THIRD-PARTY VICTIMS TO QUASH SUBPOENAS
---

Victims National Air Cargo Holdings, Inc., National Air Cargo Group, Inc. d/b/a National Airlines and Christopher J. Alf (collectively, the "Victims"),[1] by and through counsel Eric S. Galler and Nancy L. Cohen, hereby respectfully request the Court to quash the Subpoenas to Produce Documents, Information, or Objects in a Criminal Case (the "subpoenas") that were issued to Mr. Alf and to an entity referred to as "National Air Cargo" dated December 1, 2022, pursuant to the Order Regarding Motion for Subpoena dated November 29, 2022.

---

[1] Christopher Alf, National Air Cargo Holdings, Inc. ("Holdings") and National Air Cargo Group, Inc. d/b/a National Airlines ("National Airlines") are the victims in this case. Mr. Alf is the sole owner of Holdings. National Airlines is a wholly-owned, indirect subsidiary of Holdings.

1

**Conferral with the Tews' Counsel**

On January 9, 2023, counsel for the Victims conferred with counsel for the Tews regarding the scope and relevance of the subpoena requests. Counsel for the Tews declined to revise or limit the subpoena requests in any way and invited the filing of this Motion.

**INTRODUCTION**

In November 2016, Holdings retained Sand Hill, LLC, an entity owned by Michael Tew, to engage Mr. Tew to provide certain financial services to Holdings, including preparation of financial models, creation of investment memoranda, financial structuring and advisory services and other similar services. In providing those financial services to Holdings, Mr. Tew acted as the outsourced chief financial officer of Holdings. In that role, Mr. Tew worked closely with the Victims and the internal financial and accounting staff of Holdings, including Jonathan Yioulos,[2] who is also a defendant in this case. Mr. Tew continued to provide financial services to Holdings until September 15, 2018, when Holdings terminated the consulting engagement with Sand Hill, LLC. At the time of this termination Mr. Tew was in possession of a company issued computer and had been advanced $35,000 toward future consulting fees, both of which Holdings demanded be returned but neither of which was ever returned by Mr. Tew.

In June 2020, the Federal Bureau of Investigation first contacted Christopher Alf, the Chairman and Chief Executive Officer of Holdings and requested a meeting. On July 1, 2020, Mr. Alf met with representatives of the FBI and the Internal Revenue Service, at which time it was revealed to Mr. Alf that as part of an ongoing investigation, the FBI and IRS had discovered that

---

[2] Mr. Yioulos was a staff accountant for Holdings during the period of Mr. Tew's service and thereafter become the Controller for Holdings. Mr. Yioulos' employment was terminated in July 2020, after Holdings became aware of Mr. Yioulos' participation in the criminal conduct charged in this case. Undersigned counsel understands Mr. Yioulos pled guilty to charges brought against him

substantial funds had been transmitted from bank accounts of Holdings and National Airlines to the persons under investigation by these authorities. Mr. Alf and Holdings immediately offered their cooperation to the FBI and the IRS and began to collect materials requested by the authorities relating to, among other things, electronic funds transmissions, including wire transfers and automatic clearing house (ACH) transfer, to persons and accounts identified by the FBI and IRS. Over the next several days (including the Independence Day holiday), Holdings' accounting staff discovered that funds in excess of five million dollars ($5,000,000) had been transferred from bank accounts belonging to Holdings and National Airlines to the accounts identified by the FBI and IRS with the direct participation and direction of Mr. Yioulos, an employee who at that time was the Controller of Holdings, and was the senior employee overseeing all of the United States based financial activities of Holdings. Upon Mr. Yioulos' return from the Independence Day holiday on July 7, 2020, Mr. Yioulos' employment with National was terminated, and, in coordination with the FBI and IRS, Mr. Yioulos was taken by the authorities for questioning.

Mr, Tew, Kimberley Tew and Mr, Yioulos were subsequently indicted on 60 criminal counts, including 56 counts relating to the specific criminal transfers of funds from the Holdings and National Airlines bank accounts to bank accounts under their control.[3]

The subpoena seeks personal and confidential information from the Victims who are third parties to this case.

---

[3] The remaining four counts allege non-filing of income tax returns by Mr. Tew for the tax years 2016, 2017, 2018 and 2019.

## ARGUMENT

The Tews seek pretrial production of documentary evidence under Fed. R. Crim. P. 17(c), apparently ignoring subsection 17(c)(3). The Tews' subpoena fails generally because the Tews are improperly attempting to obtain additional discovery from the Victims of documents that can be properly obtained elsewhere by the exercise of due diligence. The Tews' subpoena is not made in good faith and is intended as a general "fishing expedition," which is prohibited. *See United States v. Gonzalez-Acosta*, 989 F.2d 384, 389 (10th Cir. 1993), citing *United States v. Nixon*, 418 U.S. 683, 699-700 (1974). Moreover, as the Supreme Court has stated in both *Nixon,* at 698, and *Bowman Dairy Co. v United States*, 341 U.S. 214, 220 (1951), Rule 17(c) is "not intended to provide a means of discovery for criminal cases."

Under Federal Rule of Criminal Procedure 17(c)(3),

After a complaint, indictment, or information is filed, a subpoena requiring the production of personal or confidential information about a victim may be served on a third party only by court order. Before entering the order and unless there are exceptional circumstances, **the court must require giving notice to the victim so that the victim can move to quash or modify the subpoena or otherwise object**.

(emphasis added).

The subpoenas that were served upon the Victims request personal or confidential information about the Victims. Before the order issued allowing the subpoenas to be served on the Victims, no notice was given to the Victims in violation of the clear language and requirement of Rule 17(c)(3).[4] Nor was there any finding by the Court of the existence of exceptional circumstances that would permit the order to issue the subpoenas to be issued without proper notice. The issuance of these subpoenas under these circumstances is not permissible. *See United*

---

[4] The defendants brought an ex parte motion requesting the Court to permit the issuance of the subpoenas under Rule 17(c). Under Rule 17(c)(3), an ex parte motion was inappropriate in this case.

4

*States v. Jinian*, CR-09-1103-JSW, US Dist. N Cal. (March 3, 2011) (denying ex parte motion of defendant to serve subpoena on a corporate victim for personal or confidential information under Rule 17(c)(3) for failure to give proper notice and finding no exceptional circumstances).

The importance of giving notice to the Victims before an order enters is because the Victims can then provide argument as to why the subpoena is improper. Defendants failed to follow the procedures in Rule 17(c)(3). Assuming the Court agrees that the Tews have improperly sought documents from the Victims without proper notice and vacates the order, the Victims may file another motion to quash if the Tews fail to narrow the document requests,

The Victims object to the requests made in the subpoenas on several grounds. Importantly, upon information and belief, the U.S. Attorney's office has already produced a substantial number of documents and other materials to the defendants relating to the charges for which the defendants are being prosecuted. With respect to information request number 9, the defendants request the production of all "text or email communication[s]" between Michael Tew and Mr. Alf. Mr. Tew has or already had in his possession or access to all of the text messages and emails between himself and Mr. Alf because (a) Mr. Tew only used personal mobile phone numbers to text with Mr. Alf relevant to Mr. Tew's alleged criminal conduct and (b) Mr. Tew communicated with Mr. Alf by email relevant to Mr. Tew's alleged criminal conduct using only either personal email account(s) or using a Holdings designated email account which Mr. Tew has access to on the Holdings issued computer that Mr. Tew never returned to Holdings when his services for Holdings were terminated. Additionally, the emails relevant to the Indictment were previously produced to the US Attorney's office by Holdings (the index of the emails alone consists of more than 3 gigabytes of information).

5

Victims also object because (1) the information requested does not relate to the criminal conduct for which the defendants were indicted,[5] (2) the information requests are unreasonable, oppressive and/or burdensome, (3) the information requests appear to be a fishing expedition in violation of the *Nixon* factors and Rule 17(c), (4) the information requests are insufficiently specific in nature for the Victims to adequately respond to the requests without an excessive and expensive investigation and production process thereby compounding the injury to the Victims already perpetrated by the defendants,[6] and (5) and the subpoena constitutes harassment of the Victims especially because it violates Rule 17(c)(3).[7]

---

[5] While the Victims do not have access to the Criminal Complaint filed against the defendants, the Victims have seen the Indictment that was issued against the defendants by the Grand Jury. The Indictment contains 60 counts alleging violations of 18 USC §§ 2, 1343, 1349, 1956(h), and 1957 and 26 USC § 7203 against one or more of the defendants. Each of these counts refers to specific conduct by one or more of the defendants. The Tews already have the information being requested in the subpoena that relate to the criminal conduct identified in the Indictment. Nothing in the Indictment indicates that any of the Victims participated in or had prior knowledge of the criminal conduct of the defendants.

[6] The subpoena is issued to Christopher Alf and National Air Cargo. The Victims do not know exactly what National Air Cargo is meant to refer to. National Air Cargo Holdings, Inc., is a Florida corporation that is the parent corporation of a group of more than 26 separate companies. Nothing in the subpoena contains information sufficient to identify to the Victims who "National Air Cargo" references.

Additionally, 8 of the 11 requests propounded in the subpoenas (items 1, 2, 3, 4, 5, 8, 9, 10 and 11) refer to something called "NAC" and something called "NAC Holdings." Nothing in the subpoena provides sufficient information to identify what or who either "NAC" or "NAC Holdings" is.

Finally, two other of the 11 requests propounded in the subpoenas (items 6 and 7) make no reference as to whose information is actually requested, as the request could refer to anyone.

[7] Simultaneously with this Motion of Third-Party Victims to Quash Subpoenas the Victims are delivering to the Court objections to all of the information requests propounded in the subpoenas.

WHEREFORE, the victims respectfully move that the subpoenas be quashed.

Respectfully submitted this 13th day of January, 2023.

s/ *Eric S. Galler*
Eric S. Galler
Galler Corporate Law Group
9466 Georgia Avenue
Suite 130
Silver Spring, MD 20910
Telephone: 301-728-3850
e-mail: egaller@gcorplaw.com

*s/Nancy L. Cohen*
Nancy L. Cohen, Esq.
COHEN|BLACK LAW, LLC
1888 N. Sherman Street, Suite 770
Denver, Colorado 80203
Telephone: 720-699-2322
email: ncohen@cohenblacklaw.com

*Counsel for the Victims*

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day January, 2023, I presented the foregoing **MOTION OF THIRD-PARTY VICTIMS TO QUASH SUBPOENAS** to the Clerk of the Court for filing and uploading to the CM/ECF system which will send notification of this filing to all parties of record.

*/s/ Nancy L. Cohen, Esq.*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00305-DDD

UNITED STATES OF AMERICA,

Plaintiff,

v.

1. MICHAEL AARON TEW
2. KIMBERLEY ANN TEW, and
3. JONATHAN K. YIOULOS,

Defendants

---

**ORDER TO QUASH SUBPOENAS**

---

This matter comes before the Court on the Victims' Motion to Quash Subpoenas. Having reviewed the motion and being otherwise advised in the premises, the Court finds that good and sufficient cause supports the same.

Accordingly, it is:

ORDERED, that the Motion of Christopher Alf, National Air Cargo Holdings, Inc. and National Air Cargo Group, Inc. d/b/a National Airlines (collectively, the victims) is GRANTED and the subpoenas issued December 1, 2022, to Christopher Alf and "National Air Cargo" are quashed.

IT IS SO ORDERED on this _____ day of January, 2023.

BY THE COURT:

_____
HON. DANIEL D. DOMENICO
DISTRICT OF COLORADO