**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico**

Civil Action No. 1:20-cr-00305-DDD

UNITED STATES,

      Plaintiff,

v.

**MICHAEL AARON TEW**;
**KIMBERLEY ANN TEW**; and
JONATHAN K. YIOULOS,

      Defendants.

---

## ORDER REGARDING ADMISSIBILITY OF RULE 801(d)(2)(E) STATEMENTS

---

At trial, the government intends to introduce various out-of-court statements, allegedly made in furtherance of a conspiracy to commit fraud, against Defendants Michael and Kimberley Tew. The court held a hearing to address whether these statements fall within the hearsay exclusion described in Federal Rule of Evidence 801(d)(2)(E). This order outlines the court's findings on those statements.

## BACKGROUND

On February 3, 2021, a grand jury indicted Defendants Michael Tew, Kimberley Tew, and Jonathan Yioulos on dozens of counts for various offenses including wire fraud, conspiracy to commit wire fraud, and conspiracy to commit money laundering. Doc. 83. The government alleges that the defendants defrauded various entities affiliated with N.A.C. Inc. (collectively, "NAC") that provided "freight forwarding solutions, to

include by charter and airlift." *Id.* at 1. NAC also operates as an airline. *Id.*

At the beginning of the alleged fraud, Michael Tew acted as the Chief Financial Officer of NAC; Jonathan Yioulos acted as Director of Finance (and subsequently assumed the role of Controller); and Kimberley Tew was (and remains) married to Michael Tew. *Id.* at 2–3. The government alleges that Mr. Yioulos and Mr. Tew conspired to submit bogus invoices to NAC through various business entities controlled by the defendants. Mr. Yioulos would then approve the invoices and authorize funds to be distributed to those entities. The proceeds of the fraud were then shared among the three defendants. The government alleges that the fraud culminated in NAC paying over $5,000,000 for services that it did not receive.

The government eventually investigated and obtained warrants to track various emails, instant message accounts, and phone numbers allegedly associated with the defendants. *See generally*, Doc. 357 (Exhibit list for *James* Hearing). Several years after the alleged fraud began, the government approached Mr. Yioulos in the summer of 2020 to see if he'd cooperate with the investigation. He did, allowing the government to record several phone calls he then had with Michael Tew. Contemporaneously, the court filed a criminal complaint as to Mr. Tew, and he made his initial appearance on July 9, 2020. Doc. 7. All three defendants were later indicted on February 3, 2021, Doc. 83, and the remaining defendants made their initial appearances shortly thereafter. Docs. 92, 96.

A little more than one year after being indicted, Mr. Yioulos pleaded guilty to two counts and agreed to cooperate with the government, including by potentially testifying at trial in this matter. Doc. 154; Doc. 155 at 3–4. As part of his plea agreement, Mr. Yioulos stipulated to

various facts outlining the alleged fraud and Mr. and Mrs. Tew's involvement. Doc. 155 at 9–18.

After several delays, the parties jointly requested a *James* hearing—pursuant to *U.S. v. James*, 590 F.2d 575 (5th Cir. 1979) and related Tenth Circuit precedent—to determine whether certain out-of-court statements fell within the "co-conspirator" hearsay exclusion under Federal Rule of Evidence 801(d)(2)(E). *See* Doc. 339. Prior to the hearing, the government submitted a *James* proffer listing the statements it intends to admit at trial, along with a supporting brief, and both Mr. and Mrs. Tew responded. Docs. 341, 345, 346. The court held the *James* hearing on December 19, 2023. Doc. 355.

## APPLICABLE LAW

"Rule 801(d)(2)(E) provides that '[a] statement is not hearsay if . . . [t]he statement is offered against a party and is . . . a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.'" *United States v. Townley*, 472 F.3d 1267, 1273 (10th Cir. 2007) (internal quotation excluded). Before admitting evidence under this exception, the court must find, by a preponderance of the evidence, that (1) a conspiracy existed; (2) that the declarant and the person against whom the statement is offered were both members of the conspiracy; and (3) that the statements were made in the course of and in furtherance of the conspiracy. *See United States v. Owens*, 70 F.3d 1118, 1123 (10th Cir. 1995).

"Under Tenth Circuit law, a district court can only admit coconspirator statements if it holds a James hearing or conditions admission on forthcoming proof of a predicate conspiracy through trial testimony or other evidence." *United States v. Townley*, 472 F.3d 1267, 1273 (10th Cir. 2007) (internal quotation excluded). The Tenth Circuit has a "strong

preference" for holding a *James* hearing rather than addressing the is-
sue at trial. *Id.*

## DISCUSSION

The government's *James* log comprises 376 out-of-court conversa-
tions—primarily SMS, instant messenger, or email conversations—that
it seeks to admit. In response, Defendants contest only a fraction of these
conversations as falling outside Rule 801(d)(2)(E)'s scope. Most of these
objections fall into the following categories: (1) statements sought to be
admitted against Mrs. Tew that were made by others and before she
joined the conspiracy; (2) one-sided conversations with a potentially un-
known recipient; (3) conversations including statements made by Mr.
Yioulos after he had left the conspiracy; and (4) various conversations,
primarily between Mr. and Mrs. Tew, regarding account transactions,
cryptocurrency transactions, gambling, and purchases, including for a
car.

### I.    The Existence of a Conspiracy

"'[C]onspiracy' as an evidentiary concept, embodied in rule
801(d)(2)(E), and 'conspiracy' as a concept of substantive criminal law
are not coterminous." *United States v. Kendall*, 665 F.2d 126, 130 (7th
Cir. 1981); *see also United States v. Buchanan*, 787 F.2d 477, 482 (10th
Cir. 1986) (citing favorably to *Kendall* and holding that a conspiracy for
purposes of Rule 801(d)(2)(E) need not be a "federal conspiracy"). "To be
admissible under Fed. R. Evid. 801(d)(2)(E), the conspiracy at issue need
not be charged and need not even be criminal." *United States v. DaVita
Inc.*, 592 F. Supp. 3d 970, 980 (D. Colo. 2022) (noting lack of Tenth Cir-
cuit precedent on this precise issue and following out-of-circuit deci-
sions). "The requirements for being a co-conspirator for purposes of Rule
801(d)(2)(E) are likewise not the same as in a substantive criminal

context. Co-conspirators for Rule 801(d)(2)(E) purposes need only be engaged in the same common plan or joint enterprise." *Id.*

As a threshold matter, Mr. and Mrs. Tew do not contest that the government has brought forth sufficient evidence to show that (1) there was a conspiracy for purposes of Rule 801(d)(2)(E) and that (2) they were both members of that conspiracy (or conspiracies), at least for certain periods of time.[1] The evidence provided by the government supports these conclusions.

"In making a preliminary factual determination under Rule 801(d)(2)(E), courts may examine the hearsay statements sought to be admitted. There must also be some independent evidence linking the defendant to the conspiracy—that is, evidence other than the proffered co-conspirator statements themselves—but that evidence need not be substantial." *United States v. Otuonye*, 995 F.3d 1191, 1204 (10th Cir. 2021) (internal quotations and alterations omitted). "Testimony of a government agent regarding his interactions or conversations with coconspirators is adequate independent evidence." *United States v. Stein*, 985 F.3d 1254, 1269 (10th Cir. 2021), *cert. denied*, 142 S. Ct. 425 (2021).

Here, there is overwhelming evidence that a conspiracy existed among Mr. Tew, Mrs. Tew, and Mr. Yioulos to defraud NAC. First, the statements themselves provide ample evidence of this conspiracy. As but

---

[1] *See* Doc. 345 (Mr. Tew's response, stating, "The government's proffer is extensive and taken as a whole could be considered to present "substantial, independent evidence" sufficient to establish by a preponderance of the evidence that multiple conspiracies existed (wire fraud and money laundering), and that Michael Tew, Jonathan Yioulos, and Kimberley Tew were a part of those conspiracies."); *see also* Doc. 346 (Mrs. Tew listing specific objections to certain *James* log entries but apparently not to the existence of a conspiracy, at least for certain periods of time).

a few examples, several statements included detailed instructions regarding various transactions relating to the NAC entities and allegedly fraudulent invoices. *See, e.g.*, Doc. 341-1 entries 275, 287, 298, 303, 308, 312. These statements corroborate the government's independent evidence, submitted as exhibits for purposes of the *James* hearing, that the invoices were fraudulent and used to transfer money from NAC to various business entities controlled by the defendants. There are also several more colorful statements strongly implicating the defendants' participation in the alleged fraud. *See id.* entries 59, 73, 85, 107, 115 (referencing a potential FBI investigation of the alleged fraud), 174, 265, 317.

The government also provided substantial evidence independent of the statements themselves. *Stein*, 985 F.3d at 1269 (noting that such evidence "need not be substantial"). This includes bank records (submitted as evidence for purposes of the *James* hearing), security camera footage of the Tews making bank withdrawals, and the stipulated facts in Mr. Yioulos's plea agreement. Finally, the government took witness testimony from the I.R.S. agent in charge of the investigation during the *James* hearing, and her thorough explanations of the alleged fraud (including her interactions with Mr. Yioulos) provide ample evidence to make this preliminary finding. *See Stein*, 985 F.3d at 1269 ("Testimony of a government agent regarding his interactions or conversations with coconspirators is adequate independent evidence."). The court therefore finds that the government has proven, by a preponderance of the evidence, a conspiracy among Mr. Tew, Mrs. Tew, and Mr. Yioulos sufficient for purposes of invoking Rule 801(d)(2)(E).

## II.    Statements Made Prior to Mrs. Tew's Membership in the Conspiracy

Mrs. Tew argues that the government cannot admit conversations that occurred between Mr. Tew and Mr. Yioulos prior to her joining the

conspiracy. But this is contrary to Tenth Circuit law. *United States v. Brown*, 943 F.2d 1246, 1255 (10th Cir. 1991) (the "prevailing view among the circuits is that previous statements made by co-conspirators are admissible against a defendant who subsequently joins the conspiracy. We join that holding."). This argument, therefore, lacks merit so long as *Mr. Tew and Mr. Yioulos*, the declarants for purposes of these statements, were members of the conspiracy when the statements were made even if Mrs. Tew was not yet a member of the conspiracy. Mr. Tew and Mr. Yioulos were conspirators when the statements were made, so those statements fall within the scope of Rule 801(d)(2)(E) even as applied against Mrs. Tew.

### III.    One-Sided Conversations with Allegedly Deleted Messages

Mr. and Mrs. Tew both object to several conversations in the *James* log that, they argue, involved messages that were never received by the intended recipient. Most of these messages appear to contain one-sided messages in what was, at some time, a two-sided conversation. As the government's I.R.S. agent testified at the *James* hearing, context clues from the recovered side of the messages strongly suggest that the sending party was engaging in a conversation with the recipient. *See, e.g.*, Doc. 341-1, entry 108 (messages purportedly sent by Mr. Yioulos to Mrs. Tew with Mr. Yioulos expressing surprise and asking questions to apparent responses not recovered and not included in the conversation).

In any event, "Rule 801(d)(2)(E)'s text makes clear that both the declarant and the person against whom the statement is offered must be members of the conspiracy. Notably omitted from this requirement is any required connection between the conspiracy and the person to whom the statement is made." Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 6778 (2023 ed.). There is no real dispute

that Mr. Yioulos—the declarant for purposes of these statements—was a co-conspirator at the time and that the statements are being offered against other co-conspirators: Mr. and Mrs. Tew.

The only question, then, for purposes of Rule 801(d)(2)(E), is whether these statements were made "in furtherance" of the conspiracy. As an initial matter, Mr. and Mrs. Tew's only argument appears to be that the apparent lack of a recipient renders these messages inherently "not in furtherance" of the conspiracy. But that does not matter because the question is not whether the statement actually furthered the conspiracy, but whether it was meant to, *United States v. Reyes*, 798 F.2d 380, 384 (10th Cir. 1986), and the recipient of such messages need not even be a member of the conspiracy:

> The black-letter principle is that statements made in the course of a discussion between a coconspirator and a third party who is a stranger to the conspiracy are admissible under Rule 801(d)(2)(E), provided that they meet the Rule's foundational requirements. That is true regardless of whether the third party is a tipster, an informant, an undercover officer, or a mere acquaintance.

*United States v. Piper*, 298 F.3d 47, 53 (1st Cir. 2002). And the substance of these one-sided conversations were certainly meant to further the conspiracy. *See, e.g.*, Doc. 341-1, entry 79 (Mr. Yioulos telling the recipient to "keep the excess" and that "We have no money in the company and I've sent a total of $165k" to another party), entry 85 (Mr. Yioulos allegedly telling Mrs. Tew that various transactions will "look weird"; that funds returned from a "sandhill account will make waves as well"; that "We have no cash at the company"; and "I'm goign [sic] to jail. I really think I am . . . Cause this is goign [sic] to blow up. I can't send money and you don't have money to send him either"). Moreover, the government did provide evidence, including its witness testimony at the *James*

- 8 -

hearing, that the recipient's messages were deleted prior to being obtained via a search warrant. *See also id.*, entries 35, 36 (Mr. Yioulos telling Mr. and Mrs. Tew to "delete texts from both phones" and to "delete all text records."). In light of all this, and as addressed in the statement-by-statement analysis below in Section VI, these statements fall within the scope of Rule 801(d)(2)(E).

## IV. Mr. Yioulos's Statements Made After He Left the Conspiracy and Statements Made by Non-Conspirators

Mr. and Mrs. Tew also object to admitting statements made by Mr. Yioulos after he left the conspiracy and certain statements made by a third party, "M.M.," who was never a co-conspirator, as the government concedes. The statements by Mr. Yioulos include those made in recorded phone calls once he agreed to cooperate with the government. As the government admits, Mr. Yioulos was no longer a "co-conspirator" at that point (and M.M. never was), so both of their statements, if offered for their truth, would appear to fall within the hearsay rule and be excluded.[2]

But "[t]estimony which is not offered to prove the truth of an out-of-court statement, but is offered instead for relevant context or background, is not considered hearsay." *United States v. Hinson*, 585 F.3d 1328, 1336 (10th Cir. 2009); *see also United States v. Smith*, 816 F.3d 479, 481 (7th Cir. 2016) (affirming admission of statements made by informant on recorded telephone call for the non-hearsay purpose of providing context for the defendant's statements). Applied here, much of Mr. Yioulos's and M.M.'s statements are not offered for truth. For instance, in entry 376, Mr. Tew's statements dominate the conversation,

---

[2] Neither Mr. nor Mrs. Tew, however, dispute that Mr. Tew was a co-conspirator vis-à-vis Mrs. Tew at this time and that *his* statements therefore fall within the co-conspirator exclusion of the hearsay rule.

and Mr. Yioulos's statements are simply reiterating that he is in a meeting and cannot pay Mr. Tew at that moment (statements which, in fact, may have been false). The government is not seeking to prove Mr. Yioulos was in a meeting, but his statements provide necessary context for Mr. Tew's responses. This is similar to an earlier conversation Mr. Tew had with M.M. in which Mr. Tew, not M.M., dominates the conversation. Doc. 341-1, entry 96.

The government also seeks to admit two recorded telephone conversations between Mr. Tew and Mr. Yioulos (both the audio and the transcriptions), listed at entries 374 and 375. While the *James* log provides a summary of these calls, it remains unclear whether the government seeks to admit the entirety of the calls, or just some sections. And while many of Mr. Yioulos's statements appear to be non-hearsay and contextual, and thus presumptively admissible, I am not entirely convinced that is true of *every* statement made in the call. "Invoking the word 'context' does not permit an end-run around the hearsay rules such that the government may smuggle into evidence all interviewer statements." *United States v. Collins*, 575 F.3d 1069, 1074 (10th Cir. 2009) (finding that admission of entire transcript was harmless error but casting doubt on admissibility of entire transcript if non-conspirator "dominates" the conversation). Because this is no longer an issue implicating the purpose of a *James* hearing, it is appropriate to leave final resolution of this issue for motions in limine or trial objections.

## V.    Various Statements Involving Purchases, Account Transactions, and Gambling

Mr. and Mrs. Tew also object to admitting various statements made solely between them purportedly concerning the family's personal finances and purchases, including gambling and cryptocurrency

transactions. These statements, they argue, were not "in furtherance" of the conspiracy and therefore fall outside of Rule 801(d)(2)(E)'s exclusion.

As a threshold issue, the parties seem to agree that, if any statements made solely between Mr. and Mrs. Tew are not "in furtherance" of the conspiracy, those statements are inadmissible as privileged, confidential, spousal communications. *See United States v. Neal*, 743 F.2d 1441, 1447 (10th Cir. 1984). I will therefore not admit statements solely between the Tews if they were not made in furtherance of a conspiracy.

As the government notes, however, the Tenth Circuit reads the "in furtherance" requirement quite broadly, encompassing many different types of statements. Most relevant here, (A) statements promoting the objectives of the conspiracy, including statements that indicate payments or demands for payment to accomplish activities of the conspiracy;  (B) statements explaining events of importance to the conspiracy; (C) statements made between coconspirators which provide reassurance, which serve to maintain trust and cohesiveness among them or which inform each other of the current status of the conspiracy; (D) discussions of future intent that set transactions to the conspiracy in motion; (E) statements that conceal the objective of the conspiracy; (F) statements to co-conspirators regarding potential investigation, apprehension, or punishment, and (G) statements between conspirators regarding the distribution of the proceeds can all be "in furtherance" for purposes of this rule. *See United States v. Rutland*, 705 F.3d 1238, 1252 (10th Cir. 2013); *United States v. Morgan*, 748 F.3d 1024, 1036-37 (10th Cir. 2014) (finding that call to set up meeting for dividing proceeds was in furtherance of the conspiracy for purposes of Rule 801(d)(2)(E)); *see also* Doc. 341 at 14-16 (government's brief collecting cases on this issue).

Because these statements are highly context dependent, they are addressed statement-by-statement below in Section VI.

## VI.    Findings on Objected-To Statements

Given this legal backdrop, below are the court's admissibility findings as to all objected-to statements in the government's *James* log. For the "legal basis" column, the numbers correspond to the aforementioned lettered categories (described in Section V) of statements made "in furtherance" of a conspiracy (*i.e.*, A, B, C, D, E, F and/or G). The legal basis column also refers back to earlier sections of this order addressing certain categories of statements, such as those made by non-conspirators or those made prior to Mrs. Tew joining the conspiracy.

| *James* Log Entry | "In Furtherance" or Not? | Legal Basis |
|---|---|---|
| 376 | In Furtherance as to Michael Tew's statements | A, B, D, F, G. *See also* Section IV, *supra*. Mr. Yioulos's statements are non-hearsay contextual statements. |
| 375 | In Furtherance as to Michael Tew's statements | A, B, D, F, G. *See also* Section IV, *supra*. |
| 374 | In Furtherance as to Michael Tew's statements | A, B, D, F, G. *See also* Section IV, *supra*. |
| 370 | In Furtherance | A, B, C, F, G |
| 345 | In Furtherance | A, B, D |
| 301 | In Furtherance | A, B, D, F, G |
| 300 | Not in Furtherance | |
| 284-86 | In Furtherance | A, B, D, F, G |

| *James* Log Entry | "In Furtherance" or Not? | Legal Basis |
|---|---|---|
| 278 | Not in Furtherance | |
| 268, 270 | Not in Furtherance | |
| 265 | In Furtherance | A, B, C, E, F, G |
| 247 | Not in Furtherance | |
| 205 | In Furtherance | B, E, F, G |
| 203 | Not in Furtherance | |
| 202 | In Furtherance | A, B, G |
| 198 | In Furtherance | B, E, F, G |
| 191 | Not in Furtherance | |
| 179 | In Furtherance | A, B, D, E, G |
| 167 | In Furtherance | A, B, D, E |
| 163 | Not in Furtherance | |
| 157 | Not in Furtherance | |
| 155 | In Furtherance | A, B, D, E |
| 153 | In Furtherance | A, B, D, E |
| 152 | In Furtherance | A, B, D, E; M.M's statements are non-hearsay contextual statements. *See* Section IV, *supra.* |
| 150 | Not in Furtherance | |
| 144 | Not in Furtherance | |
| 138 | Not in Furtherance | |

| *James* Log Entry | "In Furtherance" or Not? | Legal Basis |
|---|---|---|
| 108, 115, 118 | In Furtherance | A, B, C, D, E, F, G; *see also* Section III, *supra*. |
| 96 | In Furtherance | A, B, D, E. M.M's statements are non-hearsay contextual statements. *See* Section IV, *supra*. |
| 85 | In Furtherance | A, B, C, D, E, F, G; *see also* Section III, *supra*. |
| 79 | In Furtherance | A, B, C, D, E, F, G; *see also* Section III, *supra*. |
| 69 | In Furtherance | A, B, C, F, G. M.M's statements are non-hearsay contextual statements. *See* Section IV, *supra*. |
| 56 | In Furtherance | A, B, E, G; *see also* Sections III, IV, *supra*. |
| 37 | Not in Furtherance | |
| 1-22, 28, 34, 35, 46, 51 | In Furtherance | A, B, C, D, E, F, G. These also fall within Rule 801(d)(2)(E) as applied to Mrs. Tew. *See* Section II, *supra*. |

Note that all of the statements above found *not* to be "in furtherance" of the conspiracy are presumptively inadmissible because those particular statements were made only between spouses—Mr. and Mrs. Tew—

and implicate the spousal confidential communications privilege. *See United States v. Neal*, 743 F.2d 1441, 1447 (10th Cir. 1984). Given the parties' agreement that these statements are inadmissible if not made in furtherance of a conspiracy, I will not admit those statements.

On the other hand, statements found to be in furtherance of the conspiracy are not automatically admissible. For instance, the court has concerns that some of these statements may run afoul of Rule 403, particularly if they become cumulative or distracting for the jury. Defendants may raise such objections before or during the trial if appropriate.

## CONCLUSION

The court's evidentiary rulings on the objected-to statements in the government's *James* log are listed above. The court will resolve any remaining evidentiary objections, including those that may implicate the above statements, *in limine* or at trial.

DATED: December 29, 2023            BY THE COURT:

Daniel D. Domenico
United States District Judge