IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.  20-cr-00305-DDD

UNITED STATES OF AMERICA,

Plaintiff,

v.

1. **MICHAEL AARON TEW**;

2. KIMBERLY ANN TEW; and
   a/k/a Kimberley Vertanen

3. JONATHAN K. YIOULOS,

Defendants.

---

### MICHAEL TEW'S RENEWED MOTION FOR SEVERANCE

---

Mr. Michael Tew, by and through counsel Kristen M. Frost of Ridley McGreevy & Winocur and Jason D. Schall of Bowlin & Schall LLC, respectfully renews the request to sever this case on behalf of Mr. Tew.  In support thereof, Mr. Tew states as follows:

#### Introduction

A court has a continuing duty at all stages of a trial to grant severance if prejudice continues to exist in a joint trial.  *See Schaffer v. United States,* 362 U.S. 511, 516 (1960); *United States v. Peveto,* 881 F.2d 844, 857 (quoting *Schaffer*).  That rule exits because as a practical matter, and not an academic one, prejudice to a defendant can manifest itself unexpectedly, at the last minute, after a jury is empaneled and as a criminal trial unfolds – as they often do – with unanticipated twists and turns, including when one co-defendant ends up inculpating the other.

1

This situation is not limited to a case where the defendants happen to be husband and wife. Indeed, that relationship status can actually have the opposite effect and up the ante on the surprise factor at trial.

In addressing Mr. Tew's renewed motion for severance, the Court has acknowledged its continuing duty to address this issue when Mr. Tew moved for a severance pursuant to Federal Rule of Criminal Procedure 14(a) at the conclusion of Mrs. Tew's opening statement. The Court raised *United States v. Jones,* 530 F.3d 1292 (10th Cir. 2008), and the government lodged general claims of "waiver" that are unsupported by the record. Mr. Tew maintains that nothing has been "waived," or forfeited, and that severance is now ripe and required. Further, applying *Jones* actually establishes why a severance is now required based on Mr. Tew's constitutional rights to due process, a fair trial, an impartial jury and his rights to confrontation and effective assistance of counsel. U.S. Const. ameds V, VI.

**Relevant Factual Background**

1. Michael Tew and Kimberly Tew have been represented by numerous attorneys in this case,[1] and at times, they were jointly represented by the same attorney and/or legal team.[2] Indeed, two different legal teams jointly represented this married couple at different times during

---

[1] *See* Docs. 4, 13, 15, 17-18, 25, 28, 30-31, 54-55, 58, 106, 111, 136, 151, 162, 166-167, 178, 180-182, 288-290, 305-306, 308.

[2] *See* Docs. 106, 136, 151 (Entry of Appearances for Tor Elkland, and his colleagues Michael Hassard and Xuan Zhou on behalf of both Michael Tew and Kimberly Tew); Docs. 166, 180-182 (Orders granting motions to withdraw as to Mr. Elkland, Mr. Hassard, and Mr. Zhou); Doc. 178 (Entry of Appearance for Peter Bornstein on behalf of both Michael Tew and Kimberly Tew); Doc. 288 (Motion For Order Appointing Separate Counsel filed by Mr. Bornstein); Doc. 289 (Order granting Mr. Bornstein's Motion For Order Appointing Separate Counsel); Doc. 290 (Entry of Appearance for David Kaplan on behalf of Kimberly Tew); Doc. 298 (Entry of Appearance for Mr. Bornstein on behalf of Michael Tew); Doc. 305 (Order withdrawing Mr. Bornstein as counsel for Michael Tew); Doc. 308 (Entry of Appearance for Jason Schall on

this case – namely, Tor Elkland and his firm, and Peter Bornstein and his firm. Eventually the problematic nature of this joint representation reared its head, and separate counsel from the Criminal Justice Act Panel were appointed to represent Mr. Tew and Mrs. Tew independently.

2.   While representing both Mr. Tew and Mrs. Tew, Mr. Bornstein filed Defendant Kimberly Ann Tew's Motion For Severance on June 13, 2022. Doc. 218. Mr. Bornstein did not file a severance motion on behalf of his other client, Mr. Tew. Mrs. Tew's motion moved for a severance pursuant to Rule 14(a) because: (1) the joinder of Ms. Tew with her husband Michael Tew in this case violates the *Bruton* Rule because in interviews Mr. Tew had made incriminating statements against Mrs. Tew and at a joint trial Mrs. Tew would be unable to cross-examine Mr. Tew about these statements. *Id.* at ¶¶ 6-9. As a basis for severance, Mrs. Tew's motion also generally asserted that a joint trial was prejudicial because "of the prejudice to Ms. Tew due to the sheer number of counts against Michael Tew in a joint trial, the evidence admissible on those counts and her different degree of culpability." *Id.* at ¶ 15. Again, in referring to the *quantity* of evidence and number of counts, versus a situation involving antagonistic defenses, the motion makes reference to the potential that jurors will not be able to follow instructions relating to Ms. Tew only and that the "evidence against Ms. Tew is far less than that the government intends to use against Michael Tew."

3.   Mrs. Tew's motion makes no reference to Mr. and Mrs. Tew (Mr. Bornstein's joint clients at the time) pointing fingers at one another at trial, much less the idea that Ms. Tew might completely blame Mr. Tew for all fraud and money laundering at trial; nor, does it even

---

behalf of Michael Tew); Doc. 349 (Order appointing Jamie Hubbard on behalf of Kimberly Tew); Doc. 368 (Entry of Appearance for Kristen Frost on behalf of Michael Tew).

make a general reference to what is oftentimes referred to as the concept of "antagonistic defenses." *See generally id.*

    4.     On August 9, 2022, the government filed its Response In Opposition To Defendant Kimberly Ann Tew's Motion For Severance. Doc. 230. This Response addresses the *Bruton* claim, the quantity of evidence it has against Mr. and Mrs. Tew, including the proffer statements of each defendant, the "number of counts," and the fact that there may be less evidence related to Mrs. Tew. *Id.* at ¶¶ 2-4. In addressing the main issue, the government stated that the Tenth Circuit "has explained that'[t]he mere fact that one co-defendant is less culpable than the remaining co-defendants is not alone [a] sufficient ground' to overturn a district court that decides to try defendants together." *Id.* at p. 6 (citing to *United States v. Williams,* 45 F.3d 1481, 1484 (10th Cir. 1995)).

    5.     Counsel for Mr. and Mrs. Tew filed a Reply Re: Defendant Kimberly Ann Tew's Motion For Severance on behalf of Mrs. Tew on August 23, 2022 addressing these same issues – *Bruton* and differences in the quantity of evidence implicating his clients. Doc. 248.

    6.     Neither the government's Response, nor Mrs. Tew's Reply, raised the concept of antagonistic or mutually exclusive defenses.

    7.     The Court issued its Order Denying Motion For Severance on October 27, 2022. Doc. 260. The Order addressed the *Bruton* challenge, with respect to Mr. Tew's call with Jonathan Yioulos and the proffer agreements, and prejudicial joinder under Rule 14(a) with respect to the quantity and type of evidence related to Mr. Tew and Mrs. Tew. *Id*. The Order addressed *inter alia* the possibility of negative spill-over effect in a joint trial, that disparate culpability is not unusual in joint trials, and the inapplicability of *United States v. Sarracino,* 340 F.3d 1148, 1165 (10th Cir. 2003). *Id.* at 7-8. Ultimately, the Court decided that the difference

in number of counts and culpability between Mr. and Mrs. Tew does not present a risk of real prejudice in this case, and nor would a jury be unable to independently evaluate Mr. and Mrs. Tew because they are married. *Id.* at 7. The Court's Order did not address the issue of finger pointing, or antagonistic defenses, because that basis for severance had not been previously asserted by counsel for Mrs. Tew (or Mr. Tew).

8. No attorney has filed a motion to sever on behalf of Mr. Tew in this matter.

9. Discovery in this matter is voluminous. It consists of multiple terabytes of reports, audio recordings and transcripts, including the transcripts of the proffer interviews of Mr. Tew and Mrs. Tew. When the Tews gave these interviews at the beginning of this case, Mr. Tew requested a carve out for Mrs. Tew in his first proffer, and Mrs. Tew did the same in her proffer. Doc. 394.1, Exhibit A. This carve out was so that Mr. Tew could decline to answer questions about Mrs. Tew and all facts and alleged exposure related to her in the debriefing session. Mrs. Tew negotiated the same type of carve out. Doc. 394.3, Exhibit C.

10. Undersigned counsel for Mr. Tew has never been party to a joint defense agreement with current counsel for Mrs. Tew. More recently, the two sets of attorneys have conferred about trial logistics, for example, to be efficient and prudent. Counsel for the two defendants have also discussed other practical matters, such as exhibits, witness issues and other non-privileged, routine matters.

11. Undersigned counsel has not had access to Mrs. Tew's trial strategy, work product or attorney-client communications. They did not have knowledge, indirect or otherwise, about Mrs. Tew's defense, investigation, trial strategy or what the content of her attorney's opening statement would be. Likewise, counsel for Mrs. Tew did not have access to the strategy,

investigation, or work product of Mr. Tew's attorneys. Nor, did they know or have access to Mr. Tew's theory of defense or what his attorney would say in opening statement.

## Discussion

### I. Mr. Tew Has Not Waived Or Forfeited This Severance Request Because It Was Not Ripe Or Timely Until After Opening Statements.

Relying upon generalities, the government has improperly argued that Mr. Tew has somehow waived a specific rule and constitutional based challenge. But his severance motion is founded on fluid developments and evidence in an ongoing trial and there has been no abandonment of any known right on his part. The government's position overlooks the fact that Mr. Tew's motion could not have been raised earlier because the facts and circumstances giving rise to the need for a severance were not known until trial had begun.

"Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'" *United States v. Carrasco-Salazar,* 494 F.3d 1270, 1272 (10th Cir. 2007)(quoting *United States v. Olano,* 507 U.S. 725, 733 (1993)). Waiver is accomplished by intent, whereas forfeiture comes about through neglect. *Carrasco-Salazar,* 494 F.3d at 1272. Mr. Tew has neither waived, nor forfeited, his right to request a severance through intent, or through neglect.

The severance motion filed on behalf of Mrs. Tew raised *Bruton* and Sixth Amendment concerns and argued the fact that Mrs. Tew was facing less charges than Mr. Tew and that the quantity of charges and evidence may prejudice Mrs. Tew at trial. Doc. 218. The related response, reply and Order address only those issues. None of these pleadings, or the related order, addressed antagonistic defenses, or mutually exclusive defenses, because the issue was not

raised by prior counsel. Contrary to the government's prior assertions on the record during trial, the specific basis for severance at issue now was not addressed in prior defense motions or the related Order. Further, it is difficult to imagine that Mr. Tew, who was represented by the same attorney as Mrs. Tew and relied upon that same attorney's advice, could have waived a known right to move to sever the trial based on antagonistic defenses at that stage of the case. The same logic applies to forfeiture.

Since the outset of this case, the Tews' conduct (that which is now documented in the record) has not reflected antagonism, despite their status as husband and wife co-defendants. Before agreeing to be debriefed by the government, Mr. Tew negotiated a carve out in the terms and conditions of his proffer agreement so that he was not compelled to say anything about Mrs. Tew. *Exhibit* B. The transcript of the proffer meeting shows Mr. Tew trying to protect Mrs. Tew. *See* Doc. 394.1. The same is true for Mrs. Tew, who obtained the same carve out. This conduct shows the Tews were not contemplating antagonistic defenses at the time that Mrs. Tew's motion to sever was filed.[3] Undersigned counsel cannot speak to what the client dynamics looked like at that stage of the case.

Moving to more recent times, after trial in this matter was continued and new counsel were appointed for Mr. and Mrs. Tew, the Court scheduled another motions filing deadline. Doc. 338. A motion to sever was not filed at that point because the level of antagonism that exits *now during trial*, did not exist then in a way that would have substantiated filing a meritorious severance motion, or a ripe motion. Undersigned counsel is not at liberty to discuss client dynamics, client communications or client confidences at the time of the last filing deadline, or

now during trial. Colo. RPC 1.6, 1.7. What undersigned counsel can assert is that Mr. Tew's defense team has not been, and is not, in a joint defense agreement with Mrs. Tew's counsel. Mr. Tew's counsel has had no access to Mrs. Tew's trial strategy, communications with her attorneys or what approach Mrs. Tew would take at trial over the past many months.

Criminal trials are fluid and unpredictable, and what a criminal trial will ultimately look like after a jury is sworn typically remains unclear during the weeks and months leading up to a trial. Criminal defense attorneys, for example, as a general rule do not have the ability to take depositions in advance of trial. Unlike in a civil matter, where discovery typically closes on a date certain, the government in a federal criminal case oftentimes produces discovery and witness statements at the last minute, and the information contained in those late disclosures impacts the evolving defense strategy at trial. In the practice of criminal defense work, it is impossible to have a crystal ball, or any reliable indication of what could happen during a trial.

In this case, there were many last-minute events that impacted trial strategy. For instance, as of the last motions filing deadline in October of 2023, the *James* hearing had not yet occurred. The defense was not on notice of what exact evidence from the *James* log would actually be admitted at trial until the Court issued its Order Regarding Admissibility Of Rule 801(d)(2)(E) Statement on December 29, 2023. Doc. 361. The government did not file its final exhibit and witness lists until February 2, 2024, three days before trial. Docs. 407, 408. And, since the defense has no burden of proof, oftentimes defense strategy (although ongoing) is only solidified upon notice of how the government plans to prove its case and what evidence it will use to do so.

---

[3] Mr. Tew's second proffer letter did not contain this carve out and counsel cannot say any more than that. *See* CRPC 1.6, 1.7. Mrs. Tew had not yet been indicted at the time of this second

It should also be noted that the government disclosed significant additional discovery in the last several weeks and days leading up to trial, and these disclosures have continued during the trial.[4]  Even today, over the lunch break the government just disclosed interview notes for witnesses that may testify today.  That the defense has been receiving and reviewing discovery on an ongoing and last minute basis is another factor that has compounded the antagonistic nature of the positions of Mr. Tew and Mrs. Tew, as new information emerges in each new disclosure.

In sum, there are several practical reasons why a pre-trial motion for severance based on antagonistic, or mutually exclusive defenses, was simply not appropriate, timely or ripe before trial.  And, the Rules of Criminal Procedure recognize that there must be room for a criminal defendant to move for severance after trial has begun.  Rule 12 requires a defendant to file motions to sever before trial *only if* the basis for the motion was reasonably available before the trial and the motion can be determined without a trial on the merits. Fed. R. Crim. P. 12(b)(3)(D).

Also, the unique position of a criminal defendant and the rights that protect the accused should also be noted at this juncture.  With some specific exceptions related to specific defenses that are not at issue here, a defendant has no obligation or duty to reveal his strategy, his general defenses or the core of his defense in a pleading before the Court.  In fact, in almost all cases it would be unwise to do so.  By way of analogy, in analyzing the constitutionality of a trial court's order requiring a criminal defendant to produce exhibits thirty days before trial began, the

---

proffer.
[4] The defense has received hundreds of pages of new discovery over the last several weeks.

Supreme Court of Colorado acknowledged that the special rights of the accused prohibits such disclosures:

> The disclosure order compels Kilgore to reveal exculpatory evidence and to tip his hand vis-à-vis his investigation and the theory of his defense. In effect, it forces Kilgore to share with the prosecution his trial strategy —i.e., how he plans to defend against the charges brought against him. This is problematic. Gaining access to Kilgore's exhibits prior to trial may help the prosecution meet its burden of proof. Put differently, the disclosure requirement rests on shaky constitutional ground because it improperly risks lessening the prosecution's burden of proof.

*People v. Kilgore*, 2020 CO 6, ¶ 29, 455 P.3d 746, 751.

In this case, not only was a severance request not yet ripe before trial but filing one would have required Mr. Tew to explain his defense strategy under *Jones* would have put him in the unconstitutional position of lessening the prosecution's burden of proof, when nothing had yet triggered his duty to make such a motion.

Based on all of these evolving developments and moving parts, Mr. Tew's motion for severance was not an untimely request, *Carrasco-Salazar supra,* based on all of the factors described above and this issue has not been forfeited or waived.

## II. *United States v. Jones.* 530 F.3d 1292 (10th Cir. 2008) Does Not Require A Different Result.

*United States v. Jones.* 530 F.3d 1292 (10th Cir. 2008), is inapposite to the facts of this case because this case now involves a defense that Mrs. Tew is not guilty, because Mr. Tew is guilty, and his guilt negates her – the classic problematic finger pointing situation.  However, applying the three-part test in *Jones* to the distinct facts of this case demonstrates why the Court should grant Mr. Tew's request for severance.

In *Jones,* Ms. Jones and Mr. Wright were charged jointly for conspiracy and bank fraud related to a check fraud scheme involving Wells Fargo. *Jones,* 530 F.3d at 1297.   Mr. Jones was

additionally charged with drugs and firearms offenses in this same case. *Id.* Prior to trial, both defendants filed separate motions to sever. *Id.* at 1298. Ms. Jones moved to sever the drug and firearm counts because she wanted to testify as to one or some counts, but not others. Mr. Wright moved to sever his trial from Ms. Jones' trial because he claimed that the drug trafficking charges related to Ms. Jones would prejudice him at trial. The District Court denied both severance requests.

On appeal, and in relevant part, Mr. Wright argued that severance was warranted because he and Ms. Jones presented mutually exclusive defenses. *Id.* at 1301. The Tenth Circuit applied a three-step test to determine whether a defendant will be prejudiced because he and a co-defendant will present defenses that are mutually exclusive.[5] *Id*. at 1304 (citing to *Pursley,* 474 F.3d at 765). "The conflict between the defendants' defenses must be such that the jury, in order to believe the core of one defense, must *necessarily* disbelieve the core of the other." *Id.* (quoting *United States v. Dazey,* 403 F.3d 1147, 1165 (10th Cir.2005) (emphasis added) (internal quotation marks omitted). The Court held that the defenses were not so antagonistic that they were mutually exclusive, that Mr. Wright's guilt was not a viable legal defense for Ms. Jones and that the core of Ms. Jones' defense did not necessarily depend on Mr. Wright's guilt. *Id.*

Here, unlike *Jones*, the prejudicial nature of the joint trial is not limited to one defendant facing additional and/or accusations of a different nature. For example, the prejudicial

---

[5] First, a court must determine whether the two defenses are so antagonistic that they are mutually exclusive. *Id.* Second, because "mutually antagonistic defenses are not prejudicial *per se,*" a court must consider whether there is "a serious risk that a joint trial would compromise a specific trial right . . . or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* (quoting *Zafiro,* 506 U.S. at 539). Third, if a defendant shows that the case satisfies the first two factors, the trial court must "weigh the prejudice to a particular defendant caused by joinder against the obviously important considerations of economy and expedition in judicial administration." *Id.* (quoting *Pursley,* 474 F.3d at 765).

comments that have been presented to the jury about the antagonistic defenses in this case are not just limited to a few examples, as was the case in *Jones*. *See id.* (Specifically referring to the following statement made by Ms. Jones' counsel: "[I]t will be up to you to decide when you go back to deliberate, did Shyla Jones act knowingly and voluntarily [?]"). The finger pointing has been present from opening statements onwards. This is now the classic case of mutually antagonistic defenses, which will continue to grow throughout trial, and continue to result in uncurable prejudice to Mr. Tew.

Under the first *Jones* prong, the two defenses between Mr. and Mrs. Tew are so antagonistic now that they are mutually exclusive. *Jones,* 530 F.3d at 1304. Since trial has begun, Mrs. Tew has unequivocally implicated Mr. Tew through attorney argument and cross-examination in a manner that only suggests that Mrs. Tew is not guilty – because Mr. Tew is guilty. Mrs. Tew said this out of the gate repeatedly during her opening statement, in a way that the jury will likely convict Mr. Tew of all counts, and very likely may convict Mrs. Tew of none. Ant, this argument is the very definition of a situation involving prejudicial antagonistic defenses, or mutually exclusive ones, that developed late in the game, due to many factors, outside of Mr. Tew's control.

For example, in opening statement, Mrs. Tew asserted the following:[6]

> This case is about a scheme concocted and executed by Michael Tew and Jon Yioulos that resulted in millions of dollars of loss to National Air Cargo. (p. 19, lines 20-24)

> And yes, both of them ended up experts at that, and they worked together. They were both in sort of a related part of the business. The financial part of the business. And why is that important? It's important because the combination of these two people working with each other, ultimately on behalf of National Air Cargo, and then on behalf of each other, was what made what was otherwise a scheme very difficult to do, very difficult to understand, very difficult to work out, very difficult not to get caught, because this -- this

---

[6] The rough draft transcript of opening statements is attached hereto as *Exhibit* A. The page references above are citations to *Exhibit* A.

12

is not something that can be done by somebody that didn't know not only about finances, but didn't know about the finances of this company, and what they both knew is they knew how vendors were identified.
(pgs 20-21, lines 23-25, 1-10).

They knew how invoices were to be approved, and invoices would be forwarded to accounts payable, how invoices would then be paid out. They even knew more important things than that, which is, how could you fly under the radar? How could you do it so you don't get caught? These are -- this is not a scheme or a plan or a design, as I said, that can be a run-of-the-mill put together program. This is a scheme and a plan that only could be executed because both of these individuals knew the weaknesses at NAC.
(p 21, lines 12-20)

And the two of them were able to create this, create this that resulted in the loss to NAC.
(p 22, lines 1-2)

And the two of them together were able to function in this way, as I said, because they knew how to do the invoices, and set up the vendors, and they knew how to get it by, because Jon Yioulos was the person who could approve the invoices, send them to accounts payable, have his signature, on hundreds of these, saying I approve this payment, Jon Yioulos and Michael Tew.  Then there's a whole other part of this plan of theirs, which is, where does the money go?
(p 23, lines 9-16)

There is one account that you will see this money being deposited into that Kimberly Tew has any signatory authority. You know what, it's Navy Federal Credit Union, and you will see it. Guess what? She is not the only signatory on that account, because the other individual who has authority to work in that account, to put money into that account and to take out money of that account is Michael Tew. The only one account that this money was distributed to from NAC into bank accounts that has Kimberly Tew's name on it, is also one that's jointly held with Michael.
(p 24, lines 13-22)

Because Michael Tew is a player, who makes money, and can make money for NAC. He can make money in other places, he can make money when he has worked for people in the marijuana industry.
(p 25, lines 12-15)

So distinguishing the participants, it's going to come down to a company for sure, and then the behavior and the design and intent and the scheme of Jon Yioulos and Michael Tew, and rather than just say the Tews, that seems to roll off the government's tongues, without making that kind of distinction that's so important.
(p 26, lines 3-8)

> So I ask you, as I'm sure you will, to pay close attention to who was needed for the scheme, who had the knowledge and the intelligence for the scheme, who got it through NAC, where it went from NAC to whose accounts, and after you are done looking at the government's case, you will realize that, while, Kimberly Tew was around for these years, they have not proven beyond a reasonable doubt her criminal participation.
> (p 26, lines 9-16)

This opening statement, or what the evidence would show from Mrs. Tew's perspective, was that "they" – meaning Mr. Tew and Mr. Yioulos – are the ones who worked at NAC, had the access, knowledge and intelligence to conspire together to commit all of the charged crimes. Indeed, the opening started with the position that: "This case is about a scheme concocted and executed by Michael Tew and Jon Yioulos that resulted in millions of dollars of loss to National Air Cargo." Exhibit A, p 19, lines 22-24. This opening statement is a classic example of finger pointing and mutually exclusive defenses.

The same goes for Mrs. Tew's cross-examination of Mr. Yioulos's statements, text messages, interactions with Mr. Tew, and Mr. Yioulos's testimony about documents and invoices. This line of questioning equally implicated Mr. Tew as the guilty party who conspired and schemed with Mr. Yioulos. And, that therefore, Mrs. Tew is not guilty. As counsel for Mr. Tew stated on the record, this cross-examination Mrs. Tew's attorney literally pointing his finger at Mr. Tew numerous times. This is another classic example of mutually exclusive defenses – Mrs. Tew did not scheme with Mr. Yioulos, but Mr. Tew did.

Second, and although "mutually antagonistic defenses are not prejudicial *per se,*" the facts here establish that there is "a serious risk that a joint trial would compromise a specific trial right . . . or prevent the jury from making a reliable judgment about guilt or innocence." *Jones,* 530 F.3d at 1304 (quoting *Zafiro,* 506 U.S. at 539). Based on testimony that has been elicited from the government's witnesses, the dynamic discussed above will continue throughout this

14

trial where Mrs. Tew points to evidence that she was not involved in a conspiracy, a scheme to defraud, illegal wires or money laundering. But, that Mr. Tew and Mr. Yioulos were. This situation now poses a real risk that the jury will not view Mr. Tew as an individual defendant and hold the government to its burden of proof to Mr. Tew, the same way it would if he were to be tried without Mrs. Tew present as a co-defendant. This dynamic will continue to have an impact on Mr. Tew's constitutional rights to a fair trial, due process and to a fair and impartial jury that will not be impacted by the antagonistic and mutually exclusive defense that has developed between himself and Mr. Tew.

Third, according to *Jones,* if a defendant shows that the case satisfies the first two factors, the trial court must "weigh the prejudice to a particular defendant caused by joinder against the obviously important considerations of economy and expedition in judicial administration." *Id.* (quoting *Pursley,* 474 F.3d at 765). Here, this Court should weigh this prejudice to Mr. Tew in light of concerns over judicial economy. Mr. Tew faces 59 counts and learned for the first time in opening statement that Mrs. Tew's primary defense is that she is not guilty because he committed all of these crimes. Under these circumstances, Mr. Tew's important constitutional rights are in sever jeopardy and no considerations of economy and convenience can outweigh them.

Accordingly, based on the foregoing facts and law, Michael Tew respectfully files this renewed motion for severance pursuant to Federal Rule of Criminal Procedure 14(a) and moves this Court to sever his trial from that of his co-defendant wife, Kimberly Tew.

    Respectfully submitted,

    *s/ Kristen M. Frost*
    Kristen M. Frost
    RIDLEY, MCGREEVY & WINOCUR, P.C.
    303 16th Street, Suite 200

Denver, Colorado  80202
Telephone:  (303) 629-9700
Facsimile:   (303) 629-9702
E-mail:  frost@ridleylaw.com

*s/ Jason D. Schall*
Jason D. Schall
BOWLIN & SCHALL LLC
7350 E. Progress Place, Suite 100
Telephone:  (720) 505-3861
E-mail:   jason@bowsch.com

*Attorneys for Defendant Michael Tew*

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

**CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of February 2024, I served a true and correct copy of the foregoing **MICHAEL TEW'S RENEWED MOTION FOR SEVERANCE** electronically with the Clerk of the Court via the CM/ECF system, which will send notice of such filing to the Court and parties.

*s/ Heather Grant*
Heather Grant