IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00305-DDD

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. **MICHAEL AARON TEW,** and
2. KIMBERLEY ANN TEW, a/k/a Kimberley Vertanen,

    Defendants.

## GOVERNMENT'S RESPONSE TO MICHAEL TEW'S MOTION TO SEVER[1]

    No "crystal ball" was needed to anticipate the issue now before the Court. ECF No. 420 (M. Tew "Renewed" Mot. to Sever). The Indictment returned in early 2021 charged a husband and wife with running a two-year-long wire fraud and money-laundering conspiracy to their mutual benefit. The potential for a conflict between the defendants' potential theories at trial has been raised numerous times — by the government, by defense counsel, and by this Court — over the course of *three years* of protracted pretrial litigation.

    Time and time again, Michael Tew deliberately eschewed every opportunity to appropriately and timely make a pretrial request for severance. Trial is now a week underway. Nothing that has happened over the course of the past five days warrants

---

[1] ECF No. 420 is styled as a "renewed" motion. Yet, the filing also expressly acknowledges — as it must — that Mr. Tew intentionally declined to file a formal motion to sever in this matter before trial. ECF No. 420 at 5, ¶ 8.

1

reconsideration of the abandoned argument Mr. Tew now hopes to raise, zombie-like, from the dead. The defendants might be antagonistic to one another, but their chosen strategies are not "mutually exclusive." The motion should be denied.

## PROCEDURAL HISTORY

The motion presents only a partial and skewed version of the procedural history of this case. To supplement the record, the government summarizes the docket as follows:

1. Michael Tew was originally charged by Complaint on July 8, 2020, ECF No. 1, because of concerns that he would flee the country with his family. ECF No. 128 (discussing procedural history and concerns about flight).

2. Following participation in two proffer sessions, ECF No. 394-1, 394-2 (the second of which did not include a carve out for incriminating his wife), and terminations of no less than three sets of counsel (ECF Nos. 15, 25, and 54), Michael Tew withdrew from a change of plea hearing the day before. ECF No. 56. At that time, the Court admonished Mr. Tew:

   > Absent extraordinary circumstances, no further motions to withdraw or motions to substitute counsel will be granted. The court reminds Mr. Tew that counsel is under a duty to provide him prudent and considered advice, even if that advice is not what Mr. Tew hopes to hear.

   ECF No. 55.

3. Ongoing investigative efforts indicated that Kimberley Tew had agreed with Michael Tew to defraud National. Prior to being charged, she, too, initially engaged in attempts to reach a pre-indictment resolution by participating in a proffer session. *See* ECF No. 394-3.

4. On February 3, 2021, the grand jury returned the Indictment. ECF No. 83.

5. On February 26, 2021, Tor Ekeland's firm entered an appearance on behalf of both defendants. ECF No. 106.

6. The government responded immediately, asking for a prompt inquiry into the providence of the Tews' proposed joint representation. ECF No. 108 at 7-8 (citing *inter alia*, *Wheat v. United States*, 486 U.S. 153, 162-63 (1988), which articulates the "notoriously and hard to predict" nature of all stages of criminal prosecution, as well as the "nascent conflicts of interest" lurking in any joint representation of codefendants).

7. Joint counsel for Michael and Kimberley Tew never filed a formal response.

8. However, at a hearing convened on March 18, 2021, Mr. Ekeland made representations sufficient to satisfy the Court such that joint representation was "permitted to continue." ECF No. 116.

9. Mr. Ekeland continued to jointly represent the Tews for an additional nine months. On December 27, 2021, he, too, moved to withdraw. *See, e.g.*, ECF No. 162 (noting, among other factors, "certain circumstances [making] it unreasonably difficult to continue to the representation separate and apart from" financial issues). *See also* ECF No. 163 (elaborating further under seal).

10. On February 10, 2022, Michael and Kimberley Tew filed a joint pro se letter — *signed by both* — averring their intent to engage new counsel. ECF No. 175.

11. Approximately two weeks later, on February 25, 2022, the Tews' evident choice to pursue joint representation persisted, when Peter Bornstein entered an

appearance on behalf of both defendants. ECF No. 175.

12. Mr. Bornstein represented the pair through the remainder of 2022, filing numerous pretrial motions on each of their behalf individually, as well as jointly. *See, e.g.* ECF Nos. 200, 209, 212, 213, 213, 215, 216, 221 (joint motions); ECF No. 216 (M. Tew motion to suppress); ECF No. 218 (K. Tew motion to sever); ECF Nos. 219 & 220 (separate motions filed by each individually requesting government *James* proffer).

13. On October 12, 2022, an all-day motions hearing was held. ECF No. 285 (Transcript). The very first issue discussed at that hearing was Kimberley Tew's motion to sever. *Id.* at 5:16-20:25.

   a. At that time, the court expressly noted its concerns about the potential for conflict posed by the defendants' ongoing joint representation, including the evidentiary issues raised by both defendants' proffers. *Id.* at 5:18-6:8.

   b. The government presented arguments against severance, including the obvious impacts on judicial resources and economy. Importantly, the government also fronted an issue that would be raised by separate trials, namely, that proceeding in such a manner would itself pose certain strategic disadvantages for the defendants, because aspects of the proffer agreements meant that certain evidence would more easily be used at separate trials. *See id.* at 8:8-9:11; 17:13-16.

   c. The government reiterated that continued joint representation of both

4

       defendants was concerning. *Id.* at 9:9-17.

    d. On that point, the Court seemed inclined to agree — noting that if financial concern was all that was driving the continued joint representation — that could be addressed by the appointment of separate CJA counsel. *Id.* at 9:18-25.

    e. Mr. Bornstein went on to present oral argument regarding Kimberley Tew's motion to sever at length. *Id.* at 11:5-14:20. At no time did Mr. Bornstein represent that Ms. Tew's severance motion was based on mutually exclusive defense theories; indeed he suggested otherwise. *Id.* at 6:21-22 ("But in terms of my professional role in representing both of them, I don't see the severance issue as raising that badly.").

14. On October 27, 2022, the Court denied Kimberley Tew's motion to sever. ECF No. 260 (discussed *infra*).

15. On December 1, 2022, Mr. Bornstein filed a motion to withdraw from his representation of both defendants. ECF No. 273. Notably, that motion indicated a single defense agreement, stating, "The attorney and clients negotiated and signed *an* engagement agreement including the financial terms for the representation." *Id* (emphasis added).

16. After Mr. Bornstein's withdrawal was granted without government input, ECF No. 275, the prosecution moved for reconsideration, noting that the motion presented no representations of conflict of interest or a breakdown of communications with either client. *See* ECF No. 276 at 4.

17. As a result, a hearing was held on December 9, 2022. ECF No. 280. Mr. Bornstein was permitted to withdraw as private counsel, but ordered appointed as CJA counsel for both of the Tews. ECF No. 280.

18. By December 28, 2022, (one day after the transcript from the pre-trial motions hearing was posted to the docket), it became clear that Mr. Bornstein and his clients finally had absorbed the Court's messaging from the hearing two months' prior. In filing a Motion for Appointment of Separate Counsel, ECF No. 288, Mr. Bornstein made clear that conflicting defense theories from each defendant was a possibility:

    a. The motion flatly cited the "inherent conflict of interest" in "[j]oint representation of two criminal defendants." *Id.* at 2, ¶ 5.

    b. The motion also stated, in no uncertain terms, that: "*The previous waiver by the clients of a potential conflict of interest when Mr. Bornstein was retained privately is no longer operative.*" *Id.* at 2, ¶8 (emphasis added).

    c. The motion went on to state as grounds the potential that one or both of the defendants could testify at trial, a possibility bringing "into sharp resolution the significant proffers made by each Defendant to the Government during the preliminary events in this case. These proffers contain statements that incriminate both defendants." *Id.* at 3, ¶ 9.

19. Shortly thereafter, on January 3, 2023, Ms. Tew's present counsel, David Kaplan, entered his appearance. ECF No. 290.

6

20. A joint status report, filed on January 10, 2023, ECF No. 293 at 2-3, ¶ 3, the parties discussed the potential for conflicting defenses at trial at length:

> The parties are evaluating whether there is a conflict that would prevent attorney Peter Bornstein from continuing to represent defendant Michael Tew. Mr. Bornstein does not believe that there is a conflict that would provide good cause to withdraw. Mr. Kaplan has concerns about a conflict: one such issue is if Ms. Tew decides to testify at trial, such a scenario might require Mr. Bornstein to either cross-examine a former client or waive that cross-examination to the potential detriment of a current client. The government is not in a position to evaluate whether such a conflict is real or merely abstract, whether a joint defense agreement could solve any such conflict, whether such a conflict can be resolved with a knowing and intelligent waiver of cross-examination by Mr. Tew, or whether any such conflict could otherwise be resolved by defense counsel in this case. Mr. Bornstein is concerned that the government is meddling in the province of the defendants and their lawyers and that nothing should be scheduled at this time.

21. On January 17, 2023, Peter Bornstein (on behalf of Michael Tew) and David Kaplan (on behalf of Kimberley Tew) filed documents related to this issue under restriction. ECF Nos. 300, 301.

22. On January 30, 2023, Peter Bornstein was permitted to withdraw as counsel for Michael Tew. ECF No. 305. Jason Schall entered his appearance for Mr. Tew the following day. ECF No. 308.

23. In the intervening *404 days* between the Court's Order on Kimberley Tew's pre-trial motion to sever and the commencement of this trial, no further motions to sever were filed by either defendant. Most recent defense counsel for both parties, however, elected to file *different* pretrial motions, both within and (well) outside of the motions deadline. *See, e.g.*, ECF Nos. 336, 337 (moving for extensions of the pretrial motions deadline); ECF Nos. 345, 346 (defense motions related to *James* proffer); ECF Nos. 359, 360 (objections to business

7

record certifications); ECF Nos. 370, 373, 398, 410 (out-of-time motions in *limine* and briefing related to admissibility of proffer statements); ECF No. 374 (K. Tew motion to continue); ECF Nos. 376, 377 (trial briefs).

## ARGUMENT

### I. Michael Tew has both waived and forfeited this severance argument on multiple occasions over the past three years

The present motion suggests that the Court's continuing duty under Federal Rule of Criminal Procedure 14(a) means that such a defense can never be "waived" or "forfeited," because trials are "unpredictable" and because the "unique position of a criminal defendant and the rights that protect the accused" mean that a defendant has "no obligation or duty to reveal his strategy, his general defenses, or the core of his defense in a pleading before the Court." [2] ECF No. 420 at 9. Taken to its logical end, the argument Michael Tew proposes would mean that the Federal Rules of Criminal Procedure are unconstitutional and that experienced defense lawyers should never be required to evaluate known or likely trial risks and bring them to the court's attention in advance of trial. This is wrong.

---

[2]   The sole authority cited for this extraordinary argument is a state case, *People v. Kilgore*, 455 P.3d 746, 751 (Colo. Sup. Ct. 2020). That case concerned a court order requiring the defense to produce its *exhibits* thirty days before trial. That is to say, *Kilgore* rejected an order requiring the defense to produce *specific evidence* well before trial. *Kilgore* did not, however, stand for the proposition that a defendant can ignore pre-trial deadlines designed to ensure the orderly resolution of legal issues by the Court. *Kilgore* is thus not only nowhere close to legally binding; it is also factually inapposite. *Kilgore* is also, for obvious reasons, unable to override the federal system's long-standing reciprocal discovery requirements, which are reflected in the Federal Rules of Criminal Procedura and this District's standard discovery order, which *requires* production of exhibits if a defendant intends to use them in his or her case in chief. Fed. R. Crim. P. 16.

8

Federal Rule of Criminal Procedure 12(b)(3) governs those defense motions that "must" be raised before trial. That list includes "improper joinder." Fed. R. Crim. P. 12(b)(3)(iv). Rule 12(b)(3) was crafted as an easy-to-read list of common defenses, precisely to ensure that "such [common] claims are not overlooked." *See* 2014 Amendment Committee Notes.

The only safety valve to escape Rule 12(b)(3)'s clear deadline is outlined in the Rule's introductory language: A defendant's obligation to timely raise one of Rule 12's defenses is limited to arguments that are "reasonably available" pretrial and which can be determined "without trial on the merits." *See* 2014 Amendment Committee Notes (explaining purpose of this language).

The present motion contorts the procedural history in an attempt to squeeze into Rule 12's safety valve. But, as the summary of preceding events makes abundantly clear, the potential for conflicting defenses at trial from Michael and Kimberley Tew has been well-known *for years*. The idea that the defendants could turn on each other, even at the very last minute, was "reasonably available" information, and it did not require "trial on the merits" to bring that potential conflict to light. It is the kind of thing every experienced criminal lawyer anticipates in a multi-defendant case.

The government identifies at least *seven* specific, logical points in time where such an argument could have been raised pretrial:

1. <u>February 8, 2021</u>: ECF Nos. 108 & 116 (Gov't Mot. & Hearing on Joint Representation);

9

2. <u>June 13, 2022</u>: ECF No. 218 (K. Tew's Pre-Trial Mot. to Sever);

3. <u>October 12, 2022</u>: ECF No. 285 (Transcript of Pre-Trial Mots. Hearing, including extensive discussion of K. Tew's Mot. to Sever, ongoing concerns regarding continued joint representation; and evidentiary implications of defendants' proffer statements at trial);

4. <u>December 28, 2022</u>: ECF No. 288 (P. Bornstein Motion for Order Appointing Separate Counsel, citing "inherent conflict of interest" and possibility of one or both defendants taking the witness stand at trial);

5. <u>January 10, 2023</u>: ECF No. 293 (Joint Status Report noting Kimberley Tew and D. Kaplan's concerns regarding P. Bornstein's continued representation of Michael Tew, as well as government's concerns about same);

6. <u>January 17, 2023</u>: ECF Nos. 300 & 301 (filings by D. Kaplan and P. Bornstein);

7. <u>January 7, 2024</u>: ECF Nos. 241; 263; 336; 337 (pretrial motions deadline).

At a bare minimum, Mr. Bornstein's motion on December 28, 2022 — *404 days prior to trial* — provided sufficient notice for current defense counsel (who immediately succeeded him) to understand that there was an "inherent conflict of interest" between Michael and Kimberley Tew and that the waiver of the potential conflict "was no longer operative." ECF No. 288.

Likewise, the motion's own factual recitation proves the point: Taking defense counsel at their word — if indeed there has never been a formal joint defense agreement, let alone any informal communications sharing defense strategy between

10

Michael and Kimberley Tew's current teams[3] — then those circumstances only further suggest that Mr. Tew was on good notice that he should file a timely pretrial severance motion if he believed his constitutional rights could be put at jeopardy by his wife's defense at trial.

Finally, the government produced the proffer statements of each defendant to each round of successive defense counsel *in its initial productions*. It was well known to all throughout that those proffers implicated each defendant, as well as one another. The potential conflict raised by those proffers alone constituted "reasonably available" information justifying timely motions to sever. The fact that Kimberley Tew might seek to place some degree of blame on Michael, or vice versa, is part and parcel of that history. Additionally, the defendant studiously limits his mention of the fact that his second proffer specifically *did not contain the carve out regarding his wife*, another well-known fact with obvious potential repercussions at a joint trial.

Whether Michael Tew's failure to raise this issue at any point during the case's lengthy pre-trial history is considered to be an actual, intentional waiver, or an inadvertent forfeiture, the result remains the same. *See United States v. Carrasco-Salazar*, 494 F.3d 1270, 1272 (10th Cir. 2007); *United States v. Jones*, 530 F.2d 1292,

---

[3] The government's insight into these representations is obviously limited. However, the defendant's joint *pro se* letter, which refers to them as a collective, as well as Mr. Bornstein's motion to withdraw, which references a single engagement agreement, suggests at the very least an informal sharing of defense strategy up to that point. Likewise, the defendants have represented at this trial that they remain married and, on information and belief, continue to cohabitate. The idea that they have maintained a strict wall and have never discussed legal strategy with one another strains belief.

1298-99 fns. 1 &2 (10th Cir. 2008). Michael Tew could have, and should have, raised this issue well before trial as Rule 12 requires. He did not, for tactical reasons, and his severance argument has been abandoned.

## II. Michael Tew and Kimberley Tew's respective defenses are not mutually exclusive.

Michael Tew now argues that the defenses presented to this jury are "antagonistic." Apart from the fact that this should have come as no surprise, the argument fails on the merits.

In denying Kimberley Tew's prior motion to sever, this Court's summary of the law included citations to key cases analyzing how to evaluate potentially prejudicial "spill-over" and arguments between defendants over relative culpability. ECF No. 260 at 6 (denying severance while citing and quoting *United States v. Caldwell*, 560 F.3d 1214, 1221 (10th Cir. 2009); *United States v. Youngpeter*, 986 F.2d 349, 354 (10th Cir. 1993); and *United States v. Sarracino*, 340 F.3d 1148, 1165 (10th Cir. 2003)).

Although this recitation of the law did not specifically use the phrases "antagonistic" or "mutually exclusive", the general concept is still reflected. In *United States v. Jones*, (a case which notably cited many of the other cases listed in the Court's summary of the legal standard for severance of codefendants), the Tenth Circuit laid out the three-step inquiry for whether a defendant will be so prejudiced by mutually exclusive defenses as to justify severance:

*First*, the court must determine whether the defenses are "so antagonistic that they are mutually exclusive." *Second*, because "mutually antagonistic defenses are not prejudicial *per se*, the court must consider whether there is a "serious risk that a

12

joint trial would compromise a specific trial right … or prevent the jury from making a reliable judgment about guilt or innocence." *Third*, if a defendant shows that his case satisfies the first two factors, the trial court must "weigh the prejudice to a particular defendant caused by joinder against the obviously important considerations of economy and expedition in judicial administration." *United States v. Jones*, 530 F.3d 1292, 1304 (10th Cir. 2008) (quotations omitted).

As the past five days of trial make clear, Michael Tew cannot meet any of *Jones*' three prongs:

*First*, Michael and Kimberley Tew's respective defenses have not been "so antagonistic that they are mutually exclusive." *See Jones*, 530 F.3d at 1304 (explaining that a "mutually exclusive" defense occurs when, in order to believe one defense, the jury must *necessarily* disbelieve the core of the other).

Broadly distilling the past four days of opening statements, testimony, and cross-examination, Kimberley Tew has argued to the jury that this case concerns "a scheme concocted and executed by Michael Tew and Jon Yioulos." ECF No. 420-1 at 19:22-24 (Transcript of K. Tew Opening Statement). Michael Tew, for his part, has argued that this case is "crazy" and that there is more to the "full story" that the jury should consider, including evidence that Kimberley had knowledge of, as well as motive, influence, and authority to encourage, her codefendants' illicit conduct. *See id.* at 19:14-15.

The government's presentation thus far has supported *both* defense theories, which are — in no way — mutually exclusive. Michael Tew and Jonathan Yioulos

13

could have crafted the scheme *and* Kimberley could have actively encouraged it for far longer than the other two would have liked. All of this evidence also would be equally admissible against either party at a separate trial. Indeed, *more* evidence could conceivably be admissible if Michael and Kimberley Tew were tried separately, because certain proffer-protected evidence, like Michael Tew's cell phone, would not be *Bruton*-limited in the same fashion as it has been in this joint trial. *See* ECF No. 285 at 8:8-9:11; 17:13-16.

At its core, the "finger-pointing" that has occurred over the course of the past trial week has addressed only the *respective roles and culpability* of each defendant's participation in a $5,000,000 fraud, not whether they intentionally participated in it. That concept of respective culpability was already addressed in the Court's prior order. *See* ECF No. 260 at 7 (citing *Caldwell*, *Richardson*, and *Youngpeter*). That ruling makes clear that adjudging respective culpability is a benefit to joint trials, not a detraction.

*Second*, even if the defendants' defenses were somehow considered mutually antagonistic — and to be clear, they are not — they still would need to meet the second part of the *Jones* test, and show that a specific trial right has been put at issue by joinder. On this, Michael Tew generally complains that his constitutional rights to a fair trial, due process[,] and to a fair and impartial jury" have somehow been put at risk by Ms. Tew's theory of the case. *See* ECF No. 420 at 15. But he does not elaborate on how so.

To the contrary, none of Mr. Tew's fundamental trial rights have been put in

jeopardy over the past five days. He has been able to pursue his theory of the case, to cross-examine the government's witnesses; and, over the course of next three trial days, he can present his own evidence and further argument.

His generalized argument about a hypothetical "risk" of prejudice also ignores the proposed jury instructions, specifically proposed Instruction Nos. 14, 17, 18, which all collectively and appropriately advise the jury to consider each defendant's culpability individually, as well as each defendant's culpability as to each respective count individually. As this Court has repeatedly acknowledged, both by written Order and by comments at trial, "[a] central assumption of our jurisprudence is that juries follow the instructions they receive." ECF No. 260 at 7 (quoting *United States v. Castillo*, 140 F.3d 874, 884 (10th Cir. 1998) (quotation marks omitted). Similar instructions were credited when affirming the defendants' convictions in *Jones*. 530 F.3d at 1303.

*Finally*, the motion fails on the third prong of the *Jones* test. Any hypothetical prejudice to Michael Tew is vastly outweighed by considerations of judicial economy and prejudice to the government. This case has been pending for over three years. A fair administration of these proceedings has been hampered, over and over again, by deliberate legal stratagems employed by these defendants expressly for the purpose of delaying this trial. Once again, untimely and vague appeals to constitutional rights are no excuse for Michael Tew's deliberate disregard of the Federal Rules of Criminal Procedure and court deadlines.

## CONCLUSION

It should not take two separate jury trials to fairly and accurately sort out whether Michael and Kimberley Tew are guilty. Michael Tew's motion to sever is untimely and meritless. It should be denied.

Respectfully submitted this 11th day of February, 2024.

COLE FINEGAN
United States Attorney

| | |
|---|---|
| By:   */s/ Bryan Fields* <br> Bryan Fields <br> Assistant United States Attorney <br> U.S. Attorney's Office <br> 1801 California St. Suite 1600 <br> Denver, CO 80202 <br> (303) 454-0100 <br> Bryan.Fields3@usdoj.gov <br> Attorney for the Government | By:   */s/ Sarah H. Weiss* <br> Sarah H. Weiss <br> Assistant United States Attorney <br> U.S. Attorney's Office <br> 1801 California St. Suite 1600 <br> Denver, CO 80202 <br> (303) 454-0100 <br> Sarah.Weiss@usdoj.gov <br> Attorney for the Government |

**Certification of Type-Volume Limitation**

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

*/s/ Sarah H. Weiss*
Sarah H. Weiss

**Statement of Speedy Trial Impact**

Pursuant to Judge Domenico's Practice Standard III(C), the government notes that this motion will not affect the speedy trial clock in this case because trial already began within the time required by the Speedy Trial Act.

*/s/ Sarah H. Weiss*
Sarah H. Weiss

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 11th day of February, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system that will send notification of such filing to counsel of record in this case.

      s/ *Sarah H. Weiss*
Sarah H. Weiss
Assistant U.S. Attorney
1801 California Street, Suite 1600
Denver, CO 80202
Telephone 303-454-0100
Facsimile 303-454-0402
Sarah.Weiss@usdoj.gov