IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:20-cr-00305-DDD-2

UNITED STATES OF AMERICA,

    Plaintiff,

v.

**2. KIMBERLEY ANN TEW**

    Defendant.

## Kimberley Tew's Motion for Release Pending Appeal

Defendant Kimberly Ann Tew, through trial attorneys David S. Kaplan and Jamie Hubbard, submits this motion to remain on bond pending her appeal in accordance with the authority contained in 18 U.S.C. § 3142(b)(1).

### Procedural History

Kimberley Tew was indicted in February 2021 and released on pretrial supervision. For more than four and a half years, she has been under supervision by federal officers. She has remained in contact with her supervising officer, completed her required check-ins, showed up for every court appearance, and never had a violation report filed against her.

On February 15, 2024, Kimberley Tew was convicted on twelve counts of conspiracy, wire fraud, and money laundering in the above case. After her convictions were entered, this Court allowed her to remain out of custody pending sentencing. (ECF No. 439.) After the Government objected to Mrs. Tew's continued release, the Court held an evidentiary hearing on the matter and again ordered that she could remain on release pending sentencing. (ECF No. 483.)

Mrs. Tew was recently sentenced by this Court to forty-eight months imprisonment followed by three years of supervised release. (ECF No. 527.) At the sentencing hearing, the Court permitted Mrs. Tew to remain on release until designated to a facility by the Bureau of Prisons. She is currently scheduled to report on October 9, 2024 to serve her sentence at Satellite Prison Camp at FCI-Phoenix. (ECF No. 545.)

Mrs. Tew has appealed her convictions. (ECF No. 535.) This Court retains jurisdiction, however, to decide whether Mrs. Tew may remain on release pending her appeal. *United States v Meyers*, 95 F.3d 1475 n.6 (10th Cir. 1996) ("Although the filing of a notice of appeal usually divest the district court of further jurisdiction, the initial determination of whether a convicted defendant is to be released pending appeal is to be made by the district court."); F.R.A.P. 9, advisory committee notes ("Notwithstanding the fact that jurisdiction has passed to the court of appeals, both 18 U.S.C. § 3148 and FRCrP 38(c) contemplate that the initial determination of whether a convicted defendant is to be released pending the appeal is to be made by the district court.").

## Statement of Conferral

The Government opposes the relief requested.

## Legal Standard

Section 3143 of Title 18 of the United States Code provides, in relevant part:

> **(b)  Release or Detention Pending Appeal by the Defendant.—**
>
> (1)  Except as provided in paragraph (2), the judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds—

(A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and

(B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—

> (i) reversal,
> (ii) an order for a new trial,
> (iii) a sentence that does not include a term of imprisonment, or
> (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

If the judicial officer makes such findings, such judicial officer shall order the release of the person in accordance with section 3142(b) or (c) of this title, except that in the circumstance described in subparagraph (B)(iv) of this paragraph, the judicial officer shall order the detention terminated at the expiration of the likely reduced sentence.

**<u>Mrs. Tew Is Not a Danger or Flight Risk</u>**

This Court previously found—more than once—that Mrs. Tew is not a danger to herself or the community or a risk of flight. After the convictions entered, Mrs. Tew could only be released if the Court found "by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released." 18 U.S.C. § 3143(a). In allowing Mrs. Tew to remain on bond until her sentencing hearing, the Court pointed to the fact that Mrs. Tew had shown up for every court appearance, including trial, knowing there was a significant risk of conviction and a resulting (potentially lengthy) term of imprisonment. The Court noted Mrs. Tew's ties to the community, most significantly her school-aged children.

None of the factors relied on by the Court in making this earlier determination have changed. Mrs. Tew remains compliant with supervision. Her daughters remain in Colorado; one is enrolled in public school while the other is home schooled. If anything, any potential flight risk has lessened since the Court last found Mrs. Tew met the criteria to remain on release. After her convictions entered, Mrs. Tew was aware that she faced the potential of more than a decade in prison if sentenced within the applicable guideline range. The Court then imposed a 48-month sentence, less than 1/3 of what the Government was seeking. Thus, any risk that Mrs. Tew would flee has decreased since the last time the Court found by clear and convincing evidence that she was not a flight risk or danger to the community.

Mrs. Tew has been on pretrial release for more than four years. During that time, her supervising officer has not filed any violation reports or otherwise indicated non-compliance by Mrs. Tew, even as her conditions of release have shifted over time. Instead, she remained in contact with her supervising officer and appeared for every court date. As such, the Court can easily find in this case—as it has multiple times in the past—that Mrs. Tew is not a flight risk or a danger to the community so as to satisfy § 3143(b)(1)(A).

### **Substantial Issues Will be Raised in Mrs. Tew's Appeal**

With respect to Section 3143(b)(1)(B), Mrs. Tew has separate counsel appointed to pursue her appeal. However, trial counsel has identified a number of issues that raise substantial questions of law or fact and which may result in her convictions being vacated. The two most obvious issues to trial counsel are addressed below and show that Mrs. Tew's appeal is not for purposes of delay but rather raises substantial issues of fact and law that are likely to result in a new trial for Mrs. Tew.

***Severance***: Over the objection of both defendants, Mrs. Tew and her husband were tried jointly despite Mr. Tew's defense being antagonistic towards Mrs. Tew. Mrs. Tew's defense focused on knowledge—what she knew about the source of funds coming into her husband's accounts and their joint account. Did she know the money came from National Air Cargo? Did she know Michael Tew wasn't entitled to payment/compensation from NAC? If the jury concluded that Mrs. Tew did not know the source of the funds or did not know that her husband wasn't entitled to the money being transferred to him, the jury could have acquitted her of the conspiracy, wire fraud, and money laundering charges.

Mr. Tew's defense team took a very different approach to the case. In a kind of duress defense, they portrayed Kimberley Tew as a puppeteer who was in complete control of her husband's every action. Mr. Tew's attorneys elicited testimony and presented evidence that—not only did Kimberley Tew know her husband was stealing funds from National—she made him do it. Mr. Tew's attorneys wanted the jury to believe that, but for Kimberley Tew's manipulation of her husband, Michael Tew would never have stolen the money.

Defenses are antagonistic if "the conflict between codefendants' defenses [is] such that the jury, in order to believe the core of one defense, must necessarily disbelieve the core of the other." *United States v. Linn*, 31 F.3d 987, 992 (10th Cir.1994). For the jurors to believe Mr. Tew's defense that Mrs. Tew was the mastermind behind the entire scheme, they would necessarily have to disbelieve Mrs. Tew's defense that she lacked the required knowledge as to the legality of the source of funds. Under similar circumstances, the Tenth Circuit has held that defenses were antagonistic. *United States v. Pursley*, 474 F.3d 757, 766 (10th Cir. 2007). Moreover, in *Pursley*, the appeals court upheld denial of the severance because—even though

5

antagonistic—both parties' defenses exonerated the defendant. Here, Michael Tew's defense did not exonerate his wife; it placed all the blame at her feet. Thus, Mrs. Tew was prejudiced by the failure to sever. *Id*.

The joint trial had the practical effect of Mrs. Tew being prosecuted by four attorneys—two attorneys representing the government and two attorneys representing her husband. Much of the testimony about Mrs. Tew's character was elicited or amplified by the attorneys representing Michael Tew. Mrs. Tew has a strong argument on appeal that she was unfairly prejudiced by the joint trial. If the appellate court agrees, her conviction would be vacated and the matter remanded for a new trial. Accordingly, Mrs. Tew's appeal satisfies 18 U.S.C. § 3143(b)(1)(B).

***Improper Character Evidence***: During trial, witness after witness took the stand and testified negatively about prior interactions they had with Kimberley Tew or their opinions about Kimberley Tew's bad character.

Hannah Scaife was permitted to testify that Kimberley Tew was "toxic", "emotionally manipulative," and pressured her to do things that she would not otherwise do. Mrs. Scaife was specifically permitted to testify about a time in 2015—two years prior to the events at issue in this case—when she visited the Tews in Colorado and observed Kimberley "verbally abusing" Mr. Tew. At one point, in overruling the Government's objection to a question asked on cross-examination, the Court noted that a big part of Ms. Scaife's testimony was to establish that she had been manipulated by Mrs. Tew.

The Government elicited this testimony that clearly falls within F.R.E. 404(b) without any prior notice of its intent to do so. Ms. Scaife's character testimony was not during the timeframe of the conspiracy and did not relate to the facts of the conspiracy. It was offered to

6

show that Mrs. Tew was a manipulative and abusive person in 2015 and earlier, and therefore it is more likely that Mrs. Tew was abusive and manipulative during the conspiracy.

Similarly, Abby Schwartz, a bookkeeper who worked at National, was permitted to testify about a phone call with Kimberley Tew where Mrs. Tew was screaming at her to pay an invoice for money owed to Michael Tew. Ms. Schwartz testified that she was so bothered by the tone and tenor of the call that she went to her boss and requested that she never be made to speak with Mrs. Tew again. This phone call occurred prior to the timeframe of the conspiracy and related to money that Michael Tew was legitimately owed by National based on his employment contract. The only purpose for this call was to show that Kimberley Tew had a propensity towards making abusive phone calls and verbally abusing others. It was admitted without the notice required by Rule 404(b) and without the required limiting instruction when 404(b) evidence is admitted for a non-propensity purpose.

A slightly separate but related issue is the multiple witnesses who were permitted to give what was, in essence, victim impact testimony. Chris Alf, National's president, testified about his wife's cancer diagnosis and how dealing with the theft of funds during this stressful time impacted him emotionally. Abby Schwartz tearfully explained the betrayal she felt because of the defendants' actions and how she was impacted emotionally. Michael Meyers was permitted to testify about how his cryptocurrency trading with Mrs. Tew—a different scheme that had little to nothing to do with the crimes charged—negatively impacted his life, including how it "destroyed" his relationship with his wife and daughter and drove him into drinking heavily.

None of this character testimony was relevant to the crimes charged. Neither Mr. Alf's wife's cancer, nor Ms. Schwartz's feelings of betrayal, nor the state of Mr. Meyers's marriage

made any fact at issue more or less likely. Victim impact testimony was offered through witness after witness purely for the purpose of pulling on the jurors' heartstrings and portraying Kimberley Tew as a manipulative, abusive, horrible human being that the jury should punish regardless of whether she committed the crimes charged. Admission of this kind of victim impact testimony from any of these witnesses was error. The cumulative impact of allowing the Government to intentionally elicit emotional victim impact testimony from witness after witness was unfairly prejudicial and materially impacted the outcome of this case. If the appellate court agrees, remand for a new trial would be appropriate. Accordingly, this issue also satisfies 18 U.S.C. §3143(b)(1)(B).

### Mrs. Tew is Entitled to Release Pending Appeal Under Section 3143(b)(1)

If the Court finds: (1) Mrs. Tew is not a flight risk or a danger to the community; and (2) her appeal raises substantial legal issues likely to result in reversal or an order for a new trial, then Section 3143(b)(1) provides that the Court "shall order the release of the person." This Court has previously found that Mrs. Tew is not a danger or a flight risk and imposed conditions on her release that could remain in place during the pendency of an appeal. The appellate issues identified herein are just a few of the many viable challenges that will be addressed in her appeal, and which show that such appeal is not intended for delay and is likely to result in reversal of her convictions or a new trial. Because Mrs. Tew satisfies both prongs of Section 3143(b), the Court shall order her release pending appeal.

For the reasons set forth above, Mrs. Tew respectfully requests the Court vacate the order requiring her to report to serve her custodial sentence and instead order that she remain on release under the supervision of the Court pending her appeal.

Dated: September 16, 2024.

                                                Respectfully submitted,

                                                *s/ Jamie Hubbard*
                                                David S. Kaplan
                                                Jamie Hubbard
                                                STIMSON LABRANCHE HUBBARD, LLC
                                                1652 Downing Street
                                                Denver, CO 80218
                                                720.689.8909
                                                kaplan@slhlegal.com
                                                hubbard@slhlegal.com

                                                *Attorneys for Kimberley Ann Tew*

9

## Certificate of Service

     I certify that on September 16, 2024, I electronically filed Kimberley *Tew's Motion for Release pending Appeal* using the CM/ECF system.

                                          *s/ Andres L. Varas*
                                          Andres L. Varas, Paralegal