IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00305-DDD

UNITED STATES OF AMERICA

        Plaintiff,

v.

3. JONATHAN K. YIOULOS,

        Defendant.

---

**DEFENDANT'S MOTION FOR VARIANT (NON-GUIDELINE) SENTENCE**

---

Jonathan Yioulos, by and through counsel, Richard K. Kornfeld of Recht Kornfeld, P.C., and pursuant to Title 18 U.S.C. § 3553(a), respectfully moves this Court to impose a variant non-guideline sentence in this case. In support of said Motion, Defendant states as follows:

**I.    Introduction**

Mr. Yioulos is asking this Court to consider sentencing him to a variant sentence of probation. Mr. Yioulos and undersigned counsel respectfully suggest that this request is appropriate for the reasons set forth below, and that this request comports with the dictates of Title 18 U.S.C. § 3553(a), i.e. that such a sentence is "sufficient, but not greater than necessary, to comply with the purposes set forth" in the statute.

**II.    The Plea Agreement and Sentencing Guidelines**

On November 18, 2021, Mr. Yioulos plead guilty to Counts One and Thirty-Nine of

1

the Indictment, charging a violation of 18 U.S.C. §§ 1349 and 1343, respectively. The facts underlying the offense are set forth in detail in the Plea Agreement (Doc. 155) and the Presentence Report (Doc. 319). The Court has also heard, in detail, about Mr. Yioulos' participation in the charged conspiracy when Mr. Yioulos testified at the trial of co-defendants Kimberley and Michael Tew earlier this year.

The Plea Agreement contemplates that the relevant Guidelines range is 63-78 months, based upon an adjusted total offense level of 26 and a criminal history category I. See Plea Agreement (Doc. 155) at p. 19.

The Probation Department, in the PSR, agrees with a guidelines range of 63-78 months, and further recommends a variant sentence of 54 months as to each Count, to run concurrently. See PSR Exhibit A-Sentencing Recommendation (Doc. 319-1) at p. 2.

However, since the time Mr. Yioulos entered his guilty pleas in 2021, the zero point offender section of the Sentencing Guidelines, found at U.S.S.G. § 4C1.1, has gone into effect. As this Court is aware, section 4C1.1 provides a decrease of two levels from the offense level for offenders who did not receive any criminal history points under U.S.S.G. Chapter 4, Part A, and whose instant offense did not involve specified aggravating factors. In the present case, Mr. Yioulos did not receive any criminal history points under Chapter 4, and there are no aggravating factors that would preclude application of the zero point offender section. Accordingly, undersigned counsel respectfully suggests that the appropriate adjusted offense level is properly calculated at level 24, resulting in a presumptive guidelines range of 51-63 months. Of course, this presumptive range does not take into account the Probation Department's recommendation of a variant sentence, or the government's anticipated 5K1.1 departure motion.

The Plea Agreement further reflects the fact that either party may present the Court with additional facts that do not contradict facts to which the parties have stipulated, and which are relevant to the Court's Guideline computations, or to sentencing in general. (Doc. 155, p. 9).

For the reasons set forth in this Motion and oral argument at the sentencing hearing, Defendant Yioulos respectfully requests this Court grant a variant sentence of probation.

### III.   The Applicable Sentencing Standard

Following United States v. Booker, 125 S.Ct. 738 (2005), a sentencing court must impose a sentence in accordance with Title 18 U.S.C. § 3553(a), and should no longer presume a sentence calculated pursuant to the Sentencing Guidelines is appropriate. In the post-Booker world, the correctly calculated Guidelines range is but one factor for the Court to consider in imposing a sentence. Most significantly, the Court must impose a sentence "sufficient, but not greater than necessary" to comply with the purposes of punishment set forth in Title 18 U.S.C. § 3553(a)(2)." See United States v. Foreman, 436 F.3d 638, 644 n. 1 (6th Cir. 2006) ("the district court's job is not to impose a 'reasonable' sentence [but] to impose 'a sentence sufficient, but not greater than necessary, to comply with the purposes' of section 3553(a)(2)"); United States v. Tucker, 473 F.3d 556, 561 (4th Cir. 2007) (same); United States v. Willis, 479 F.Supp.2d 927, 929 (E.D. Wis. 2007) (explaining that "the so-called parsimony provision…directs the court to impose the minimum term necessary to comply with the statutory goals of sentencing"). Those purposes include the need "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; "to afford adequate deterrence

to criminal conduct"; and "to protect the public from further crimes of the defendant." Title 18 U.S.C. § 3553(a)(2)(A), (B) and (C).

Defendant is arguing for a variant non-guidelines sentence, which allows a sentencing court not only to consider the so-called Section 3553(a) factors, but also additional factors that may be disfavored by the Sentencing Guidelines, like age and criminal history. United States v. Huckins, 529 F.3d 1312, 1318-19 (10th Cir. 2008) (citing United States v. Munoz-Nava, 524 F.3d 1137, 1148 & n. 6 (10th Cir. 2008); Gall v. United States, 552 U.S. 38, 128 S.Ct. 586, 602 (2007), and Kimbrough v. United States, 552 U.S. 85, 128 S.Ct. 558, 575 (2007)).

In addition to the presumptive Guidelines range, sentencing courts must also consider, pursuant to Title 18 U.S.C. § 3553(a), a number of other factors, including "the nature and circumstances of the offense and the history and characteristics of the defendant"; "the kinds of sentences available"; and the Guidelines. Id. at 3553(a) (1), (3) and (4).  Under this sentencing regime, a court should consider all the relevant sentencing factors, giving no more weight to one factor than to any other factor.  The focus of the post-Booker sentencing scheme, therefore, is a sentence based on the whole person before the court, rather than upon a mechanistic application of oftentimes two-dimensional and limited sentencing factors as embodied and codified in the Guidelines.

In the present case, as set forth more fully below, Mr. Yioulos avers that certain facts and circumstances warrant a variant sentence, and that the grounds for a variant sentence are well supported.  In addition, Mr. Yioulos respectfully submits that full consideration of all  the factors outlined in Section 3553(a), including the fundamental precept that the sentence be sufficient, but not greater than necessary to serve the

4

purposes of punishment, makes clear that a variant sentence to probation is appropriate here.

### IV.     Application and Analysis Pursuant to Title 18 U.S.C. § 3553.

#### A.     The History and Characteristics of the Defendant

Pursuant to Title 18 U.S.C. § 3553(a)(1), the Court must consider the Defendant's "history and characteristics" in fashioning an appropriate sentence.

As a preliminary matter, there are some updates regarding Mr. Yioulos' personal circumstances since the PSR was filed in March 2023. Paragraph 70 of the PSR discusses Mr. Yioulos' children and partner, Kristina Lighten. Mr. Yioulos has two children with Ms. Lighten, and the kids are now ages 7 and 12. While the children are not Mr. Yioulos' biological children, they are, in fact, his kids, and as indicated in Ms. Lighten's letter to the Court (attached hereto as Exhibit A), he shares a very special bond with them.

Ms. Lighten is a first-year dental student at SUNY Buffalo. Ms. Lighten began her fulltime studies in August 2024. Dental school is four years, without any subsequent residency, and Ms. Lighten currently is in class, labs and/or studying approximately 60 hours per week.  Consequently, Mr. Yioulos is the primary caregiver for their children, and will be in that role for at least the next three and a half years.

Although Mr. Yioulos and Ms. Lighten are not legally married, they are in a committed and serious relationship, and Mr. Yioulos' ability to take the kids to school and sports practices, make lunches, help with homework, be at home when the kids return from school, etc. is critical to not only the care and welfare of the children, but also to Ms. Lighten's ability to be a fulltime dental student. There are no other family members or friends in the area who can care for the kids fulltime, and this family does not have the

financial resources to hire a nanny or other caretaker, particularly given the fact that Ms. Lighten has student loans associated with her current course of graduate study.

Mr. Yioulos is a selfless and giving man. As described by Ms. Lighten in her letter to the Court, Mr. Yioulos has tutored relatives, coached sports, embraced the role as primary caregiver to his children, taken over running the household, and supported Ms. Lighten in her studies. His generosity extends beyond his immediate family. In her letter, Ms. Lighten describes Mr. Yioulos' care for Ms. Lighten's grandmother as her health declined in 2023 due to cancer, feeding her, taking her to the bathroom, talking to her every night. Mr. Yioulos also supported Ms. Lighten's uncle as he battled terminal illness.

In terms of employment, the Court saw Mr. Yioulos testify over several days at the Tew trial and knows Mr. Yioulos is smart, articulate and polished. Because of his felony conviction, his parenting responsibilities, and the uncertainty of this case hanging over him, Mr. Yioulos has not obtained the type of employment best suited for his skill set and background. That said, he has picked up a number of jobs to help support his family, including driving for a catering company, working for UPS, and doing some temp accounting/bookkeeping work.  He also volunteers as a coach on his kids' basketball and flag football teams, and also works as a volunteer at lunchtime at his kids' school.

Mr. Yioulos was extremely young, age 28, when he met Michael and Kimberley Tew. The Court presided over the Tews' trials and is aware of the details of the fraudulent scheme, as well as Mr. Yioulos' limited role in facilitating that scheme. The financial benefit to Mr. Yioulos from his crimes was small compared to that of the Tews, and did not significantly affect his lifestyle. That said, Mr. Yioulos does not deny or shy away from his individual criminal actions, and he has taken numerous steps to demonstrate his

accountability and remorse.

To that end, Mr. Yioulos began cooperating with the FBI and federal prosecutors immediately upon contact by agents at his workplace on July 7, 2020. Without even consulting legal counsel, Mr. Yioulos, taking to heart the agents' advice that "time is of the essence," began making recorded calls and texts to Michael Tew, as well as actively debriefing with the agents. The next day, July 8, 2020, he met again with the FBI and agreed to let agents image his cellphone. He also made several additional calls to Michael Tew. More importantly, he laid out the entire scheme, including his own criminal involvement, to the agents at that time. Eventually, he entered his guilty pleas in November, 2021.

Later, Mr. Yioulos made himself available to federal prosecutors for extensive trial preparation, both in person and over zoom. At the Tews' trial in early 2024, he testified for approximately 16 hours over three days. Mr. Yioulos not only was a credible witness, but he also was the government's star witness in the trial, which led to the convictions of both Michael and Kimberley Tew. Moreover, in the time between his guilty pleas and his sentencing hearing, he has been fully compliant with the terms and conditions of his pretrial release.  Mr. Yioulos' cooperation was truly extraordinary. In fact, FBI Special Agent Lisa Palmer reached out to Mr. Yioulos after the Tew trial to personally thank him.

Mr. Yioulos' immediate acceptance of responsibility back in July 2020 when the FBI confronted him is unusual. Oftentimes, criminal defendants spend months, if not years, rationalizing their actions, blaming others, coming to grips with their criminality, and getting to the point where they can admit their faults to themselves, much less to their families, their legal counsel, and the courts. By contrast, Mr.  Yioulos quickly not only

confronted his own shortcomings, but also took action to rectify his criminal conduct in the form of cooperating with the Department of Justice.

The pendency of this case has been extremely stressful on both Mr. Yioulos and his family. As set forth above, his partner, Kristina Lighten, decided to apply to dental school and, thankfully, was accepted to SUNY Buffalo, thus avoiding having to uproot the family to a new location. She and Mr. Yioulos have put off wedding plans until there is more certainty about the outcome of his sentencing. Mr. Yioulos enjoys the love and support of his mother and stepfather, Lisa and John Fulmer, as well as that of his father, Ernie Yioulos. As the Fulmers describe in their letter to the Court (attached hereto as Exhibit B), Mr. Yioulos feels deep shame and embarrassment, to the point where he has distanced himself from his family. At the same time, the Fulmers describe his perseverance, as well as the grueling nature of living with the uncertainty of this case for many years.

Similarly, in his letter to the Court (Attached hereto as Exhibit C), Mr. Yioulos' father, Ernest Yioulos, describes the challenges Mr. Yioulos has faced, and overcome, in confronting his own criminal conduct. Mr. Yioulos also speaks to his son's history of volunteering, his academic acumen, and his true remorsefulness.

### B. The Nature and Circumstances of the Offense

Under Title 18 U.S.C. § 3553(a)(1), the Court must also analyze the "nature and circumstances" of the convicted offense. Mr. Yioulos is extremely remorseful for his conduct and accepting of his own responsibility in committing the instant offense. He understands and appreciates the seriousness of the offense. He will articulate this reality to the Court at sentencing, at which time he will express his remorse and acceptance of

responsibility. He will make no excuses for his conduct, nor blame anyone other than himself.

Mr. Yioulos wishes to communicate to the Court that he is so much more than his criminal conduct in this case. This is said not to minimize or to somehow excuse his actions, but rather to contrast the nature and circumstances of this offense with many others that come before the Court.

### C. The Need for Just Punishment, to Protect the Public, and Promote Respect for the Law

Mr. Yioulos is duly respectful of the laws of the United States and of the criminal justice system, as reflected by his otherwise law-abiding background. A prison sentence within the Guidelines calculation is unnecessary for Mr. Yioulos to "get the message" that he must abide by and obey the laws of this country. He is well aware of that reality, which is one of the reasons he worked to resolve this matter and accept the consequences of his actions beginning when he was first contacted by federal authorities. He has zero criminal history, and he has demonstrated dedication to his community through volunteering at various functions and coaching sports.

In terms of promoting respect for the law, Mr. Yioulos not only is truly remorseful and accepting of responsibility for his actions in this case, but also is truly ashamed of his conduct underlying this case. His contrition is deep, real and profound, and the consequences he already has suffered are significant, both in terms of the present, and his future.

### D. The Need for Deterrence

Mr. Yioulos has no history of criminal activity. Indeed, his long and solid history

9

of gainful employment, community involvement, desire to confront his responsibilities in this case, and flawless compliance with the terms and conditions of pretrial release, indicate that he is not an individual who needs specific deterrence in the form of a lengthy prison sentence. Mr. Yioulos' federal prosecution, his federal felony convictions, and the related upheavals and disruptions to his life created by his participation in the criminal justice system should serve as a very significant general deterrent. There is nothing in his background, or in his conduct since being confronted by FBI agents, that suggests he is a risk to reoffend. To the contrary, there is every reason to believe that Mr. Yioulos will continue to be an asset to his children, his family and his community.

In terms of general deterrence, Mr. Yioulos' long journey through the criminal justice system, his living with years of uncertainty, his testifying for three days before a jury of strangers to whom he described his most profound mistakes and shortcomings, is an object lesson to anyone in the general public regarding the costs and stresses of committing this type of crime. And of course, Mr. Yioulos' difficulty in obtaining gainful employment commensurate with his education, training and other skills is yet another example of powerful general deterrence.

### E. The Need to Prevent Unwarranted Sentencing Disparities

Both Kimberley and Michael Tew exercised their right to go to trial and were convicted by a jury of multiple felony counts. On August 8, 2024, this Court sentenced Kimberley Tew to a variant sentence of 48 months incarceration, followed by three years supervised release. Michael Tew is scheduled to be sentenced on November 12, 2024. Ms. Tew's applicable guidelines range was 97-121 months, so she received a

variant sentence of approximately 50% off the low end of the applicable guidelines range, without cooperation and after going to trial.

Unlike Kimberley and Michael Tew, Mr. Yioulos admitted his guilt and actively cooperated with the Department of Justice. In addition, his conduct was less egregious and aggravating than that of his co-defendants, and he did not enjoy the significant financial windfalls the Tews realized as a result of the criminal conspiracy. Thus, there is a significant disparity between the Tews and Mr. Yioulos in terms of how they approached this case and their relative culpability.

## V.    Conclusion

Mr. Yioulos' exemplary conduct since being contacted by federal law enforcement, as well as his extraordinary cooperation with the Department of Justice, reflect not only a man who is genuinely remorseful and desirous of atoning for his criminal conduct, but also someone who has essentially tacked back to his moral and ethical center. Indeed, Mr. Yioulos' history and characteristics before the instant offense demonstrate that he has a deep moral and ethical core, and his conduct since engaging in his criminal conduct as a relatively young man reflects that he has learned from his mistakes, and that he has a bright future ahead of him. In addition to suffering the embarrassment, ego-blow and significant impacts of his felony convictions, he has experienced acute additional stress during the long time period of uncertainty due to continuing his sentence so that he can receive the full benefits of his cooperation with the government. In this sense, Mr. Yioulos already has been punished in very real and tangible ways.

It is no surprise, therefore, that the PSR recommends a variant sentence, and that it did so prior to Mr. Yioulos preparing for and testifying for three days in the Tew trial, and

11

without regard to the 5K1.1 motion the government will be filing in this case. With all due respect to this Court's sentencing discretion, undersigned counsel would suggest that the relevant question for the Court is not whether to grant Mr. Yioulos a significant variant sentence, but rather what that sentence actually looks like, and how it is served.

For the reasons set forth above, in particular Mr. Yioulos' extraordinary cooperation and his current family situation as primary caregiver for his children, Mr. Yioulos and undersigned counsel respectfully request this Court sentence Mr. Yioulos to probation or, in the alternative, to a sentence of home confinement that allows him to care for his children and provide for his family while his life partner continues her dental studies.

The objectives of Title 18 U.S.C. § 3553(a) have been met, and a sentence to probation will adequately reflect the seriousness of the offense, promote respect for the law and provide just punishment for the offense. *See,* Title 18, U.S.C., 3553(a)(2)(i).  In addition, such a sentence will adequately deter criminal conduct and protect the public from further crimes of the defendant.  *Id*. at (a)(2)(ii), (iii).

Wherefore, Defendant Yioulos respectfully requests this Court impose a sentence to probation. Mr. Yioulos does not object to any of the suggested terms and conditions as set forth on pages R-2 and R-3 of Exhibit A to the PSR (Doc. 319-1).

Dated this 5th day of November, 2024.

*s/ Richard K. Kornfeld*
Richard K. Kornfeld
RECHT KORNFELD, PC
1600 Stout Street, Suite 1400
Denver, CO 80202
(303)573-1900
rick@rklawpc.com
Attorney for Defendant Yioulos

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of November, 2024, I electronically filed the foregoing **Defendant's Motion for Variant (Non-Guideline) Sentence** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the Court and the United States Attorney's Office.

*s/ Erin Mohr*
Paralegal