IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00305-DDD

UNITED STATES OF AMERICA,

    Plaintiff,

v.

    3. **Jonathan Yioulos**

    Defendant.

---

### GOVERNMENT'S MOTION FOR A DOWNWARD DEPARTURE PURSUANT TO UNITED STATES SENTENCING GUIDELINES SECTION 5K1.1

The defendant made bad decisions, owned them, and then took truly extraordinary steps to rectify them. He did everything that our system of law hopes for and expects of those confronted with their role in criminal conduct. The resulting cooperation provided substantial assistance in the conviction of the leaders of a $5 million fraud and money laundering scheme. This defendant's four-year-long cooperation and otherwise exemplary conduct since being approached by federal agents in July 2020 through the trial of this matter in February 2024 fully justifies a downward departure of 50% from the bottom of the sentencing range ultimately calculated by the Court, as well as an additional downward variance similar in scope to the one granted to co-defendant Kimberley Tew.

1

### I. Upon being confronted with his crime, the defendant immediately did the right thing and accepted full responsibility

The defendant's crime is accurately described in the presentence report at paragraphs 7-36.[1] What happened after those events is just as notable.

What was already a bad day turned into the defendant's nightmare. On a sunny summer day in Buffalo the defendant was confronted by federal agents as he walked out of his office after being fired. They wanted to ask why he had directed over $5 million in payments to his former boss and that boss's wife.

To his great credit, the defendant responded by truthfully confessing to his involvement and then by agreeing to assist in the agents' efforts to stop the scheme and hold its architects accountable. This included the recording of one call to co-conspirator Michael Tew that same day and another call the next day. Although he undoubtedly hoped that cooperation would inure to his benefit, he did all of this before consulting with a lawyer and without promises or assurances. He did it because after being threatened, harangued, and otherwise manipulated into doing the wrong thing for two years, someone gave him the express opportunity to follow his conscience and do the right thing.

After that, the defendant sat down with agents for multiple debriefings, candidly describing the fraud scheme's evolution throughout the years, the way he

---

[1] There is one minor change that does not affect the guidelines. In the course of preparing for trial the FBI Forensic Accountant assigned to the case determined that one of the $30,000 fraudulent invoices was not paid. The total losses are thus $5,023,878.50.

deceived his office colleagues to fulfill his role in the conspiracy, and how he followed instructions from Michael Tew and Kimberley Tew. He also confessed to a separate fraud scheme, despite knowing that it might result in additional charges or a higher sentence. He did that, knowing the consequences, because he again recognized that his credibility was on the line and it was the right thing to do.

These responses reflected the defendant's general character: He knew he had made inexcusable errors in judgment and then immediately decided to do whatever he could to make it right. These early debriefs contributed substantially to the government's investigation. The defendant's industry experience and institutional knowledge of the fraud and its mechanisms made it possible for law enforcement to focus its resources more efficiently and effectively, immediately boosting the investigation's capabilities and the likelihood that every aspect of the scheme would be scrutinized, money that could be traced would be, and that his victim would ultimately get justice. This cooperation, by itself, is the kind that already would have warranted a substantial downward departure for substantial assistance.

## II. The defendant went above and beyond what is typical of cooperators by agreeing to delay his sentencing for years so that he could testify at trial

But the defendant did more. His decision to cooperate in this case meant that his day of reckoning was delayed for years. Uncertainty over his sentence and how this case would impact his life meant that he could not plan for his future, or "turn the page." Every new trial date and every new meeting to prepare testimony meant

reviewing the same old invoices and once again excavating some of the most shameful moments of his life.

But the defendant agreed to all of this without complaint and actively assisted in the preparation of the case for trial. His testimony, stretched over two days, authenticated almost every government exhibit and substantially proved much of the fraud scheme. Without that testimony, the government, the court, and the jury would have had to piece together disparate sources of evidence over the course of a much longer trial presentation. His cooperation saved resources, greatly reduced various legal risks associated with evidence, and presented the jury and the court with a more robust, detailed, and accurate picture of the offense conduct, all to the benefit of the truth-seeking process and the determination of justice.

The defendant did all of this despite the threats he had received from Michael and Kimberley during the course of the conspiracy and through their efforts to ridicule him at trial. During closing arguments Michael Tew's attorney personally demeaned him, calling his relationship a "fake marriage," and otherwise castigated him for turning in a friend. Nevermind that the Tews took the vast majority of the $5 million, converted much of it into difficult-to-trace cryptocurrency, and still managed to retain their status and wealth, including five-figure per month paychecks. By contrast, Jonathan Yioulos profited the least from the fraud monetarily. He lost his accounting license. He sacrificed years of his life in order to accept accountability for what he did while working to bring that same accountability

to others. By the time of the trial, he was employed as a package delivery driver. All of these collateral consequences also support the recommended departure, especially in order to maintain parity in sentencing the defendants in accordance with their respective roles in the scheme.

### III. The Government agrees that the defendant should benefit from a recent amendment to the Sentencing Guidelines

After the defendant's presentence report was prepared, on November 1, 2023, Part A of Amendment 821 to the Sentencing Guidelines took effect. That amendment created a new guideline at § 4C1.1, which decreases the offense level when a defendant has no criminal history and no aggravators.

The government agrees that § 4C1.1 decreases the offense level by two. If the Court agrees with the offense level in the PSR and applies this new guideline, the offense level in this case is 24, with a corresponding sentencing range of 51-63 months' imprisonment.

### IV. The defendant's criminal conduct should be weighed against his substantial and considerable effort to make amends for it

There is no dispute that the defendant betrayed the people who trusted him to help commit a massive fraud. But there is also no dispute that the defendant eventually did the right thing and that his substantial assistance ultimately resulted in justice for the victim and deterrence against future crime. How all of this nets out into a criminal sentence that is sufficient, but no greater than necessary, to punish the defendant's criminal decision is, admittedly, a difficult decision.

5

The government's view is that the scale used to measure the defendant's role in the crime should use the same proportions as the scale used to measure his co-defendants'. If the Court agrees that the same reasons warranting a 49% variance in Kimberley Tew's case apply to the sentencing decision in this case, the resulting guideline range would be approximately 26 – 31 months. Departing 50% from the bottom of that range results in a recommended sentence of 13 months.

                                            MATTHEW T. KIRSCH
                                            Acting United States Attorney

By:    */s/ Bryan Fields*                    By:    */s/ Sarah H. Weiss*
Bryan Fields                                    Sarah H. Weiss
Assistant United States Attorney      Assistant United States Attorney
U.S. Attorney's Office                    U.S. Attorney's Office
1801 California St. Suite 1600        1801 California St. Suite 1600
Denver, CO 80202                       Denver, CO 80202
(303) 454-0100                             (303) 454-0100
Bryan.Fields3@usdoj.gov              Sarah.Weiss@usdoj.gov
Attorney for the Government          Attorney for the Government

**Certification of Type-Volume Limitation**

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

<u>/s Bryan Fields</u>
Bryan Fields

**Statement of Speedy Trial Impact**

Pursuant to Judge Domenico's Practice Standard III(C), the government notes that this motion will not affect the speedy trial clock in this case because the defendant has already pleaded guilty.

## CERTIFICATE OF SERVICE

    I certify that on this 5th day of November, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record in this case

                                            s/ *Bryan Fields*
                                            Bryan Fields
                                            Assistant United States Attorney
                                            1801 California Street, Suite 1600
                                            Denver, CO 80202
                                            Telephone 303-454-0100
                                            Facsimile 303-454-0402
                                            Bryan.Fields3@usdoj.gov