```
 1                IN THE UNITED STATES DISTRICT COURT

 2                   FOR THE DISTRICT OF COLORADO

 3   Criminal Action No. 20-cr-305-DDD-3

 4    UNITED STATES OF AMERICA,

 5         Plaintiff,

 6         vs.

 7    JONATHAN K. YIOULOS,

 8         Defendant.

 9   ----------------------------------------------------------------

10                       REPORTER'S TRANSCRIPT

11                        Sentencing Hearing

12   ----------------------------------------------------------------

13        Proceedings before the HONORABLE DANIEL D. DOMENICO,
     Judge, United States District Court for the District of
14   Colorado, commencing on the 3rd day of December, 2024, in
     Courtroom A1002, United States Courthouse, Denver, Colorado.
15

16                          APPEARANCES
     For the Plaintiff:
17   BRYAN FIELDS and SARAH H. WEISS, United States Attorney's
     Office, 1801 California Street, Suite 1600, Denver, CO 80202
18

19
     For the Defendant:
20   RICHARD K. KORNFELD, Recht & Kornfeld PC, 1600 Stout Street,
     Suite 1400, Denver, CO 80202
21

22

23

24
     Reported by KEVIN P. CARLIN, RMR, CRR, 901 19th Street, Room
25   A259, Denver, CO 80294, (303)335-2358
```

Proceedings reported by mechanical stenography; transcription
produced via computer.

20-cr-305-DDD-3    Sentencing Hearing    12-03-2024

1                    P R O C E E D I N G S

2        (Proceedings commenced at 10:34 a.m.)

3            THE COURT:  We are here for a sentencing hearing in

4   case number 20-cr-305-3, United States versus Jonathan K.

5   Yioulos.  Why don't I have counsel enter their appearances for

6   the record, for the Government?

7            MR. FIELDS:  Good morning, Your Honor.  Bryan Fields

8   for the United States.  And I'm joined by my co-counsel, Sarah

9   Weiss, and Special Agent Lisa Palmer with the IRS.

10           THE COURT:  Good morning.  Thank you for being here.

11           MR. KORNFELD:  Good morning, Your Honor.  Rick

12   Kornfeld on behalf of Mr. Yioulos, who is here on bond.

13           THE COURT:  Thank you.  And from probation?

14           MS. COLEMAN:  Good morning, Your Honor.  Mallory

15   Coleman on behalf of probation.

16           THE COURT:  Good morning.  Thank you also for being

17   here.  So, the defendant previously pleaded guilty pursuant to a

18   plea agreement to one count of conspiracy to commit wire fraud

19   and one count of wire fraud.  We're here today for sentencing.

20   I've received and reviewed a number of documents in preparation

21   for this hearing, including the second revised presentence

22   report and its addendum, which are documents 602 and 603, and

23   the attachments to any of those; the Government's motion for a

24   downward departure, which is docket number 580; the Government's

25   motion to dismiss counts, which is document 595; and the

                    Kevin P. Carlin, RMR, CRR

20-cr-305-DDD-3    Sentencing Hearing    12-03-2024

1    Government's motion for a decrease for acceptance of

2    responsibility, which is number 596; the defendant's motion for

3    a non-guideline sentence, and is there anything else that I

4    didn't identify that I should have reviewed, Mr. Fields?

5             MR. FIELDS:  The preliminary order of forfeiture, Your

6    Honor.

7             THE COURT:  Right.  So, I entered that order as well.

8    Thank you.  Mr. Kornfeld, anything else?

9             MR. KORNFELD:  No, Your Honor.  I think you have

10   accounted for everything.

11            THE COURT:  Thank you.  So, Mr. Kornfeld, have you and

12   your client had enough time to review those documents and

13   discuss this process?

14            MR. KORNFELD:  We have, Your Honor.

15            THE COURT:  Do you have any concerns about his ability

16   to understand those documents or what we're doing here today?

17            MR. KORNFELD:  I do not, Your Honor.

18            THE COURT:  Thank you.  Mr. Yioulos, have you had

19   enough time to review and discuss these documents and ask

20   Mr. Kornfeld any questions you had about all of this?

21            THE DEFENDANT:  Yeah.  I have, Your Honor.

22            THE COURT:  And do you believe you understand those

23   documents and what we're doing here today?

24            THE DEFENDANT:  I do.

25            THE COURT:  All right.  Thank you.  So, there are no

20-cr-305-DDD-3    Sentencing Hearing    12-03-2024

1  objections filed to the presentence investigation report.  Is

2  there any objections or issues with the technical aspects of the

3  report that we need to discuss at this time?  Mr. Fields,

4  anything?

5           MR. FIELDS:  No, Your Honor.

6           THE COURT:  Mr. Kornfeld?

7           MR. KORNFELD:  No, Your Honor.

8           THE COURT:  All right.  So, then I will adopt the

9  factual findings and guideline calculations of the report.  I

10 will also grant the Government's motion for an offense level

11 reduction.  As to the motion for a downward departure, under

12 5K1.1, obviously I understand what happened in this case.  If

13 there's -- the parties think we need to discuss that particular

14 motion further, we can, but otherwise, I'm inclined to grant it.

15 Mr. Fields, do you have anything to add?

16           MR. FIELDS:  No, Your Honor.  We would stand on our

17 pleading.

18           THE COURT:  Mr. Kornfeld, anything?

19           MR. KORNFELD:  No, Your Honor.  Thank you.

20           THE COURT:  So, that motion is also granted.  That

21 results in a 50 percent downward departure from the guideline

22 level.  The defendant has additionally moved for a below

23 guideline sentence of probation.  The Government has recommended

24 a sentence of 13 months of imprisonment, which is about

25 50 percent below the bottom of the guidelines as calculated

20-cr-305-DDD-3    Sentencing Hearing    12-03-2024

1    after that departure.

2         I want to of course hear from everyone.  I will

3    probably begin with the Government, and then Mr. Kornfeld, and

4    then if the defendant wishes to make a statement before I make a

5    final decision, he will have that opportunity.  I will say that

6    I do think that I understand Mr. Yioulos' role, both in the

7    underlying crime and in the prosecution of this case, and agree

8    that something significantly below the guidelines is warranted

9    in this case, probably in my view even less, a shorter sentence

10   than the Government has recommended, but I do think I probably

11   agree that at least some term of imprisonment is necessary in

12   this case to satisfy all of the guideline factors, but perhaps

13   four to six months would be sufficient in my view.

14        But that's obviously my initial take based on my

15   understanding, but I do want to hear from everyone.  So,

16   Mr. Fields, if you would like to explain the Government's

17   position, please do.

18        MR. FIELDS:  Thank you, Your Honor.  I will be very

19   brief, because our position is set forth in the 5K motion.  So,

20   on top of the 5K motion, I will just put on the record the

21   Government does not oppose some variance in this case,

22   consistent with the variance that the Court has previously

23   granted with the codefendants.  We understand, acknowledge, and

24   respect the Court's views regarding the sentencing guidelines,

25   and we feel like the reasoning from those cases should also

20-cr-305-DDD-3    Sentencing Hearing    12-03-2024

1   apply here.  So, other than that, other than not opposing a

2   variance to that level as set forth in our 5K motion, we would

3   stand on our pleading, Your Honor.

4        THE COURT:  Thank you, Mr. Fields.  I appreciate that.

5   Mr. Kornfeld?

6        MR. KORNFELD:  Thank you, Your Honor.  Your Honor, I

7   understand that the Court certainly knows this case probably

8   better than most, and knows this defendant better than most,

9   having seen Mr. Yioulos was there over three days for about 16

10  hours.  And I think the Court also in that time got a sense

11  of -- a bit of a sense of him just as a person, and certainly

12  his role in this offense.  And I appreciate also the Court's

13  initial take and articulating the initial take.  And certainly I

14  am asking for a bit more than the Court indicated you might

15  think is appropriate.

16       And in normal circumstances, I think that would be in

17  this building maybe even an extraordinary ask, but in this case,

18  from my perspective, it's a big ask, but it's a warranted ask,

19  because I think Mr. Yioulos is an extraordinary person and an

20  exceptional defendant.  The Court is aware of his background.

21  He grew up in a supportive home.  He's a well-educated person.

22  I think some of his family members are on the phone now, and I

23  appreciate the Court's courtesies in allowing that to happen,

24  because they live in the northeast.

25       And over the course -- I think one of the things that's

Kevin P. Carlin, RMR, CRR

20-cr-305-DDD-3    Sentencing Hearing    12-03-2024

1  been so different about this case is not just the four years

2  that have elapsed since Special Agent Palmer and her colleague

3  confronted Mr. Yioulos, but also kind of all the steps he's

4  taken, both within the context of the legal system and also in

5  his own personal life.

6       The Court is aware of course that, you know, it's

7  difficult living with sort of the anvil of uncertainty hanging

8  over your head.  And while that is obviously brought on by

9  Mr. Yioulos' own actions in becoming a criminal defendant, the

10  stress of that situation is real for every defendant.  I think

11  it's particularly real for Mr. Yioulos and for his partner

12  Kristina Lighten.  To their great credit, they have moved on on

13  some level with their life.  Ms. Lighten is a dental student.

14  Thankfully, she's in dental school in Buffalo, which meant they

15  didn't have to move.

16       She's a -- she's completing her first year.  And as

17  articulated, I think in the letter, that is a significant

18  responsibility.  And Mr. Yioulos in turn has taken on

19  significant responsibilities.  Over the course of the four

20  years, he's done pretty much every kind of job one could think

21  of to support himself and his family, and then he's taken on the

22  more significant family roles, not only as primary caregiver to

23  their children -- and as noted in my moving papers, while the

24  kids who are now, I believe seven and 12, are not his biological

25  kids, they are his children, and he considers them his children.

Kevin P. Carlin, RMR, CRR

20-cr-305-DDD-3    Sentencing Hearing    12-03-2024

1    They consider him to be a father.

2         And he stepped up in every way imaginable: coaching,

3    homework, bedtime, cooking.  All these things, which, you know,

4    one hopes that any parent in that situation would do, but

5    unfortunately, all of us in this room know that not everybody

6    does it, and certainly not everybody embraces that role.  And

7    then he went even a step farther helping Ms. Lighten's late

8    grandmother, who is terminally ill and who unfortunately

9    recently passed away, and also helping an uncle of hers who was

10   also very ill.

11        And, you know, I think it just speaks to his character.

12   I think it speaks to his values.  I think it speaks to his

13   giving nature.  And I'm acutely aware, you know, that there's

14   this balance, that these things don't undo the criminal conduct,

15   but I think, you know, one hopes in life to grow as a human

16   being.  When this case started, he was a 28-year-old young man,

17   and he's now matured into an adult and a giving member of his

18   family, of his community, and just as someone who really tries

19   to -- you know, tries to move forward in life in a positive

20   manner.

21        To that end, since I think I wrote my motion, he has

22   been offered a job in Buffalo as a controller for a company

23   called Bundle.  They're aware of his legal situation, and

24   depending on how the waves break, he's supposed to start next

25   week.  And this is a full-time, 85,000-dollar-a-year starting

20-cr-305-DDD-3    Sentencing Hearing    12-03-2024

1    salary.  And if he's allowed to do that, he's still going to be

2    the primary caregiver, because dental school is a full-time gig

3    and doesn't have the summer vacations and things like that that

4    undergraduate studies do.

5          He -- you know, his support for Kristina and her

6    studies, I think, also speak to just the type of partner he

7    wants to be and the kind of partner he is.  And the bottom line,

8    he's a critical and irreplaceable member of this family.  And

9    it's difficult in my position to stand up here and say, well --

10   to a Court, well, look, on the one hand, one of the key reasons

11   for my asking for probation is to allow kind of this continuity

12   of family dynamic to allow his partner, you know, to continue

13   her studies without those attendant complications.

14         And I understand, you know, the retort to that is

15   typically, well, he should have thought about that, you know,

16   when he was 28 years old and engaged in these crimes.  And that

17   on one level is a fair retort, but then I would ask the Court to

18   pivot to the next part of who I think Mr. Yioulos has proven

19   himself to be in this case, and that is as an extraordinary

20   cooperator.  I mean, as the Government said in their pleading,

21   above and beyond the call of duty.

22         Like my colleagues for the Government, I've been doing

23   this for a long time.  I've done it on both sides of the aisle.

24   I've dealt with lots of cooperators.  I have not personally

25   represented a cooperator or seen a cooperator not just go

20-cr-305-DDD-3    Sentencing Hearing    12-03-2024

1    through the motions, not just, quote/unquote, do what they have

2    to do, because we see that in this building all the time, but

3    really embrace that role almost as an act -- an active act of

4    atonement.

5        I think that really was reflected by Mr. Yioulos'

6    candor, by his credibility, by his unflinching acceptance of his

7    own role and his own criminality, by his demeanor in court, by

8    his unflappability, by his availability to the Government, and

9    to the great appreciation -- my great appreciation and to the

10    great credibility of the Government, you know, they articulate

11    it better than I can from their perspective the nature, the

12    depth, the scope of that cooperation.  And clearly he was the

13    star witness, and clearly, you know, I think that he was a key

14    part to the Government seeking justice in this case.

15        The other thing that is a bit unusual on the

16    cooperation angle from my perspective is this -- Mr. Yioulos

17    made this decision literally from the moment he was confronted.

18    He didn't consult with prior counsel, who is now retired.  He

19    certainly didn't consult with me.  I came into this after he

20    pled guilty.  He didn't think about it.  He didn't talk to his

21    family.  He knew that what he had done was wrong, and that --

22    those acts of contrition, those acts of atonement began

23    literally day one on July 7th, 2020.  No equivocation.  No sort

24    of hesitation.  As I often tell clients, you know, you're either

25    in the lake or you're on the dock, and he jumped right into the

Kevin P. Carlin, RMR, CRR

20-cr-305-DDD-3    Sentencing Hearing    12-03-2024

1   middle of the lake in terms of his cooperation.

2           And I think, Your Honor, that that's an important and

3   appropriate segue into his remorse and into his acceptance of

4   responsibility.  Every single defense lawyer stands up in front

5   of you and every other judge in this building and says, my

6   client is remorseful.  My client accepts responsibility.  That

7   is all true in this case, but the nice thing for me in this case

8   is it isn't me telling you that.  You got to see it, you know,

9   with your own eyes.  And the old actions speak louder than

10  words, never has that been more true in this context than in the

11  case of Mr. Yioulos.

12          He is -- was and is ashamed of his conduct.  This led

13  to some incredibly difficult not only soul-searching, but tough

14  conversations with his partner, with his parents, with others

15  that support him.  And he's had to confront a lot of his own

16  failings over the last four years in dealing with the attendant

17  issues as a result of his conduct in this case.

18          His journey of self-reflection, his acceptance of his

19  own failings, his actions of atonement, I think are best

20  reflected in the letters from Kristina and from his family,

21  which the Court has reviewed.  And his deep contrition is

22  reflected by, again, his actions over the last four years, not

23  only in his cooperation in this case, but I think also in his

24  actions in supporting Kristina, her education and ambitions, and

25  his -- and his resilience in finding a decent job despite all

20-cr-305-DDD-3    Sentencing Hearing    12-03-2024

1    the troubles and issues attendant to this criminal conviction.

2           So, regardless of what happens, the nice thing is I

3    think everyone in this room knows Mr. Yioulos has tremendous

4    amount of things going for him, tremendous love and support,

5    tremendous drive and resilience to move forward in his life.

6    And I have no doubt that not only will he continue to contribute

7    to his family, but also to his community.  His actions, Your

8    Honor, not my words, reflect that he wants to be a responsible

9    adult community member as well as a loving and supportive

10   partner, father, and son.

11          He blames absolutely nobody other than himself.  The

12   Court heard all the facts.  It would be easy -- do I as his

13   lawyer think, you know, different defendants in this case took

14   advantage of Mr. Yioulos?  Absolutely I believe that.  Has he

15   ever said that to me?  No.  Has he ever used that as an excuse

16   in his testimony or in his description of his conduct to the

17   Government or to the probation department?  No.

18          He is someone who has the moral and the ethical heft

19   and weight to accept his own failings, and frankly, Your Honor,

20   to accept whatever punishment this Court deems is appropriate.

21   But with all that, Your Honor, I am asking the Court to consider

22   sentencing him to probation or to a -- as restrictive a home

23   detention paradigm as might be appropriate just so he's not

24   removed from the home for the reasons I've articulated.

25          If the Court comes to another decision, obviously he

Kevin P. Carlin, RMR, CRR

20-cr-305-DDD-3    Sentencing Hearing    12-03-2024

1   and his family will deal with that, but again, I'm hoping that

2   just based on the totality of everything that's gone on and the

3   passage of time, that the Court doesn't think that this request

4   is inappropriate, because again, I think for the reasons I've

5   articulated, both today and hopefully in my moving papers, we

6   humbly suggest that it would satisfy in this case all of the

7   sentencing purposes as articulated in 18 USC 3553.  Thank you,

8   Your Honor.

9           THE COURT:  Thank you, Mr. Kornfeld.  Mr. Yioulos,

10  would you like to make any statement before I decide your

11  sentence?

12          THE DEFENDANT:  I would.

13          THE COURT:  Okay.  You can do it from there.  That's

14  fine.

15          THE DEFENDANT:  Okay.

16          THE COURT:  Let's move the microphone over to you.

17          THE DEFENDANT:  Your Honor, obviously a lot has

18  transpired over the past four and a half years.  You know, I

19  completely understand what I did, and to contribute to this case

20  was wrong.  And, you know, I let a lot of people down.  Not only

21  the Alfs, who were essentially the victims of this crime, but

22  also I let my parents down, Kristina down, friends down, other

23  family members down.  You know, my son -- funny to you, but

24  every day before, even when I was growing up, my mom would write

25  on a piece of paper all the chores I had to do when I got home

Kevin P. Carlin, RMR, CRR

14

20-cr-305-DDD-3    Sentencing Hearing    12-03-2024

1    from school.  At the end of it she would write, be a good

2    citizen.

3            And you know what?  I tried my best.  And I always did,

4    whether it's helping somebody walking out of Home Depot, older

5    person trying to load their car, whether it's helping kids in

6    the community, which I do a lot of now -- you know, I coach

7    teams.  I volunteer at their school.  You know, I help with

8    lunches.  I help any way I can.  Whether I have to be a taxi one

9    day for the kids or I have to be a chef another day, I do

10   whatever I can to contribute.

11           And, you know, when I came into Ms. Lighten's life,

12   this was back in 2019, kind of in the middle of all of this,

13   before anything happened.  And, you know, we fell for each

14   other.  And I messed up, because I had this whole thing looming

15   over my head that I knew was wrong, but I entered her life and

16   essentially blew it up.  And we've had our fair share of ins and

17   outs since then because of what's going on, the uncertainty.

18           You know, she's in dental school now, which is amazing,

19   and I'm trying to support her and the family as much as I can.

20   And, you know, doing whatever I can to contribute, whether it's

21   work, help with the kids, help with her -- you know, I've helped

22   her brother when he was in college, do what I can, but overall,

23   it's just -- I'm trying to get back to doing the things that I

24   did even before any of this happened.

25           You know, helping her grandmother, helping her uncle,

20-cr-305-DDD-3     Sentencing Hearing     12-03-2024

1    those are things that I'm not doing to, you know, gain any

2    sympathy from her or the Court.  It's just that's who I am as a

3    person.  That's who I have always been.  You know, even when

4    this was transpiring, I was on a board for young audiences, an

5    organization, nonprofit in Western New York, and I have always

6    tried to volunteer.  Even before any of this, I just try to do

7    the best I can to help the community, and to truly be a good

8    citizen.

9           And, you know, through all of this, through all of this

10   uncertainty, Ms. Lighten and I have discussed having our own

11   kids someday, but with all the uncertainty over -- it's been

12   four and a half years now.  I've been trying to put this behind

13   me since essentially day one.  You know, I know that it's a

14   process, and I know it's my own wrongdoing that's led to a lot

15   of the complications in my life.  It's -- you know, getting a

16   job is difficult.  Keeping a job is difficult.  You know, doing

17   a lot of the things that are normal in society now with the

18   felon tag is difficult, and it's going to continue to be

19   difficult my entire life.

20          And I know the restitution is then going to have to do

21   that my entire life as well.  But overall, you know, we -- it's

22   tough for us, because do we have kids or not because of the

23   uncertainty?  So, we just ultimately decided not to, because we

24   never knew when this was going to end.  So, what can I do except

25   be the best stepfather to two girls that I have now?  You know,

16

20-cr-305-DDD-3    Sentencing Hearing    12-03-2024

1    I've seen them grow since they were, you know, two and seven

2    years old into seven and 12, and basically jumped right in with

3    them during COVID.

4         And I'm trying to be as great of a stepdad to them as

5    my stepdad has been to me.  And, you know, he has been a rock in

6    my life, and so supportive of me, and, you know, I can't thank

7    them enough.  And even when I haven't been the best to them and

8    going through all this, he stuck right by my side.  Same with my

9    mom.  Same with my dad.  It's just been, I've had a great

10   support system.  And Kristina and her family, her mother, her

11   aunt, you know, her uncle, they've been so supportive.  Her

12   brother, everybody.  And, you know, I don't want to let them

13   down anymore.

14        And for me, you know, I want to continue doing the

15   things I'm doing positively for that family.  And, you know,

16   doing -- going away for a little bit, if that's ultimately your

17   decision, then, you know, I respect it.  And because I know what

18   I did was wrong, but I would love to just continue to contribute

19   positively to them, to the community, you know, continue

20   coaching.  Coached my daughter's flag football team, you know,

21   volunteer to help whenever I can if they need a sub coach,

22   anything.  And, you know, I just want to make good decisions for

23   my family, Kristina, my mom, just people that I really do love

24   and care about.  So, thank you, Your Honor.

25        THE COURT:  Thank you, Mr. Yioulos.

20-cr-305-DDD-3    Sentencing Hearing    12-03-2024

1          THE DEFENDANT:  Of course.

2          THE COURT:  I appreciate that.  Thank you.  So, having

3   reviewed the record in this case and heard everyone's statements

4   and explanations here today, I do think that while I agree with

5   virtually everything Mr. Kornfeld said and appreciate everything

6   that the defendant said, that some prison in this case is

7   necessary to satisfy the statutory sentencing factors.

8          I will therefore sentence the defendant to custody of

9   the Bureau of Prisons for a term of two months on each of the

10  counts of conviction, to run concurrently.  Upon release from

11  imprisonment, he will be placed on supervised release for a term

12  of three years on each count.  Again, to run concurrently.  The

13  defendant is ordered to make restitution as explained in the

14  presentence investigation report, and I do find that the

15  defendant does not have the ability to pay interest, so I will

16  waive the interest requirement.  I also find that he does not

17  have the ability to pay a fine, so I waive the fine.

18         He is required to pay a special assessment of $100 on

19  each count of conviction, for a total of $200.  That's due and

20  payable immediately.  I also will make final the preliminary

21  order of forfeiture, which I believe requires the defendant to

22  forfeit a money judgment in the amount of $100,000 to the United

23  States.

24         Mr. Kornfeld, I'm inclined to impose all of the

25  conditions of supervised release.  I do note that one of those I

20-cr-305-DDD-3    Sentencing Hearing    12-03-2024

1    think involves limitations on his ability to act as a

2    controller.  I think you mentioned that he may have that option.

3    I hope he does, despite this sentence.  I'm inclined -- that can

4    be -- it just requires approval of the probation officer.  So, I

5    mean, I think I'm inclined to continue to impose that.

6           Ms. Coleman, if you would explain sort of the process

7    for approving that sort of employment and what you would require

8    if he did have that opportunity if I keep that condition?

9           MS. COLEMAN:  Yeah.  Do you want me to do it on the

10   record, or after?

11          THE COURT:  On the record.  I'm curious.

12          MS. COLEMAN:  Okay.  I'm sorry.  I missed exactly what

13   the employment condition -- the standard?

14          THE COURT:  Yeah.  Because I think he said he's got an

15   opportunity to serve as a controller, if I'm not mistaken, and I

16   think essentially special condition two requires him to get

17   approval for that from you or from his whoever.

18          MS. COLEMAN:  Likely he will be supervised in New York

19   with your probation officer there.  And they will go through a

20   process with you of whether or not it will or will not be

21   acceptable to work in a position that way.  I don't know --

22   that's about all I can say.

23          THE COURT:  Okay.  I think like typically my

24   understanding would be they would require sort of speaking with

25   the employer and that sort of thing.

Kevin P. Carlin, RMR, CRR

20-cr-305-DDD-3    Sentencing Hearing    12-03-2024

1          MS. COLEMAN:  Yes.  Exactly.

2          THE COURT:  Mr. Yioulos?

3          THE DEFENDANT:  So, this occurred when -- I was a

4   consultant for ProNexus, and it was a finance -- I was a

5   controller interim for some jobs, and so essentially they had to

6   write a letter to the employer.  The employer just had to sign

7   it and say we understand that, you know, his crimes were -- it's

8   basically just any sort of financial role required just extra

9   disclosure to the -- and communication from probation.  So,

10  that's what I'm aware of, and I assume it would be similar.

11         MS. COLEMAN:  Yes.

12         THE COURT:  Okay.  So, I think that's workable despite

13  the condition.  So, Mr. Kornfeld, my inclination then is to go

14  ahead and require all of those conditions, unless you have

15  anything else you want to discuss about the supervised release

16  conditions?

17         MR. KORNFELD:  No.  I think that's fine.  And as long

18  as there's that opportunity for that communication, it sounds

19  like it hasn't been an impediment, and it sounds like ultimately

20  with those disclosures, it's up to the potential employer to

21  make that decision with that additional information.  So, the

22  reality is Mr. Yioulos would be disclosing that anyway.  So, I

23  don't have any heartburn about that, Your Honor, or any of the

24  other recommended conditions.

25         THE COURT:  Okay.  Then I will include all of those

Kevin P. Carlin, RMR, CRR

20-cr-305-DDD-3    Sentencing Hearing    12-03-2024

1    conditions.  That will include all of the mandatory statutory

2    conditions, the standard conditions that this Court adopted in

3    general order 2020-20, and then all of the special conditions,

4    which most of them are financial restrictions and limitations

5    that are intended to ensure the payment of the financial

6    obligations in this case.

7         And then the only other one is a requirement to

8    participate in a program of cognitive behavioral treatment.  I

9    think that will help the defendant understand and overcome some

10   of the bad decision-making that despite his generally apparently

11   being a good, thoughtful, community-oriented person, led him to

12   participate in a significant crime.  And so I think all of those

13   conditions are necessary and not a greater limitation on his

14   liberty than required to serve the purposes of sentencing.

15        Mr. Yioulos, I know this is a restriction on your

16   hopes, and not what Mr. Kornfeld asked.  I don't think that ask,

17   given the extraordinary circumstances of your participation in

18   this case, given the length of time that you've been essentially

19   cooperating and waiting for this case to be over with -- I do

20   think that should be considered as part of punishment you've

21   already suffered.  I do admire and appreciate and think you

22   deserve a significant reward for the cooperation which everyone

23   has recognized, including the Government, has been

24   extraordinary, and started the day that you were caught.

25        It struck me from before you testified and certainly

20-cr-305-DDD-3   Sentencing Hearing   12-03-2024

1   when you testified that it seemed like potentially more of a

2   relief to be caught than something that you -- that was a

3   negative.

4           On the other hand -- and so if all I were doing was

5   trying to figure out what you deserve or what the defendant

6   needs or deserves, then I think probation would be a very

7   tempting sentence, but I have to also consider other sentencing

8   factors that look beyond just this defendant.  And the fact of

9   the matter is, Mr. Yioulos was a central player and necessary

10  part of a scheme to steal millions of dollars.

11          He -- while I admire his immediately helping the

12  Government investigate the crime and continuing his cooperation

13  throughout the process, he didn't stop before then.  He didn't

14  take any affirmative steps to end it before then, when it could

15  have been ended at a much earlier stage.  I agree with

16  Mr. Kornfeld that he clearly was taken advantage of by

17  codefendants, but this was a serious crime involving a lot of

18  money over a long period of time, and respect for the law and

19  deterrence of others who might think that, well, I will just

20  participate in this, and then if I get caught, I can just not

21  suffer any serious imprisonment if I just stop when I get

22  caught -- those factors require me to impose something along

23  these lines.

24          I understand that that is a problem for not just the

25  defendant, but his family, and I regret that, but as

20-cr-305-DDD-3    Sentencing Hearing    12-03-2024

1    Mr. Kornfeld pointed out, there were ways to prevent that before

2    now.  So, that is the justification I think that this sentence

3    is sufficient but not greater than necessary to serve all of the

4    sentencing factors that I have to consider.

5        Mr. Yioulos, I do want to advise you that although you

6    waived your appellate rights under the circumstances outlined in

7    the plea agreement, to the extent you have not waived your right

8    to appeal, I advise you that you must file a notice of appeal

9    with the clerk of the court within 14 days after entry of

10   judgment, or the right to appeal will be lost.  If you can't

11   afford an attorney for an appeal, the Court will appoint one to

12   represent you.  And if you request, the clerk of the court must

13   immediately prepare and file a notice of appeal on your behalf.

14       The Government -- I don't think I granted the

15   Government's motion to dismiss counts against this defendant,

16   but that motion is granted.  Is there anything else -- well, and

17   my inclination is to allow the defendant to remain on bond as he

18   is under the same conditions until he is designated by the

19   Bureau of Prisons.  Unless there's anything to discuss on that,

20   Mr. Fields?

21       MR. FIELDS:  No, Your Honor.  Nothing further from the

22   Government.

23       THE COURT:  Mr. Kornfeld, anything else?

24       MR. KORNFELD:  The only -- and I appreciate the

25   Court's indulgence on the privilege of self-surrender.  The only

Kevin P. Carlin, RMR, CRR

20-cr-305-DDD-3    Sentencing Hearing    12-03-2024

1    other thing is I don't know what this Court's practice is about

2    making recommendations to BOP in the "for what it's worth"

3    department, but if the Court does do that, I would ask for just

4    a request of broad recommendation of the closest appropriate BOP

5    facility to Buffalo, New York.  I'm just not frankly familiar

6    with the facilities in that part of the country.

7            THE COURT:  All right.  I think I'm willing to do that

8    as long as Mr. Yioulos understands that I can only make a

9    recommendation in that regard, and that BOP will take that into

10    consideration, but I can't order them to designate you anywhere.

11    Officer Coleman, is that sort of general description sufficient

12    for you to include in the judgment?

13            MS. COLEMAN:  Yes, Your Honor.  And I just have a

14    question about the volunteer surrender.  Would the Court like a

15    specific date on the judgment, or will it be the general within

16    15 days of designation from the BOP?

17            THE COURT:  Yeah.  So, Mr. Kornfeld, do you need some

18    time -- does your client need some time?  Would you rather

19    just -- BOP typically takes a couple of weeks, and then he's

20    designated, but I could give him a bit of time if he needs to

21    get his affairs in order.

22            MR. KORNFELD:  May I just talk to him briefly about

23    that?

24            THE COURT:  Of course.

25            MR. KORNFELD:  Your Honor, I think the standard within

Kevin P. Carlin, RMR, CRR

20-cr-305-DDD-3    Sentencing Hearing    12-03-2024

1   15 days designation, but I appreciate the Court giving us that

2   option.

3              MS. COLEMAN:  Sorry.  I heard you guys talking, and

4   you said it will be after the holidays for sure, and that's not

5   a guarantee.

6              MR. KORNFELD:  Okay.

7              MS. COLEMAN:  So, 15 days is a window.  It's a within

8   15 days.  So, he could get designated next week and be required

9   to report in seven days.  Does that make sense?

10             MR. KORNFELD:  It does.  And I appreciate that.  So,

11  Your Honor, I don't know -- in the alternative, or, you know, if

12  this -- if the better option is a date certain --

13             MS. COLEMAN:  Yeah.  If that's what you're asking for,

14  then I can put on the judgment like on or after January 2nd, or

15  that's an example.

16             MR. KORNFELD:  That would be great.  Thank you.

17             THE COURT:  Okay.  I'm happy to do that.  So, we will

18  do on or after January 2nd.  If there is nothing else, then the

19  Court will be in recess.  Thank you all.

20         (Proceedings concluded at 11:12 a.m.)

21

22

23

24

25

Kevin P. Carlin, RMR, CRR

1                         REPORTER'S CERTIFICATE

2

3

4          I, KEVIN P. CARLIN, Official Court Reporter for the

5     United States District Court for the District of Colorado, a

6     Registered Merit Reporter and Certified Realtime Reporter, do

7     hereby certify that I reported by machine shorthand the

8     proceedings contained herein at the time and place

9     aforementioned and that the foregoing pages constitute a full,

10    true, and correct transcript.

11          Dated this 3rd day of January, 2025.

12

13

14

15

16    _____
      Kevin P. Carlin, RMR, CRR
17    Official Court Reporter

18

19

20

21

22

23

24

25