1

```
1            IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF COLORADO
2
     CASE NO: 1: 20-cr-00305-DDD
3    _____

4    UNITED STATES OF AMERICA,

5            Plaintiff,

6    v.

7    MICHAEL AARON TEW,

8            Defendant.

9    _____

10           Proceedings before KRISTEN L. MIX, United States

11   Magistrate Judge, for the District of Colorado, commencing

12   at 11:00 a.m. on December 9, 2022, in the United States

13   Courthouse, Denver, Colorado.

14   _____

15   WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS ARE

16   HEREIN TYPOGRAPHICALLY TRANSCRIBED...

17   _____

18                        APPEARANCES

19           BRYAN FIELDS AND ALBERT BUCHMAN, Attorneys at Law,

20   appearing on behalf of the Government.

21           PETER BORNSTEIN, Attorney at Law, appearing on

22   behalf of the Defendant.

23   _____

24                       MOTION HEARING

25
```

1             P R O C E E D I N G S

2             (Whereupon, the within electronically recorded

3    proceedings are herein transcribed, pursuant to order of

4    counsel.)

5             THE DEPUTY: All rise. Court is now in session.

6             THE COURT: Thank you. Please be seated. Good

7    morning. This is 20-cr-00305, United States of America v.

8    Michael Aaron Tew and Kimberly Ann Tew. Let's have counsel

9    for the Government enter their appearances, please.

10            MR. FIELDS: Good morning, Your Honor. Bryan

11   Fields for the United States, and I'm joined by Al Buchman.

12            THE COURT: Good morning. Mr. Bornstein, you're

13   here, but you're not here. You're here for the defendants

14   having been permitted to withdraw, but nevertheless here on

15   my order for the purposes of this hearing; is that right?

16            MR. BORNSTEIN: Correct, Your Honor.

17            THE COURT: Thank you. All right. So we're here

18   on the Government's motion for reconsideration of an order

19   granting Mr. Bornstein's motion to withdraw, or in the

20   alternative, a motion for expedited appointment and

21   extension of deadlines.

22            And let me start with you, Mr. Bornstein, because

23   there may be a very practical solution here, and I want to

24   address the possibility of that practical solution first.

25            The Government suggests in their motion to

1  reconsider that you could be appointed as CJA counsel.  Is
2  that something you're willing to do?
3          MR. BORNSTEIN:  Let me -- you want me at the
4  podium or --
5          THE COURT:  Either.  As long as you speak into the
6  microphone, you can stay -- stay there.
7          MR. BORNSTEIN:  Okay.  Number one, I don't think
8  it's the Government's standing to tell the defense function
9  how they're to be organized, paid, or who they represent.
10 So that's number one.  Number two, I'm an --
11         THE COURT:  But I can.
12         MR. BORNSTEIN:  I'm an officer of the court, and
13 if the Court were to tell me as a officer of the court that
14 they want me to continue on CJA or appoint me as a CJA, I
15 will react as an officer of the court, and I will do what
16 the Court wants.  But number three is, right now I'm doing a
17 joint representation of two defendants.
18         THE COURT:  Uh-huh.
19         MR. BORNSTEIN:  And that's been the subject of a
20 motion by the Government to justify that in front of the
21 judge.  It also was raised on a issue of severance.  I
22 raised a severance motion, and in front of Judge Domenico,
23 we had a long conversation about the problems of joint
24 representation and whether that's, you know, going to cause
25 problems in the -- down the line.

Case No. 1:20-cr-00305-DDD   Document 653   filed 01/30/25   USDC Colorado   pg 4 of 19

4

1  But in terms of CJA, I don't think there's a
2  possibility that I can be jointly represented two people who
3  are appointed CJA. And so I think that -- that the issue of
4  the joint representation creates a new wrinkle.
5  And the Government's raised it again at the end of
6  their motion, and I -- I would not want to be CJA counsel
7  for two separate defendants.
8  THE COURT: Okay. So let's unpack all of that
9  just a little bit. In reading your motion to withdraw, I
10  understood as apparently Government counsel did as well,
11  that the basis for your request to withdraw was the failure
12  of the defendants to live up to your fee agreement, and that
13  was the sole basis for your request to withdraw; is that
14  correct?
15  MR. BORNSTEIN: Yes. However, I would say that
16  because of that financial issue, that in of itself is a
17  conflict between the lawyer and the client.
18  THE COURT: I understand your position. And do
19  you agree with me that if in fact we are contemplating
20  appointment of you as CJA counsel, the defendants would have
21  to submit an updated financial affidavit to ensure that they
22  qualify for appointment of CJA counsel, right?
23  MR. BORNSTEIN: Correct.
24  THE COURT: All right. Now, I have spoken to
25  Judge Domenico about the Government's additional request

PATTERSON TRANSCRIPTION COMPANY
scheduling@pattersontranscription.com

1    that counsel be appointed separately for the defendants, and
2    I want to -- I spoke with him because I wanted to clarify
3    whether he intended to refer that portion of the motion for
4    reconsideration to me as the magistrate judge.
5            I suspected that he did not, and the answer is he
6    did not.  So to the extent that there is going to be further
7    discussion of whether the Tews can have the same attorney,
8    that further discussion is going to occur before Judge
9    Domenico and not before me.
10           My sole job today is to consider the motion for
11   reconsideration and to decide how to address the subject of
12   your withdrawal, Mr. Bornstein.
13           So let me just say for the record, I don't
14   understand why an attorney could jointly represent
15   defendants in a private capacity, but not jointly represent
16   defendants as an appointee under the CJA.  That -- I don't
17   think there's a substantial difference in terms of the
18   ethical obligations of defense attorneys, whether they're
19   appointed because they're privately hired or whether they're
20   appointed under the CJA.
21           So I'm not sure I understand that part of the
22   argument, but that is for another day because that is for
23   Judge Domenico's consideration and not for my consideration.
24           I mean, let me -- let me just make the record
25   clear here, and I'll allow the Government to make any

1    argument it wishes to make.  It seems to me that the

2    solution to this issue is to have the Tews submit updated

3    financial affidavits.

4         I know the Government didn't like the fact that I

5    gave them I think it was 14 days to do that and wants them

6    to be submitted more quickly, and I can consider that.  But

7    if they are in fact qualified for the appointment of CJA

8    counsel, I think the appropriate thing to do is to have Mr.

9    Bornstein appointed as CJA counsel.

10         If Mr. Bornstein wishes to pursue arguments

11   relating to whether the Tews should have separate counsel,

12   he may do that, but he must do that with the district judge

13   because that's, as I said, a matter that the district judge

14   will take up.

15         I want -- I want to also address the Government's

16   position that there was clear error here, and this is more

17   than just me and my big ego thinking that I of course could

18   never commit clear error.  But the reason why I want to

19   bring that up is because I did not find, and I don't believe

20   that there is, any clearly established case authority in the

21   Tenth Circuit that the failure to pay fees alone is not good

22   cause for withdrawal.

23         The case cited by the Government is a Second

24   Circuit case.  It's not a Tenth Circuit case.  The Tenth

25   Circuit case cited by the Government gives examples of good

**PATTERSON TRANSCRIPTION COMPANY**

scheduling@pattersontranscription.com

7

1  cause, such as it says a conflict of interest, a complete
2  breakdown of communication, or an irreconcilable conflict
3  which leads to an apparently unjust verdict.
4        I take the "such as" language on its face to mean
5  those are examples, but those are not the exclusive examples
6  of good cause and that good cause could mean failure to pay
7  attorney's fees.
8        For all of those reasons, I do not believe that
9  clear error was committed here in allowing Mr. Bornstein to
10 withdraw based on a showing that attorney's fees were not be
11 -- being paid and based only on that showing.
12       However, the Government points out that there
13 isn't a standard in criminal cases for reconsideration and
14 that the Tenth Circuit allows the Court to essentially --
15 essentially extrapolate a standard for -- for reconsidering
16 orders based on the civil standard.
17       And the civil standard from the Servants of
18 Paraclete case, which is cited by the Government and which
19 you can find at -- well, I thought I brought it with me.  I
20 did.  204 F.3d 1005.  It's a Tenth Circuit case from 2000.
21       The civil standard is that an order can be
22 reconsidered to prevent clear error or prevent manifest
23 injustice.  And I understand the Government's argument to
24 essentially be that the Government believes that allowing
25 Mr. Bornstein to withdraw at this point in the case after

1  appointment and withdrawal of several other attorneys and
2  given things that are pending in the case currently and
3  upcoming deadlines and a March, I believe of 2023 trial
4  date, that manifest injustice would occur if Mr. Bornstein
5  were permitted to withdraw because new counsel would have to
6  be appointed, new counsel would have to come up to speed,
7  and that of course in a complex case is a complex process.
8          So for a couple of reasons, and -- and I'll, as I
9  said, invite the Government to make any statements it wants
10 to make, the Court is inclined to grant the Government's
11 motion to reconsider.  The Court is inclined to -- to
12 conclude based on the Government's argument that it would be
13 manifestly unjust to permit Mr. Bornstein to withdraw
14 entirely at this point.
15         In light of Mr. Bornstein's candid statement that
16 he would accept representation as CJA counsel if the Court
17 so orders, the Court is inclined to require the defendants
18 to submit updated financial affidavits, and assuming their
19 qualify, to appoint Mr. Bornstein under CJA Act, the
20 Criminal Justice Act to be counsel on a continuing basis for
21 the defendants.
22         Nothing I say today should be construed to
23 indicate that I am making any orders or suggesting anything
24 with respect to whether the Tews can continue to be jointly
25 represented.  I'm not making any orders in that regard.  As

1   I said, that's going to be left to the district judge.

2             So that's what I'm inclined to do, and that's my

3   reasoning with respect to what I'm inclined to do.  Does the

4   Government wish to make any statement in light of that, Mr.

5   Fields?

6             MR. FIELDS:  Your Honor, just for the record, I'd

7   just note that we agree with that reasoning and appreciate

8   the Court's thorough analysis for the motion of

9   reconsideration.

10            As you point out, it's sort of shoe-horned in, and

11  so it can be difficult in a case like this, but we agree

12  with that and also with the Court's understanding of that

13  Second Circuit case as well as the fact that there -- there

14  does not appear to be any on-point Tenth Circuit precedent.

15  We do think that the Parker case provides some guidance and

16  that everything the Court has said is a good way to proceed.

17            There is one issue that I just want to flag so

18  that it doesn't become an issue later on, and that is, at

19  least under the CJA, sometimes it will -- there's a whole

20  body of case law involving sort of there is a conflict

21  presents itself because a lawyer feels they aren't being

22  paid enough under the CJA, attorneys are -- or the clients

23  are unhappy, et cetera.

24            And our understanding as well as from the Court's

25  prior minute order on August 19, 2020, is that the Tews have

10

1  sort of represented they can retain counsel, they're
2  eligible at different points in time.
3           If they suddenly came into some money that allowed
4  them to retain counsel, they had previously been appointed
5  by the defender and CJA, and that money that was used for --
6  for Mr. Bornstein should -- should actually be sort of
7  retroactively like part of the CJA.  He shouldn't get
8  additional money, and there's sort of a cap under the CJA.
9           And so I don't want that sort of cap and all those
10 financial issues to become a source of conflict later on.
11 And it's important for Mr. Bornstein and I think for the
12 Court to sort of acknowledge that financial predicament.
13          THE COURT:  Okay.  I'm not exactly following what
14 you're saying about that because I don't have enough
15 experience in how lawyers get paid under the CJA.  So tell
16 me what you -- explain in further detail what you mean.
17          If they have -- if they essentially have more
18 money at some point, what are you telling me, that they need
19 to be -- to be doing with it?
20          MR. FIELDS:  Well, essentially, Your Honor,
21 there's a cap as to how much attorneys can be paid under the
22 CJA.  That cap can be moved for exceptional circumstances,
23 but if Mr. Bornstein's retainer and the amount he's already
24 been paid is above that cap, essentially under the CJA, he
25 wouldn't be getting paid anything more, even taking this

1   case through trial.
2          Also, if the Tews had additional money to retain
3   Mr. Bornstein, but they didn't use that money to pay for
4   their prior lawyers, that's potentially a problem under the
5   CJA, and the money that they paid Mr. Bornstein should
6   instead have gone to the federal defender or been used to
7   compensate prior counsel under the CJA, and they didn't do
8   that.
9          And so there -- that creates I think a problem
10  here that Mr. Bornstein should at least be aware of and that
11  the Government makes sure is firmly, you know, established
12  in the records so we don't have this problem in another two
13  weeks or something like that and additional delays.
14         THE COURT:  Okay.  Well, I think I get it.  I
15  think what I'm hearing is the Government is saying that, Mr.
16  Bornstein, you may end up indeed working for free to the
17  extent that you're appointed as CJA counsel.
18         Honestly, that is not something that we can sort
19  out today because we don't know what the Tews' current
20  financial condition is.  There is no current financial
21  affidavit.  I know you say they can't pay your bills, and
22  that's fair enough, but I think as you know, the rates for
23  payment of counsel under the Criminal Justice Act are
24  considerably lower than what counsel in a private setting
25  might command.

1          And in light of that, you know, who knows what the
2    Tews' current financial condition is or whether they
3    actually do qualify for the appointment of CJA counsel.  I
4    appreciate the Government raising the issue now, but I don't
5    think it's anything that we can address until at least I
6    have eyes on the Tews' financial affidavits.
7          Mr. Bornstein, did you want to say something
8    further?
9          MR. BORNSTEIN:  Yes.  What the -- what the
10   Government is saying here really bothers me because it is
11   meddling in the defense function, and I don't believe they
12   have any right to do so, and especially in terms of, you
13   know, suggesting that I might have to do an eight-day
14   federal trial for free, which would cause an enormous
15   financial hardship on me and my law practice because I am a
16   solo practitioner.  I don't have any partners who could be,
17   you know, working while I'm, you know, doing that.
18         And so that would be a major reason not to be part
19   of this case anymore.  And so what the Government now has
20   said here at the end of the day raises that issue, that that
21   would cause an enormous conflict with me and my ability to
22   give this case its priority, give it the -- the defendants
23   their due as counsel for the defendants, even if I only
24   represent one of the two defendants, which is the only way
25   that I would think that this could work.

1        I don't -- I mean, I understand what the Court
2  says about if it's joint representation if you're paid
3  according to private fees, but that's not the same thing as
4  trying to do joint representation as a CJA lawyer, which
5  also raises the issue of having independent investigators,
6  experts.  That just creates a whole set of conflicts.
7        So I -- I don't want what the Government says to
8  go -- to keep me silent and not say that I did spread on the
9  record that they're raising a real can of worms, and they're
10  raising it because they're trying to meddle in the defense
11  functioning.
12        THE COURT:  Okay.  Well, I mean, let me -- let me
13  do this:  For purposes of today's hearing, I'm going to give
14  the Government the benefit of the doubt, and the benefit of
15  the doubt is that Mr. Fields is just raising this because
16  it's a potential issue down the road, and he's trying to
17  inform the Court of the potential issue down the road and
18  not necessarily meddle, as you put it in -- in defense
19  functions.
20        I assume that if you are appointed as CJA counsel,
21  you'll have numerous interactions with the authorities with
22  respect to payment of fees pursuant to the Criminal Justice
23  Act, and those interactions I also assume would be entirely
24  independent of the Government.
25        My experience with CJA counsel is that they submit

1  affidavits with respect to fees incurred and that those
2  affidavits are funneled through the Federal Public
3  Defender's Office and are sworn to and then are approved by
4  the Court.  And I don't think the Government has anything to
5  say about that, period.
6            So if issues arise with respect to payment of you
7  as CJA counsel, first, I have a high level of confidence
8  that the Government won't necessarily be involved.
9            Second, I have a high level of confidence that if
10 you have concerns about that, you'll raise those with the
11 Court, and the Court will do what the Court needs to do to
12 try to resolve those.
13           So for today's purposes, I'm going to just give
14 the Government the benefit of the doubt that this was raised
15 as a potential red flag just to notify the Court of what the
16 issues might be.
17           But for the reason I stated previously, I am going
18 to reconsider my previous order, essentially grant in part
19 and deny in part the motion to withdraw.  It is granted in
20 part to the extent that the -- and Mr. Bornstein is seeking
21 to withdraw as private counsel to the defendants.
22           It is denied, however, to the extent that Mr.
23 Bornstein is seeking to withdraw in its entirety because
24 he's going to be appointed as CJA counsel by the Court
25 presuming that the defendants qualify for the appointment of

1   CJA counsel.

2         So what we need to do is we need to address the

3   Government's contention that I'm giving the Tews way too

4   much time to file their affidavit. And I think in the order

5   that I entered, I ordered the defendants to submit

6   affidavits by December 16th, which is essentially one week

7   from today.

8         Is the Government still taking the position that

9   that's too much time?

10        MR. BUCHMAN: So sorry, Your Honor.

11        THE COURT: That's all right.

12        MR. FIELDS: Your Honor, I -- it is often the case

13   that defendants are able to submit affidavits much faster

14   than that. The Tews obviously know their financial

15   conditions. I would think they could actually submit an

16   affidavit probably by the end of the day today, if not on

17   Monday, and you've got the holidays.

18        If there are any other issues under the CJA, and

19   I'll just note for the record that there's a whole body of

20   case law on this, the Government is not meddling. The

21   Government is pointing out there are some district courts

22   that have said actually using the CJA like this to then --

23   to pay a counsel who's previously been retained is

24   completely counter to the CJA and not allowed at all.

25        There's a case out of the Northern District of New

1  York, United States V. Alexander.

2          THE COURT:  They're always wrong up there.  I'm

3  teasing.  That was a joke for anyone listening.  I'm -- ha,

4  ha.  We're laughing.  Go ahead.

5          MR. FIELDS:  They're all out of circuit, and I

6  will say that.  But it is a live issue, and I want to make

7  sure that it doesn't sort of metastasize.

8          THE COURT:  I understand.

9          MR. FIELDS:  But the sooner we can resolve all of

10 this and at least get him appointed under the CJA, the

11 faster we can address any other issues down the road.  So --

12         THE COURT:  All right.  Well, let me put it this

13 way, I mean, I -- I'm on criminal duty for another week, and

14 the only concern that I have with respect to allowing the

15 Tews to submit financial affidavits on the 16th is that on

16 the 19th, I'm no longer on criminal duty.

17         And sometimes things get internally complex when

18 the duty switches from one magistrate judge to another

19 magistrate judge.  And is the new magistrate judge supposed

20 to rule on the issue of the eligibility of the defendants

21 for appointment of counsel or the old magistrate judge?  And

22 there can be unnecessary delays caused by that.

23         So for that reason alone, I was considering moving

24 back the deadline for the Tews to submit affidavits.  So

25 it's -- their affidavits come in clearly while I'm on duty

1 so that I can make a duty because I'm familiar with what the
2 situation is.
3            But you know, it's Friday, and to -- for Mr.
4 Bornstein to talk to the Tews, and I assume that although
5 you have not been formally reappointed, Mr. Bornstein, you
6 would do that as an officer of the court and explain to them
7 that they have been asked to submit these financial
8 affidavits and the Court has changed the deadline, but to
9 change it to Monday, that seems a little too abrupt to me.
10           So what I'm inclined to do is to allow the Tews to
11 submit their affidavits on or before 5:00 p.m. on Tuesday,
12 December 13th so that they have the time available after Mr.
13 Bornstein gives them notice of this until that time to get
14 their ducks in a row and get their financial affidavits
15 filed under restriction on the electronic docket.
16           Mr. Bornstein, any objection to that from you?
17           MR. BORNSTEIN:  No.  No, Your Honor.  However,
18 because I have been withdrawn, I no longer have access to
19 the -- to the docket.
20           THE COURT:  Right, right.  And you know, I -- I --
21 I don't know how to fix that except to notify the clerk's
22 office that I want you to be able to file these affidavits
23 under restriction under these circumstances.
24           Frankly, to try to get criminal defendants up to
25 speed on how to use our electronic filing, especially when

1   documents need to be restricted, is in my view not the

2   answer.  The more practical answer is to allow Mr. Bornstein

3   as an officer of the court who is anticipating reappointment

4   as CJA counsel to file these affidavits for me so that I can

5   take a look at them and to do that under restriction.

6          So I'm going to order today in conjunction with my

7   order on the motion that the clerk's office permit Mr.

8   Bornstein to do that, and I'll make sure they're aware of

9   that so that you don't have any electronic glitches, Mr.

10  Bornstein, in trying to do that.

11         All right.  Anything further then that we need to

12  address today from the Government?

13         MR. FIELDS:  Just as a practical matter, Your

14  Honor, if for whatever reason the clerk's not able to do

15  that, the United States has no opposition to an ex parte

16  email from Mr. Bornstein with those affidavits to the Court.

17         THE COURT:  Okay.  Fair enough.  And you know,

18  that's a -- that's a great suggestion.  Frankly, Mr.

19  Bornstein, if you run into any trouble getting these things

20  filed under restriction on the electronic docket, send them

21  to me by email, the mix_chambers@cod.uscourts.gov address.

22         And then at least I'll have them so that we can

23  start moving promptly, and I -- I can ensure that they're

24  filed on the docket electronically that way.  Fair enough?

25         MR. BORNSTEIN:  Yes.

19

1       THE COURT: All right. And anything further, Mr.
2  Bornstein, from you today?
3       MR. BORNSTEIN: No. No, Your Honor.
4       THE COURT: All right. Thank you. We'll be in
5  recess.
6       THE DEPUTY: All rise.
7       (Whereupon, the within proceedings concluded at
8  11:23 a.m.)
9
10              TRANSCRIBER'S CERTIFICATE
11       I certify that the forgoing is a correct
12  transcript, to the best of my knowledge and belief (pursuant
13  to the quality of the recording) from the record of
14  proceeding in the above-entitled matter.
15
16  /s/Brittany Payne                    January 28, 2025
17  Signature of Transcriber             Date
18
19
20
21
22
23
24
25