1

1              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF COLORADO
2
    CASE NO.: 20-cr-00305-DDD 20-mj-00088-KLM
3   _____

4   UNITED STATES OF AMERICA,

5          Plaintiff,

6   v.

7   MICHAEL AARON TEW,

8          Defendant.

9   _____

10          Proceedings before SUSAN B. PROSE, United States

11   Magistrate Judge, for the District of Colorado, commencing

12   at 3:57 p.m. on March 21, 2024, in the United States

13   Courthouse, Denver, Colorado.

14   _____

15   WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS ARE

16   HEREIN TYPOGRAPHICALLY TRANSCRIBED...

17   _____

18                       APPEARANCES

19          BRYAN FIELDS AND SARAH HUNTER WEISS, Attorneys at
     Law, appearing on behalf of the Government.
20
            JASON SCHALL AND KRISTEN M. FROST, Attorneys at
21   Law, appearing on behalf of Defendant Michael Aaron Tew.

22          DAVID KAPLAN, Attorney at Law, appearing on behalf
     of Defendant Kimberly Ann Tew.
23   _____

24                    STATUS CONFERENCE

25

2

```
 1                    P R O C E E D I N G S

 2            (Whereupon, the within electronically recorded

 3    proceedings are herein transcribed, pursuant to order of

 4    counsel.)

 5            THE DEPUTY:  All rise.  Court is in session.

 6            THE COURT:  Good afternoon, everyone.  Please have

 7    a seat.  Thank you so much.  Take your time, folks.  So nice

 8    to see all of you.  We're on the record in Case No.

 9    20-cr-305, United States of America v. Michael Aaron Tew and

10    Kimberly Ann Tew.

11            Let's begin our status conference this afternoon

12    with appearances, please, beginning with counsel for the

13    United States.

14            MS. WEISS:  Good afternoon, Your Honor.  Sarah

15    Weiss and Bryan Fields appearing on behalf of the United

16    States.

17            THE COURT:  Good afternoon to both of you,

18    Counsel.  And who is here for Mr. Tew?

19            MS. FROST:  Good afternoon, Your Honor.  Kristen

20    Frost and Jason Schall for Mr. Tew, who's present in court

21    today.

22            THE COURT:  Good afternoon to all of you.  Welcome

23    to you, Mr. Tew.  And who is here for Mrs. Tew?

24            MR. KAPLAN:  Good afternoon.  David Kaplan

25    appearing on behalf of Kimberly Tew, who's present.
```

```
 1              THE COURT:  Good afternoon to both of you and

 2      welcome.  Again, it's so very nice to see all of you.  Well,

 3      Counsel, I called this brief status conference because as

 4      you see from Judge Domenico's recent order in the case, I

 5      have been charged with what I understand to be a relatively

 6      limited task.

 7              And pursuant to his recent order, he has -- he has

 8      found that there is sufficient evidence to call into

 9      question the Tews present eligibility for CJA counsel under

10      18 U.S.C. 3006A, subsection c.

11              Now, with that, he has cabined, cordoned off that

12      issue only for me to decide, and it poses some interesting

13      procedural challenges and questions, I think, doesn't it?

14              And so let me tell you, I've been -- as -- as my

15      son Joe always says, I've been cogitating on this, so mom's

16      been cogitating on this.  And with that, I -- I -- I note

17      that in Mr. Tew's response to the Government's recent motion

18      regarding detention -- this for the record is found at ECF

19      No. 453 -- Mr. Tew's counsel proposes that the right thing

20      for this Court to do for the Court analyzing the CJA

21      entitlement question would be to conduct ex parte hearings.

22              I presume -- of course, this is said only on

23      behalf of Mr. Tew, but I assume it would also be equally

24      said by Ms. Tew.  And that we should have an ex parte

25      hearing on that, the Court should make that assessment, and
```

4

1   that's how we ought to handle it.

2          I'm inclined to agree with that, and I -- I

3   frankly don't see a more expeditious or frankly more fair

4   way to handle the question that's been provided -- that's

5   been charged to me.

6          And so I think what I'd like to do -- so that's

7   sort of how I'm seeing it.  And given that Judge Domenico

8   has got a hearing set for you folks, if I'm not -- if I'm

9   not mistaken, on the other issues, it's relatively soon,

10  isn't it?  Is it in April sometime, folks?  Can you refresh

11  my recollection?  Maybe the 22nd, sometime around in there.

12          MS. WEISS:  I think that's right.

13          MR. KAPLAN:  That sounds right.

14          MS. WEISS:  Yes, Your Honor.

15          THE COURT:  And folks, do feel free -- I know it's

16  -- it feels so odd, but just do feel free, we can be

17  somewhat informal here today, take -- just stay in your

18  chairs.  That's just fine with me.

19          So with that, that's how I see it.  I'd like to

20  get those separate ex parte hearings set fairly quickly.

21  And so with this though, let me turn to Ms. Weiss and Mr.

22  Fields.  And what -- what -- what say you about -- about the

23  result of my cogitations?  What -- what do you think?

24          MS. WEISS:  Yes, Your Honor.  And I'll apologize.

25  I can't not stand up.

5

```
1              THE COURT:  I know.  It's just like impossible,
2    isn't it?
3              MS. WEISS:  It's just automatic.
4              THE COURT:  I know.
5              MS. WEISS:  Yes.
6              THE COURT:  I know.
7              MS. WEISS:  The Government has no objection to
8    holding a hearing ex parte.  I believe actually under the
9    CJA Panel rules, they're established in the Criminal Justice
10   Act and animated through the judiciary advisory roles that
11   that's absolutely the appropriate way to go forward.  The US
12   Attorney's Office should not have a role to play in this or
13   a very limited role to play in this.
14              That being said, I would encourage the Court to
15   prior to that hearing review a couple of cases out of this
16   circuit and district courts within the Tenth Circuit that
17   have addressed similar issues.
18              THE COURT:  Happy to do that.
19              MS. WEISS:  Yes.  And I do believe that there is,
20   if you look at those cases, an appropriate path for the
21   Government to submit evidence that it believes should be
22   considered by the Court as part of that ex parte
23   determination, and that's what we would request.
24              THE COURT:  I understand.  Tell me your case
25   cites, Ms. Weiss.
```

6

```
1              MS. WEISS:  Yes.  Give me one moment here, Your
2    Honor.
3              THE COURT:  Of course.  Take your time.
4              MS. WEISS:  United States v. Gutierrez.  That's --
5              THE COURT:  All right.  Go ahead and just give me
6    the cite --
7              MS. WEISS:  Sure.
8              THE COURT:  -- Ms. Weiss.
9              MS. WEISS:  3 --
10             THE COURT:  That will do.  That will be just fine.
11             MS. WEISS:  Okay.  347 F.Supp.3d 720.
12             THE COURT:  F.Supp.3d 720.  So I'll just repeat it
13   to make sure I have it right.  347 F.Supp.3d 720.
14             MS. WEISS:  Correct.
15             THE COURT:  All right.  Got it.  Thank you.
16             MS. WEISS:  Also there is one out of the Second
17   Circuit, which is a fairly lengthy discussion of the -- this
18   type of review, which is --
19             THE COURT:  Okay.
20             MS. WEISS:  -- United States v. Parker.
21             THE COURT:  Parker.  Okay.
22             MS. WEISS:  That's 439 F.3d 81.
23             THE COURT:  349 F.3d just 81, 8-1?
24             MS. WEISS:  That's correct.
25             THE COURT:  And that's a Southern District case or
```

7

1    something like that?

2              MS. WEISS:  That is Second Circuit, Your Honor.

3              THE COURT:  Oh, that's Second Circuit?  Oh.  F.3d.

4    Okay.  Got you.

5              MS. WEISS:  Yep.

6              THE COURT:  Wrote that down wrong.

7              MS. WEISS:  Wonderful.

8              THE COURT:  I wrote F.Supp.3d.  Okay.  Got it.  Go

9    ahead, please.

10              MS. WEISS:  And there is one more.  If you'd just

11    give me one moment, I will try --

12              THE COURT:  Sure.

13              MS. WEISS:  -- and find it here.

14              MR. KAPLAN:  Your Honor, if I may.

15              THE COURT:  Oh, yes.  Please do, Counsel.

16              MR. KAPLAN:  Not to interrupt Ms. Weiss, but the

17    Court said ex parte hearings.

18              THE COURT:  Yes.

19              MR. KAPLAN:  Ms. Weiss said ex parte hearing and

20    --

21              THE COURT:  I -- I was going to clarify that.

22              MR. KAPLAN:  Okay.

23              THE COURT:  I understand that the request to be

24    for each of the Tews to have their own hearing, and I intend

25    to handle it that way.

8

1            MR. KAPLAN:  Thank you, Your Honor.

2            THE COURT:  I -- I think maybe Ms. Weiss just

3    might have misspoken.

4            MS. WEISS:  I did, Your Honor.

5            THE COURT:  Okay.  No problem.

6            MS. WEISS:  And thank you for the clarification.

7            THE COURT:  Sure.

8            MS. WEISS:  The last case that I believe might be

9    helpful to Your Honor is US v. Barcelon.  That's 833 F.2d

10   894.

11           THE COURT:  894?  And what court is that, Ms.

12   Weiss?

13           MS. WEISS:  That is Tenth Circuit 1987.

14           THE COURT:  Oh, that's actually a Tenth Circuit

15   case.  1987.

16           MS. WEISS:  Correct.

17           MS. FROST:  What's the name of the defendant in

18   that case, Varcelon?

19           MS. WEISS:  Barcelon, B-a-r-c-e-l-o-n.

20           THE COURT:  Barcelon, okay.

21           MS. WEISS:  Close to Barcelona, but not quite.

22           THE COURT:  Very close.  Very close.  So Ms.

23   Weiss, if I understand you, in your view, these may provide

24   guidance to the Court in the manner in which to conduct the

25   hearings, and I guess most particularly for our purposes

1  right now, they envisage that the Government could present

2  material to me to consider in connection with that hearing.

3          All right.  Well, with that -- and -- and it seems

4  that would be helpful for me to understand the Government's

5  perspective.  I assume that this information that you

6  propose to give the Court, Ms. Weiss, was gleaned during the

7  trial.  Is that a fair assumption?

8          MS. WEISS:  That is not quite a fair assumption,

9  Your Honor.

10         THE COURT:  Okay.

11         MS. WEISS:  So it's not all matter -- they're not

12  all matters of record from the trial record.  They are for

13  the most part things that have been produced in discovery to

14  the defense or are continuing to be produced as we're

15  receiving them in.  So --

16         THE COURT:  So you're continuing to get material

17  in?  Okay.

18         MS. WEISS:  That's correct, Your Honor.

19         THE COURT:  Okay.

20         MS. WEISS:  We are still getting bank records on a

21  rolling basis.

22         THE COURT:  I see.

23         MS. WEISS:  And that's important in part because

24  the question of CJA eligibility is determined based on

25  availability at the time of the inquiry.  And so --

10

1               THE COURT:  Yes.

2               MS. WEISS:  -- it is not a static inquiry.  It's

3      one that moves with time.  And so even things from two,

4      three months ago may be indicative, they may not be

5      indicative, right?

6               THE COURT:  I see.

7               MS. WEISS:  And so we are getting things on the

8      most current up-to-date nature as we can.  So -- and we will

9      continue to produce those to the defense as we get them.

10              THE COURT:  Of course.

11              MS. WEISS:  And sort of just to summarize the body

12     of cases that I just cited to Your Honor, the primary points

13     from the law are -- are this --

14              THE COURT:  Okay.

15              MS. WEISS:  -- first the defendant is the party

16     that bears the burden of showing that they are eligible for

17     counsel.

18              THE COURT:  Yes.

19              MS. WEISS:  So this burden should rest on them.

20     That makes an ex parte hearing even more simply because Your

21     Honor will be primarily considering the evidence and

22     arguments put by the defendants for us.

23              Second, that what Your Honor is charged with is

24     conducting an "appropriate inquiry" into whether or not the

25     defendants could pay for their own counsel.  And that is a

11

1   very nebulous term, as so many in the law are.

2          In some of the cases that I have cited to Your

3   Honor all are cases where something similar has happened,

4   and either a district court or an appellate court on review

5   is -- is evaluating whether or not an appropriate inquiry

6   was made.

7          What those cases show is it's not -- there is no

8   magic formula, there is no magic sauce to doing this.  The

9   appropriate thing to do is just to show that you're using

10  your discretion to review all the -- the evidence before you

11  and determine whether or not this are counsel that could be

12  paid by these defendants at that moment in time.

13         So obviously the most pertinent document usually

14  is our CJA form, and you'll see that in the cases, that

15  typically in one of these cases, just reviewing the CJA form

16  that is filled out and submitted under penalty of perjury

17  should be enough to mostly answer this inquiry, and if a

18  mistake was made, just go back and correct it later on.

19         In this instance where the Government has serious

20  concerns that a prior affidavit may have been submitted that

21  is not consistent with other evidence the Government has

22  obtained, we would urge Your Honor to look beyond the four

23  corners of that document to require these defendants to

24  provide the Court with documentation to support whatever

25  averments they are going to make in that affidavit and not

12

1    just simply take it at face value as Your Honor might in a

2    typical case.  I will --

3              THE COURT:  I take it the CJA affidavits are --

4    well, they're old now here, aren't they, too?

5              MS. WEISS:  Uh-huh.

6              THE COURT:  They were submitted a long time ago, I

7    presume, the beginning of the case?

8              MS. WEISS:  That's right, and it is an ongoing

9    obligation.  And interest interesting point on this in just

10   looking at sort of the guide to judicial policy in Volume 7,

11   which is the appropriate portion of that guide, typically

12   under Section 210.10.30, each district should have a

13   provision that requires defense counsel to inform the Court

14   if something about that prior submitted CJA affidavit has

15   changed.

16             THE COURT:  I'm not sure we have that in our CJA

17   plan.

18             MS. WEISS:  I don't believe that we do.

19             THE COURT:  I -- I don't think we do either.

20             MS. WEISS:  It does --

21             THE COURT:  I took a look at that too.

22             MS. WEISS:  Yeah.

23             THE COURT:  Yeah.

24             MS. WEISS:  There is a general provision that

25   says, you know, all CJA-appointed counsel should comply with

13

```
1    the guide in all these other places, but it's only by

2    reference, and the does not have the specific --

3              THE COURT:  Yeah.

4              MS. WEISS:  -- language that --

5              THE COURT:  Yeah.

6              MS. WEISS:  -- the guide would suggest should be

7    in our district's policy.  So I did want to make that --

8    that clear, that even though these are old, there arguably

9    colorably might have been an ongoing obligation to inform

10   the Court of this.

11             But regardless of that, this Court has an ongoing

12   obligation to address it as it arises, and so here we are

13   today.

14             THE COURT:  Yes, I understand.

15             MS. WEISS:  And -- you know, and that's not a

16   blanket requirement, right?  Also we can just -- if you look

17   at the guide, it says if it doesn't require, you know, to

18   breaching the attorney-client privilege, things of that

19   nature, the Government obviously has no idea.

20             THE COURT:  Right.  Of course.

21             MS. WEISS:  And -- and wouldn't and doesn't want

22   to impute anything otherwise, but just to say that this

23   availability inquiry and the appropriate inquiry is an

24   ongoing obligation that the Court has.  And given sort of

25   the spectra of other evidence here, that we do believe we
```

14

1    should be going beyond the four corners of the affidavit at

2    this point in time.

3            THE COURT:  Ms. Weiss, what is the quantity, if

4    you will, of the -- of the materials that the United States

5    would like the Court to review?  And I ask that -- I'm happy

6    to review anything and everything, and I will do so from

7    every party in this room, but just for planning purposes.

8            MS. WEISS:  I believe, Your Honor, it -- I -- it

9    seems that you've already read the Government's submission

10   from before.  So you have --

11           THE COURT:  There's some --

12           MS. WEISS:  -- at least -- at least part of what

13   we're talking about here.  So between 2022 and 2024, a

14   single bank account held in the name of Michael Tews shows

15   about $1.4 million of income coming in and then rapidly

16   moving out, including two accounts in the name of Kimberly

17   Tew.

18           We have since obtained additional bank records

19   that show significant peer-to-peer transactions in Kimberly

20   Tew's accounts, and those are in short, you know, money

21   coming in from third sources and then again quickly going

22   out, mostly to crypto currency platforms.

23           THE COURT:  I see.

24           MS. WEISS:  Or largely to crypto currency

25   platforms.  And when you compare that against the indictment

1  in this case, and I understand Your Honor wasn't in trial

2  with us --

3          THE COURT:  No, but I have reviewed this docket so

4  that I can --

5          MS. WEISS:  Yes.

6          THE COURT:  So that I have some context in which

7  to make this evaluation.

8          MS. WEISS:  Correct, yes.  So there is -- there

9  was a very big part of this trial, part of the motivation

10  being that Kimberly Tew engages in quite a bit of crypto

11  speculation, and that might have been a strong motivation

12  that caused the loss to the victim company in this case, was

13  funding essentially this cryptocurrency speculation.

14          THE COURT:  And this -- this set of materials also

15  goes from roughly the beginning of 2022 through the present

16  day, I presume; is that right?

17          MS. WEISS:  That's correct.  We are in the process

18  of obtaining bank accounts as we're discovering them in real

19  time and as we're getting materials back from the banks.  So

20  we -- I can't tell you even the full universe of documents

21  other than to say that it's multiple accounts at this point

22  in time, multiple months, multiple years.

23          And so we are trying and will do the best we can

24  to sort of collate those documents down into something more

25  comprehensive and summarized similar to how we had in our

16

1    filing before.

2              THE COURT:  All right.  Well, thank you for that.

3    And with that, I think we're -- we're at a minimum then --

4    and it may just be, if I might do the higher math very

5    quickly, perhaps some 28 months or so --

6              MS. WEISS:  Uh-huh.

7              THE COURT:  -- of -- and maybe it will just be

8    bank statements --

9              MS. WEISS:  Uh-huh.

10             THE COURT:  -- perhaps.  And in fact, perhaps the

11   Tews also will wish to submit some of those materials, but

12   that -- that is not by any means -- your estimate is by no

13   means a truly unmanageable level of material, it does not

14   sound.  Perhaps we speak too soon.

15             But it sounds like it -- it can be managed.  And I

16   -- and again, I'm really asking for context here.  I would

17   like to have this accomplished and my decision made, you

18   know, really comfortably in advance of Judge Domenico's

19   hearing on April 22nd.

20             So I guess then I would have a follow-up question

21   for you, Ms. Weiss and Mr. Fields, in terms of how long do

22   you think it would take you to present these materials to

23   the Court and of course to the Tews?

24             MS. WEISS:  One moment, Your Honor.

25             THE COURT:  Of course.

17

1          MS. SCHALL:  Can I say something in the meantime?

2          THE COURT:  Yes.  And Counsel, you too should feel

3    free to remain seated if you'd like to.

4          MR. SCHALL:  I know.  It's -- it's bludgeoned into

5    me.

6          THE COURT:  No, I know.  I know.

7          MR. SCHALL:  There's an unspoken issue here, which

8    has to be with the order of the -- your decision and Judge

9    Domenico's decision.

10          THE COURT:  How -- what order do you think it

11    should go in, Counsel?

12          MR. SCHALL:  Well, I don't know.  I'm going to say

13    a lot of that --

14          THE COURT:  A conundrum here we have.

15          MR. SCHALL:  But -- but the -- the conundrum is

16    this:  That it's entirely possible that the distribution the

17    Court makes in advance of the detention hearing could be the

18    opposite of what the decision would be after the detention

19    hearing if my client or his spouse or both of them are then

20    in custody and --

21          THE COURT:  I see your point.

22          MR. SCHALL:  Yeah.

23          THE COURT:  Well, and -- and presumably no access

24    to funds, that point.  With that, thinking that through,

25    would your recommendation be that the Court conduct this

18

1    hearing before or after the detention hearing?

2            MR. SCHALL:  I -- I think the ex parte hearing

3    needs to happen sooner rather than later.

4            THE COURT:  That was how I was thinking about it,

5    but I'm very open to your thoughts on the timing too.

6            MR. SCHALL:  And --

7            THE COURT:  I'll hear from everyone that.

8            MR. SCHALL:  I say that because of the sentencing

9    date schedule in the case, which --

10           THE COURT:  It's in -- and that is in August, is

11   it not, Counsel?

12           MR. SCHALL:  August 8, I believe or 9th.

13           THE COURT:  Is that for -- is that for both our

14   defendants?

15           MR. SCHALL:  They are on the same day.

16           THE COURT:  I see.

17           MR. SCHALL:  And so the -- the -- the issues are

18   maybe even more convoluted because there's -- there's the

19   possibility that the Court could determine that a time frame

20   of representation was not eligible and perhaps should be

21   paid back, but that a future time frame restores

22   eligibility, and that's contingent on what Judge Domenico

23   decides about detention.

24           THE COURT:  And it could go the other way around

25   too --

19

1          MR. SCHALL:  Sure.

2          THE COURT:  -- couldn't it?  Yeah.  Go ahead,

3     Counsel.

4          MR. KAPLAN:  Well, I'm just going to -- as long as

5     we should get all the issues out, so when you're --

6          THE COURT:  Let's just talk them through.

7          MR. KAPLAN:  -- asking -- when you're asking --

8          THE COURT:  Let's just talk them through.

9          MR. KAPLAN:  -- questions and we're all talking

10    about it.  You know, certainly I -- I -- I agree with the

11    question of whether we're going to -- the Court's going to

12    make a determination that is going to last just between

13    whenever the ex parte is to Judge Domenico's decision on

14    detention, at which point, you're right.

15          I mean, there could be circumstances that they're

16    still not eligible, but the likelihood of them being

17    eligible increases when they're in custody if Judge Domenico

18    would agree with the Government that they should no longer

19    be released pending sentencing.  So we would be going

20    through this mechanism for the sake of just, you know,

21    whatever it would be, a few days maybe or 10 days.

22          THE COURT:  Well, and -- and --

23          MR. KAPLAN:  (Indiscernible).

24          THE COURT:  -- I guess by that logic, Counsel, it

25    would make more sense for this Court to -- now -- now, you

20

1    still have that past issue, don't you?

2        MR. KAPLAN:  Well --

3        THE COURT:  But it would make more sense to

4    conduct this after Judge Domenico's determination?

5        MR. KAPLAN:  That -- I mean, I -- I -- yeah,

6    possibly, which brings me to another -- the second issue

7    that I was going to raise that I'm a little unclear about.

8    I mean, the Court came out and -- and did say that -- that

9    Judge Domenico's request to have you as a magistrate address

10   a certain issue, as --

11       THE COURT:  Yes.

12       MR. KAPLAN:  -- I read it, what -- whether the

13   Tews were eligible for ongoing Court-appointed counsel.

14       THE COURT:  Well, he says in the order, doesn't

15   he, and -- and it's -- you raise a very important issue for

16   everyone to understand.  He says to qual in -- to call into

17   question their present eligibility.

18       MR. KAPLAN:  Right.  That's right.

19       THE COURT:  Doesn't he say that?

20       MR. KAPLAN:  Yes.

21       THE COURT:  Yes.

22       MR. KAPLAN:  So -- so one of the things, and I

23   know -- I don't know that we've --

24       THE COURT:  And whether they remain -- excuse me,

25   Counsel, but whether they remain entitled --

21

1          MR. KAPLAN:  Right.

2          THE COURT:  -- to ongoing.

3          MR. KAPLAN:  Right.

4          THE COURT:  So he says them both, doesn't he?  He

5    says both things.

6          MR. KAPLAN:  Well, on -- yeah, ongoing.  I think

7    they both say the same thing, which is, as I read it, are

8    they entitled at this point in time to -- to Court-appointed

9    counsel.

10          So you know, the question is to whether we're

11    going to now revisit documents that -- that talk about their

12    financial situation in 2022.  I don't want to make a full

13    argument.  We'll have other times to disagree and argue

14    about all that.  And you know, I mean, I --

15          THE COURT:  And you can make this argument to me

16    in the ex parte hearing too.

17          MR. KAPLAN:  Right.

18          THE COURT:  Of course.

19          MR. KAPLAN:  But you know, what -- what --

20          THE COURT:  Right.

21          MR. KAPLAN:  -- I'm saying is, is what's at issue

22    here because although I understand the being presumptuous

23    enough so to say that if the -- the Government wants to show

24    that they had these kind of funds two years ago, that may

25    impact their ability to pay for today.

22

```
 1              But I would suggest to the Court that -- that we

 2     don't need or we should not revisit their financial status

 3     in 2022, right?  I mean, unless the Government's going to

 4     make the point that they were sufficiently -- you know, they

 5     had sufficient funds that should have lasted, right, so that

 6     --

 7              THE COURT:  Well, or that your fees should have

 8     been paid at that time by then, right?

 9              MR. KAPLAN:  Well --

10              THE COURT:  By them.

11              MR. KAPLAN:  -- is that the issue that this

12     Court's been -- been tasked with -- with -- with making?  I

13     mean, you know, that's an issue.  I -- I'd say no, right?

14     I'd say that's -- that this Court's not tasked with that.

15     And if -- if the Court is tasked with that, then that would

16     be a question of some sort of remuneration or restitution or

17     --

18              THE COURT:  It would be.

19              MR. KAPLAN:  -- or back payment.

20              THE COURT:  It would be.

21              MR. KAPLAN:  I don't -- I mean, I think that was

22     some issue that was raised in -- and I don't -- I don't

23     remember, and maybe counsel could help me, whether those

24     were issues raised by the Government and Judge Domenico

25     wanted to address, but the wasn't the issue that was
```

23

1    referred.

2            You know, so at least not the way I viewed it, all

3    right?  I mean, I guess, you know --

4            THE COURT:  I under -- I understand your point.

5            MR. KAPLAN:  Yeah.  So I -- you know, I was not --

6    I mean, you know, my feeling is is -- is the Court needs to

7    determine according to what Judge Domenico referred whether

8    they should now no longer be --

9            THE COURT:  Well, but --

10           MR. KAPLAN:  -- afforded.

11           THE COURT:  -- that now doesn't exist in a vacuum,

12   does it, Counsel?  I mean, if I had, I don't know, $100

13   million last year, isn't it appropriate for the Court to

14   delve into the question of how did that trajectory look over

15   time?  At least over a fairly cabined amount of time.

16           It seems to me the answer to that question is yes

17   and that, you know, I'm not suggesting that this would

18   happen, but a -- but a defendant might in the -- in a

19   similar set of circumstances here -- and again, I cast no

20   aspersions on anyone in the courtroom here.

21           But if -- if you know I'm going to be looking at

22   this tomorrow, could you not -- could you not take steps to

23   make things like a little bit different than they --

24           MR. KAPLAN:  Yes.

25           THE COURT:  -- did even two weeks ago?

24

1          MR. KAPLAN:  Well, right.

2          THE COURT:  Yeah.

3          MR. KAPLAN:  That's a question of the honesty, you

4    know, perhaps of the -- of the questions being asked, but --

5    but I would suggest to the Court that if they had $100

6    million two years ago, it -- it -- except that it raised the

7    -- the curiosity, all right, it still isn't necessarily

8    relevant to -- as to whether they can afford it now unless

9    the Government is going to also provide the Court with

10   evidence that they have whatever money was -- was, you know,

11   gathered then, they still have.

12         Which brings me to one other thing.  I haven't --

13   I haven't looked at the -- the cases that the Court cites

14   and they talk about the burden, and I'm -- you know, I can

15   inquire as to whether that burden is -- is on us the whole

16   way or --

17         THE COURT:  Well, I'll look into that --

18         MR. KAPLAN:  -- does -- but does it --

19         THE COURT:  You can too.

20         MR. KAPLAN:  Right.  Does it change once the

21   counsel has been appointed?  And if somebody wants to undue

22   the appointment of counsel, is the burden still on us?  I --

23   I don't know.  Maybe the Government knows that.

24         THE COURT:  Well, and you know, Counsel, I think

25   you've raised some very important questions for this Court

25

 1   to think about.  I know Ms. Weiss wants to say something,

 2   and I'm going to let her do it too, and I'll let counsel for

 3   Mr. Tew speak again as well, of course.

 4          But here -- here is what I can tell you I'm going

 5   to do:  I'm going to -- I'm going to set these hearings.

 6   I'm going to give you all the time that you want to have,

 7   each party respectively for them because I know this is a

 8   very important question.  I'm going to do that.

 9          I'm going to look at whatever the Government wants

10   to submit.  You'll see it too.  And I'm going to hear all

11   the argument you want to make about it, Counsel.  Judge, you

12   shouldn't look at what's going on in September of 2022,

13   right, and here's why.

14          And that will -- only in that context, I -- I

15   would suggest to everyone in the courtroom, can the Court

16   truly make a reasoned analysis, I think here.  And so I am

17   not going to in advance of these hearings necessarily cabin

18   what the Government might wish to show me or what any of you

19   might wish to show me because in truth, Counsel, I would

20   envisage a set of circumstances where taking a look a little

21   bit back might be helpful to you.

22          And I would not want to cut that off for you

23   because I don't think that would be fair to you, and I --

24   and I do not intend to go down that road.  But Counsel,

25   you've alerted me to that issue.  I'm going to be thinking

26

```
1   about it, and I'm going to be ready to hear your arguments

2   at the time.

3           Now, I also assume, counsel for the Tews, that

4   you'll wish to -- or will you, but you tell me.  Will you

5   wish to present some things to me, obviously ex parte sent

6   to my chambers in advance of the hearing?  Do you think you

7   will?

8           MR. KAPLAN:  As far as I know, it depends on -- I

9   mean, I --

10          THE COURT:  It -- it may --

11          MR. KAPLAN:  -- reviewed --

12          THE COURT:  -- depend on what you see?

13          MR. KAPLAN:  Yes.  I mean, I've reviewed some of

14  it, and it depends on what the Court's just constructed, and

15  that is, you know, how -- what am I looking at?  And -- and

16  I was going to wait, but you may -- I understand that you

17  will not limit what you're going to review.

18          I guess the question that still remains is

19  allowing for reviewing anything, you know, that the

20  Government or -- or we want to submit, is the Court's

21  decision should they have been denied counsel sometime in

22  the past?  Is that also what the Court is deciding?

23          THE COURT:  Well --

24          MR. KAPLAN:  Or is the Court going to look at all

25  of this information just in the context of the decision that
```

1   I think was referred and that is should they continue to be

2   (indiscernible)?

3            THE COURT:  I think that is an issue.  I take your

4   point.  I think that is an issue that you're going to argue

5   to me in the hearings, and you're going to explain to me why

6   you think it should be.  And presumably I'm hearing you,

7   Counsel, you will be arguing, "Judge, you need to look at it

8   now within this now time frame."And I'm going hear you out

9   on that, but I'm not going to decide that issue right now.

10           I understand I can -- I see how Judge Domenico has

11   written this brief order.  I'm also though going to be

12   informed as I endeavor to be my very best to carry out this

13   -- this charge that I've been given.  I'm going to look and

14   see what the case law says on this too.  In a similar sort

15   of circumstance, what -- what does -- what is the judge

16   directed to do?

17           If the judge sees information that would indicate

18   that there has been some issue in the past or something in

19   the past calls into question whether counsel should have

20   been paid for at the time, am I -- am I going to ignore

21   that?

22           I think those are questions that I'm going to be

23   thinking through as I review everything and as I hear the

24   arguments of counsel.

25           But I take your point, Counsel.  I'm not going to

28

1    decide that question today.  I'm not going to prejudge how

2    narrowly or how potentially expansively -- it's not going to

3    be that expansive, is it?  Because I don't think there's an

4    argument -- it doesn't sound like there's an argument that

5    there's any question about any -- any lack of entitlement to

6    CJA counsel before January 1.  Ms. Weiss and -- of 2022.

7          Mr. Weiss and Mr. Fields, is that your view, that

8    really that's kind of the important date here, January of

9    2022 when -- when significant monies, in your view?

10          MS. WEISS:  Your Honor, if I can take your

11    question a little bit out of order and --

12          THE COURT:  Sure.

13          MS. WEISS:  -- start with the point that I agree

14    with Mr. Kaplan, that Judge Domenico's order is referring to

15    you just the Tew's continued eligibility for CJA appointment

16    going forward.  If you look at the second paragraph of his

17    minute order, he talks about deciding the question of

18    reimbursement for previous --

19          THE COURT:  He does.

20          MS. WEISS:  -- CJA funding as being something that

21    the parties will brief and argue to him at the detention

22    hearing in April.  So I think if we look at sort of today or

23    the -- the date of that minute order as a static moment in

24    time, the important date then would be for Your Honor to

25    look at whether or not they're entitled to continued

29

1    reimbursed counsel from that going forward.  And then Judge

2    Domenico is going to retain his discretion over everything

3    that came before that.

4         You are correct that it is in late 2022 when the

5    defendants began to move from privately retained counsel to

6    CJA counsel, which was --

7         THE COURT:  It was late 2022?

8         MS. WEISS:  I believe that's right.

9         THE COURT:  Okay.

10        MS. WEISS:  Yeah.

11        THE COURT:  Well, and you know, I'm going -- I'm

12   going to puzzle over it.  I'm going to review this a little

13   bit more too.  I --

14        MS. WEISS:  I -- I had to read it multiple times,

15   but I do believe --

16        THE COURT:  I --

17        MS. WEISS:  -- that it's sort of present and

18   ongoing is what he would like this Court to focus on, and

19   then everything looking backward he's retaining, at least

20   for the time being.

21        THE COURT:  Well, and -- and perhaps we might --

22   there -- perhaps there might be some additional

23   clarification here too, but -- that -- that might be

24   warranted, but all other issues.  Hmm.  Well, I take your

25   point, Ms. Weiss.  I'm going to -- I'm going to think about

30

1    that too.

2           I take -- I take your view.  I understand what Mr.

3    Kaplan's saying as well.  So go ahead and you were going to

4    take up another question.

5           MS. WEISS:  Your -- your next question, which was,

6    you know, sort of what is the important date.  I think the

7    important date is sort of the issuance of that minute order

8    at 455 going forward.  Are they eligible for CJA counsel

9    going forward from that point in time?

10          And the Government's only point to that and the

11   purpose of citing the cases and making the arguments about

12   the law that I've made today is just to say -- just to get

13   us in the door to -- to bring forth to Your Honor something

14   that could be looked at an ex parte hearing even if we're

15   not participating in it.

16          And I do believe that Your Honor understands the

17   point, which is if it a current availability determination

18   and there's nothing to stop the Tews from having a loop of

19   funds that they just get rid of the day before the hearing

20   and completely change what they're able to aver to the Court

21   on the date of that hearing, so --

22          THE COURT:  You know, Ms. Weiss, if you're -- if

23   you're -- if you're construing this order correctly, then

24   why would I -- why would I look then at documents that go

25   way far back, say January of 2022?  Why would the Court look

31

 1  at those here?

 2          MS. WEISS:  And it may be the case, Your Honor,

 3  that the full scope of documents that we believe are

 4  appropriate for the -- the -- the past determination and the

 5  reimbursement question is not necessarily coextensive of the

 6  scope of documents that we believe is appropriate for an

 7  ongoing determination.  And --

 8          THE COURT:  So in other words, you may decide

 9  we're going -- you're going to present this Court with fewer

10  documents?

11          MS. WEISS:  Correct.

12          THE COURT:  Yeah.

13          MS. WEISS:  Correct.

14          THE COURT:  Okay.

15          MS. WEISS:  Or we may not be as full-throated

16  about, you know, we think this, you know, $100,000 that came

17  in at -- in April of 2022 is -- is completely dispositive.

18          I would point out that the cases that I've cited

19  to you today and the cases that we would include in our

20  briefing prior to the ex parte hearing are going to make the

21  point that when we're talking about availability of counsel

22  going forward, it is appropriate to look into actions taken

23  by the defendants to secret assets, to put --

24          THE COURT:  Sure.

25          MS. WEISS:  -- assets in the names of others --

32

1              THE COURT:  Sure.

2              MS. WEISS:  -- to essentially stack the deck in

3       their favor so they look they're eligible when they really

4       aren't.  So you know, there isn't a precise timing.  It's of

5       course a fact-dependent analysis.  And so I can't give you

6       --

7              THE COURT:  Sure.

8              MS. WEISS:  -- a date where I say everything, you

9       know, three months back matters and everything earlier than

10      that doesn't, or you know, a year back or two years back.

11      All I can say is that I do think that the farther back in

12      time you go, the less relevant, but not necessarily

13      irrelevant.

14             THE COURT:  Not necessarily irrelevant.  Well,

15      again, so Counsel, here's what I'm going to do:  I'm going

16      to review everything that the parties deem appropriate to

17      provide to me.

18             And I think we were in the middle, weren't we,

19      Counsel, of discussing, do you see a large number of

20      documents or some documents you'd like me to take a look at

21      ahead of time?

22             MR. SCHALL:  I try to prevent large numbers of

23      documents --

24             THE COURT:  A good --

25             MR. SCHALL:  -- ever --

1            THE COURT:  A good approach.

2            MR. SCHALL:  -- and always, but --

3            THE COURT:  Seems good.

4            MR. SCHALL:  -- I can imagine documents related to

5    my client's liabilities that, you know, could be presented

6    to the Court that definitely --

7            THE COURT:  Well, if we just think about what the

8    affidavit form asks for --

9            MR. SCHALL:  Yeah.  For sure.

10            THE COURT:  -- wouldn't we want to know, right,

11    surely?

12            MR. SCHALL:  So two questions.  The first

13    following on that is how would the Court like to receive

14    those documents ex parte?

15            THE COURT:  Well, I -- I think again, some -- some

16    of it may depend on how many you come up with, but assuming,

17    Counsel, you're able to meet your goal of not having a huge

18    amount of documents, you can -- I think you can do a couple

19    of different things.

20            And some of it's going to depend I think on the

21    comfort that you have.  These are going to be sensitive

22    financial documents, aren't they, and they're going to have

23    personally identifying information, probably Social Security

24    numbers, you're not going to want to redact all that stuff.

25    That's going to be a mess.

34

1          So you could -- you certainly could email those

2     things to my chambers.  You could do that.  If you are -- if

3     you are a little nervous about transmitting them by email,

4     you could perhaps -- you could -- you could get -- send to

5     chambers, you know, a thumb drive, and we would look at them

6     that way.  That would --

7          MR. SCHALL:  Or I can --

8          THE COURT:  -- be okay too.

9          MR. SCHALL:  I can establish a secure link with a

10    password if the Court would like.

11         THE COURT:  I think we can do that.  Ms. Vo, is

12    there any prohibition on our utilizing links through the --

13    through the secure -- you know, these secure links?  I -- at

14    one point I heard that our IT department might be a little

15    fussy about that, but as IT departments are always fussy

16    about things.

17         But Ms. Vo, do you think if -- if we could get a

18    secure link to -- with counsel, it would be okay?  Do you

19    see any issue with that?

20         THE DEPUTY:  Your Honor, I don't.

21         THE COURT:  And the Government could do that too.

22         THE DEPUTY:  I just -- I just kind of want to get

23    some more detail on how that would -- which link or which --

24         MR. SCHALL:  So it would be Microsoft Teams.

25         THE COURT:  What do you think about that?

35

1          MR. SCHALL:  They rule the world anyway, so...

2          THE COURT:  Yeah.  To be sure, yeah.  Do you think

3   we -- we could actually get back with you, Counsel.

4          MR. SCHALL:  Okay.

5          THE COURT:  Why don't -- why don't we do that, Ms.

6   Vo.  Why don't we run to ground some information about how

7   our IT folks would be most comfortable doing that.

8          And you know what?  We can just do this

9   informally.  We can have chambers or Ms. Vo send all counsel

10  here an email and say, "Here's how we're going to do it."

11  Would that be okay?  Let's do that.  And then the Government

12  can use that too, although I know you're going to be sharing

13  yours, but I'm happy to receive yours that way too.

14         MR. SCHALL:  My second point, which might be not

15  -- a non-point, but I don't actually know which or all of

16  the affidavits that the Government has requested or received

17  that Judge Domenico is going to decide.  There's -- I

18  understand my client --

19         THE COURT:  The affidavits?  I'm so sorry,

20  Counsel.  Which affidavit?

21         MR. SCHALL:  The CJA '23 --

22         THE COURT:  Oh, oh.

23         MR. SCHALL:  -- financial affidavit.

24         THE COURT:  I'm sorry.  Okay.

25         MR. SCHALL:  I -- I understand my client has

36

1    submitted three over the course of the case.

2              THE COURT:  To Judge Domenico?

3              MR. SCHALL:  No.  One very --

4              THE COURT:  Oh.  In this case?

5              MR. SCHALL:  This case predates everyone in this

6    courtroom except the defendants, Your Honor, and the first

7    --

8              THE COURT:  I see.

9              MR. SCHALL:  -- affidavit was at the time of his

10   original arrest in July of 2020.  There was a subsequent

11   affidavit that was submitted, and the -- the affidavit that

12   was submitted that lead to the appointment of current

13   counsel occurred in December of 2022.

14             THE COURT:  Let me -- let me scroll down to that.

15   So the Tews had private counsel before that time.  Is that

16   the case?

17             MR. SCHALL:  For the majority of the case they had

18   private counsel, one attorney between them.

19             THE COURT:  I see.  So I'm -- I'm with you, Judge

20   Mix, yes, sounds right?  Judge Mix issues a minute entry on

21   December 9, 2022 in which she ordered defendants to submit

22   financial affidavits.  So there was obviously -- well, I'll

23   -- I'll assume there was a change in circumstances there,

24   and that prompted this.  So I see that.  And then did she

25   review those ex parte and -- and make the CJA --

1           MR. SCHALL:  I presume, Your Honor.

2           THE COURT:  -- CJA order?

3           MR. SCHALL:  I -- I didn't show up on scene until

4    six weeks later.

5           THE COURT:  Mr. Bornstein, was he was predecessor?

6           MR. SCHALL:  He -- he was.  He represented both

7    defendants --

8           THE COURT:  Oh, I see.

9           MR. SCHALL:  -- under a CJA appointment for a

10   brief time, something like a month before that --

11          THE COURT:  Oh, I see.

12          MR. SCHALL:  -- dissolved and resulted in first

13   Mr. Kaplan being appointed, and Mr. Bornstein remained on

14   for Mr. Tew, and then the realization --

15          THE COURT:  Okay.

16          MR. SCHALL:  -- hitting that that wasn't going to

17   work and Mr. Bornstein withdrawing and myself being

18   appointed for Mr. Tew.

19          THE COURT:  I see.  I see.  Okay.  So back to your

20   question, Counsel, because I just want to -- I just want to

21   watch you stand up and down.  That's --

22          MR. SCHALL:  I don't mind.

23          THE COURT:  You know you don't have to stand up.

24   But you were making a point though about the affidavits, and

25   I'm sorry.  Could you take me back to that point now that

38

1    I've oriented myself here in this voluminous docket?

2            MR. SCHALL:  Yes.  I -- I understand, and perhaps

3    I'm wrong, if wouldn't be the first time, that the affidavit

4    in real question is the one from December of 2022 because

5    prior to that, they had private counsel, and for the vast

6    majority of the time, there were no issues there.

7            And it's only after the appointment of counsel

8    pursuant to that affidavit, December of 2022 --

9            THE COURT:  Oh, I take your point, yeah.

10           MR. SCHALL:  -- that the -- that we're here today.

11           THE COURT:  Right.  So I think, Counsel, if I

12   could just kind of take that to the next level, well, this

13   informs then potentially the scope of the documents that

14   would be relevant for the Court to take a look at.  Yeah.

15           And Mr. Fields and Ms. Weiss, I don't know if you

16   agree with that or not, but you maybe just think about that.

17   Yeah.

18           MS. WEISS:  Your Honor, I believe sort of in

19   accordance to my reading of Judge Domenico's minute order

20   from before, that any question about the propriety of any

21   prior affidavits, whether that be the one from December 2022

22   or any of the ones prior to that, is a matter that we wants

23   to retain --

24           THE COURT:  But aren't I --

25           MS. WEISS:  -- control of.

1            THE COURT:  -- going to have to take a look at

2    that?

3            MS. WEISS:  I think it --

4            THE COURT:  Aren't I going to have to do that?

5            MS. WEISS:  So yes and --

6            THE COURT:  It's a tricky question, isn't it?

7            MS. WEISS:  Yes and no.  Let's -- let's picture a

8    universe in which they or a hypothetical defendant has lied

9    flat out on every five or six CJA affidavits going forward,

10   and they -- that's easily provable that they committed

11   perjury on those prior affidavits.  They're remanded into

12   custody.  They now have no income, and all of the assets are

13   gone.  That doesn't change necessarily their prior lies

14   whether or not they would be accorded counsel moving

15   forward.

16           And that's why I say this is not a static

17   determination, and it could change, and it really goes to

18   the credibility of -- of any assertions that they might make

19   in their next affidavits.

20           But if you could prove that the next affidavit

21   that was completely above board and did show they were

22   eligible, then the right thing for this Court to do would be

23   to appoint them counsel under CJA.

24           THE COURT:  Okay.

25           MS. WEISS:  Just the fact that you committed

40

1    another crime before doesn't mean that now you're ineligible

2    for --

3              THE COURT:  Of course.

4              MS. WEISS:  -- rep -- eligible for the

5    representation going forward.

6              THE COURT:  Okay.  Well, so with -- with all of

7    that, Counsel, I'm going to leave to the respective parties

8    what you wish me to review in connection with the two ex

9    parte hearings, one for Ms. Tew, one for Mr. Tew that this

10   Court is going to conduct.

11             And I -- so I'm going to leave it to you.  You've

12   heard the discussion.  You make a decision there.  I'm not

13   going to cabin any of you right now or restrict any of you

14   in terms of what you can give to me.  And then of course,

15   I'll hear arguments from counsel at the ex parte hearing as

16   well.  Now -- hearings as well.

17             So I think what we need to do, folks, though is I

18   think we need to get down to the order of business, which is

19   to set these hearings, don't we?

20             MR. KAPLAN:  May I interject one more concern?

21             THE COURT:  All right.  Go ahead, Mr. Kaplan.

22             MR. KAPLAN:  You know, other than, you know, when

23   eligibility is determined, you know, day in and day out,

24   there's an affidavit that the -- that the defendant fills

25   out, it's reviewed by a magistrate.

41

1            THE COURT:  Sure.

2            MR. KAPLAN:  And a determination is made.  Here we

3    have more documents that could conceivably be presented you,

4    right, for this kind of hearing.  The Government has sought

5    to see the affidavits that were filed prior in -- in this

6    case for potential investigation into the perjury --

7            THE COURT:  Yes.

8            MR. KAPLAN:  -- and the possibility of perhaps

9    another indictment of criminal conduct.  So one of the

10   things that I'm having a difficult time discerning as to how

11   I should advise my client is simply because it's ex parte

12   doesn't necessarily mean that the Government can't seek the

13   release of the information that's gone before the magistrate

14   as they're trying to do here with the affidavit.

15           THE COURT:  Well, I --

16           MR. KAPLAN:  (Indiscernible).

17           THE COURT:  I suppose that's true.

18           MR. KAPLAN:  Right.  So while we say it's ex

19   parte, I'm seeking some guidance as to whether the documents

20   that we may provide the Court to make this determination is

21   going to eventually be sought by the Government to perhaps

22   evaluate as to whether it is the basis for further criminal

23   prosecution.

24           And you know, that's a thought I have, which will

25   be something that I need to advise my client.  Now, if my

42

1    client says to me or -- or I say to the client, "Well, the

2    Court says it's ex parte.  That usually means that the other

3    party doesn't get to see it."

4            THE COURT:  Well, that's what I mean.

5            MR. KAPLAN:  Well --

6            THE COURT:  When I say ex parte.

7            MR. KAPLAN:  That's probably --

8            THE COURT:  I mean, I -- I get your point.

9    They're now seeking -- the United States is now seeking to

10   see some of those things that you would have assumed were

11   presented ex parte.

12           MR. KAPLAN:  That's right.

13           THE COURT:  Well, I mean, I guess -- I guess

14   Counsel, here -- here's what I would say firstly, which is I

15   think I've got to do it because I've got a charge now to --

16   to do this.  If -- if you're asking me to say I -- that the

17   Court is going to order that the United States of America

18   cannot come back at some point in the future and argue about

19   whether this ex parte proceeding ought to at some -- in some

20   level be revealed to them or the contents of that

21   proceeding, I -- I -- if that's -- if that's your request,

22   if you're asking for the Court to order that and say for all

23   time this will always be sealed, I don't see how I can do

24   that.  I mean, perhaps you can provide me some law that

25   would make -- that would prompt me to do it.

43

1          But as -- as of right now, I think all I can tell

2     you is my view is that these hearings will be conducted ex

3     parte.  I -- what more I guess can the Court do at this

4     point in time?

5          I -- I can't -- I don't think that -- I don't

6     think I can order the United States of America never to seek

7     that it be inquired into, and of course if they were to do

8     that, that would be a matter probably for a superior judge

9     to me to decide.

10          But I mean, what do you think?  Are you asking me

11     to do that?  Are you going to -- will you file a motion and

12     ask for that?  And I guess I will consider it and consider

13     all the -- all the relevant law if Judge Domenico were to

14     refer to that.  But is that sort of how you're thinking

15     about this?

16          MR. KAPLAN:  Yes.

17          THE COURT:  Okay.  Well --

18          MR. KAPLAN:  I mean, you know, I am.  And I guess

19     I could make the request now, and then decide whether I'm

20     going to follow it up with a written motion.  It's just --

21     it's intuitive it me to say when I'm talking to my client,

22     we've heard ex parte.  This is what I understand ex parte

23     is.

24          But as the Court indicates, and I don't take much

25     issue -- I don't take any issue with you -- you suggesting

44

1    that it would be difficult to issue an order preventing the

2    Government from seeking something in the future, but it

3    really guts the idea of an ex parte presentation of evidence

4    that after it's over, I have to litigate whether they get

5    anything.

6            THE COURT:  Okay.  Well, to the extent you may be

7    making a motion right now, first of all, to the extent I

8    would have the authority to address the motion, denied at

9    this point.  And you can certainly -- shall we say, denied

10   without prejudice.  We're being a little informal here,

11   aren't we?  Because you're being a little bit informal too,

12   Mr. Kaplan.  But I understand your point.  It's a very

13   serious one.

14           But I would -- I would deny an oral motion on that

15   point today, and of course you could file that.  You could

16   file such a motion in advance of the hearing and we could

17   litigate that, I guess, and we would see if -- if Judge

18   Domenico would in fact refer that motion to me.  I don't

19   know whether he would.  But I think that would be -- I think

20   would that be an issue that should not be of course decided

21   on the fly.

22           I don't know, Ms. Weiss and Mr. Fields, do you

23   have an immediate reaction to that?  If you'd like to say

24   something, you certainly can and -- or if not, that's fine.

25           MS. WEISS:  Your Honor, I'll speak in civil terms

45

1    because I think there's an analogy here to be made.  The

2    advice from counsel, don't make a fraud on the Court, don't

3    defraud the Court in this ex parte motion, there's not going

4    to be any further risk of criminal exposure, right?

5         And even if the Government were to see it, that

6    wouldn't be a problem.  It's similar to piercing the

7    corporate veil, right?  There isn't anything to pierce is if

8    there is no underlying criminal conduct.

9         MR. SCHALL:  That -- that -- I'm sorry.

10        MR. KAPLAN:  Go ahead.

11        MR. SCHALL:  But the problem here is that they

12   can't change an affidavit in the past.  You know, what the

13   Government has suggested is a perjury charge based on that

14   affidavit.

15        So if Mr. Tew comes into the ex parte hearing and

16   testifies about his incomes and they match the bank records

17   1,000 percent, that's not a fraud on the Court, but it is

18   almost certainly evidence that he has sworn under oath

19   before this Court that could be used to support a perjury

20   charge in their telling of it.

21        And so it's -- it's basically -- it's not evidence

22   as to the charges he's been convicted of, which arguably he

23   doesn't have a Fifth Amendment right to anymore, it's an

24   additional charge.  It's like a whole new kit and caboodle

25   that they could seek to use against him for doing just what

46

1    she says, being honest with the Court.  And that's the trap.

2              THE COURT:  Well, you -- there's a tension there,

3    as --

4              MR. SCHALL:  Sure.

5              THE COURT:  -- as you say.  So listen, Ms. Weiss

6    has offered her view.  I'm not going to tell any of the

7    counsel how to advise their clients, but -- but here, let's

8    -- let's just -- let's just take this down to the essence of

9    the thing now.  Let's -- let's look right at the essence of

10   the thing and where we are today and what we need to do.

11             Am I hearing in these arguments that, Counsel,

12   perhaps you've changed your mind and you no longer wish this

13   Court to conduct an ex parte hearing?  Because I'm telling

14   you that indeed, I'm ordering it.  That -- that is my view.

15             I -- I have to figure this out.  I have a charge

16   here, I have to figure it out.  I think it should be done ex

17   parte.  The Government has consented to that, and I

18   appreciate that.  So my view is that we should proceed with

19   these.

20             MR. SCHALL:  I -- I agree, Your Honor.  I'm not

21   diverging from that request for an ex parte hearing.

22             THE COURT:  Okay.

23             MR. SCHALL:  I'm just digging in a little bit to

24   Mr. Kaplan's inquiry, which is how -- how much do I put my

25   client at risk by putting him on the witness stand or

1    introducing documents?  Documents, way less of an issue, I

2    think.  The Government has better access to documents than

3    anyone, but I better --

4              THE COURT:  And -- and to be clear, Counsel, I'm

5    not going to tell you how -- what you are --

6              MR. SCHALL:  Sure.

7              THE COURT:  -- what you should or how you

8    shouldn't -- what you should present or how you should do

9    it.

10             MR. SCHALL:  Understood.

11             THE COURT:  I'm not going to do that.  You know --

12             MR. SCHALL:  I --

13             THE COURT:  -- I won't do that.

14             MR. SCHALL:  I wish you would, Judge.

15             THE COURT:  Would you?  You want an order on that

16   point, you shall do this.  Yeah.  I'm disinclined, that I'll

17   tell you.

18             MR. SCHALL:  But -- but it's just no one in this

19   room, I'm presupposing, has ever done a hearing like this in

20   these circumstances.

21             THE COURT:  We -- we are in a unique situation.

22             MR. SCHALL:  That's right.  That's right.  And so

23   --

24             THE COURT:  Yes, we sure are.

25             MR. SCHALL:  -- that -- that's where we find

48

1    ourselves, so...

2              THE COURT:  Yes.  And I do understand.

3              MR. SCHALL:  But we definitely still want that ex

4    parte hearing.

5              MR. KAPLAN:  Yes.  And I -- I agree.  Just so you

6    know, I mean, how that happens and whether I make further

7    records as to it, you know, the -- the --

8              THE COURT:  Or wish to file a formal motion.

9              MR. KAPLAN:  Or wish to file a formal motion.  I

10   mean, because the other thing is that I assume if we don't

11   -- you know, if we don't participate, then that probably

12   denies her counsel.  I mean, you know, now -- because look,

13   the other thing I want to say is I appreciate what Ms. Weiss

14   says about the Court, for one, it's in the eyes of the

15   beholder.

16             THE COURT:  Is it in every case?

17             MR. KAPLAN:  No, not in every case, but I

18   certainly am not going to rely on the Government telling me

19   what a fraud is.

20             THE COURT:  All right.  Fair enough.  I take your

21   point.  Okay.  Well, and these are issues you can raise at

22   the hearing.  You can raise these by means of a motion

23   before or after the hearing.  And anything that is referred

24   to me, be assured I will consider it thoroughly and

25   carefully.

```
 1              Okay.  So when shall we set these folks?  Now --
 2    and -- and how long do you think you need?  I mean, I could
 3    imagine these being done in a fairly short amount of time,
 4    but I -- but as I noted before, I'm not going to restrict
 5    you.  I'm going to let you tell me how much time you think
 6    you need, and we're going to set these.
 7              Do you want them on different days?  I -- I assume
 8    you might, but -- and now, remember, you might submit your
 9    -- you're going to -- you're going to want to look at what
10    the Government is going to give -- give us.
11              MR. SCHALL:  Your Honor, we --
12              THE COURT:  So you'll want to build that in.
13              MR. SCHALL:  We have a limitation that Ms. Tew --
14              THE COURT:  We do.
15              MR. SCHALL:  -- (indiscernible), which is Ms.
16    Frost has an upcoming trial.
17              THE COURT:  Oh, I see.
18              MR. SCHALL:  And so --
19              THE COURT:  Another limitation.
20              MR. SCHALL:  Yeah.  I'll --
21              THE COURT:  I was thinking of Judge Domenico's
22    hearing.  I consider that --
23              MR. SCHALL:  Well, that's a --
24              THE COURT:  -- a limitation too.
25              MR. SCHALL:  They share that limitation, but we
```

50

1   would ask for Mr. Tew's to be somewhat expedited, maybe as

2   early as next week.

3               THE COURT:  Okay.

4               MR. SCHALL:  And -- and is the Court thinking an

5   afternoon or a morning?

6               THE COURT:  That's kind of what -- that is what I

7   was thinking.  Can I -- can I tell you --

8               MR. SCHALL:  Yes, please.

9               THE COURT:  -- I've kind of looked at this.  And

10  so Ms. Weiss and Mr. Fields, if we set this pretty quickly,

11  that does impose on you, you know, some time constraint

12  here.  I don't fully fleshed out with you.  What do you

13  think?  Could you -- well, you think about that and let me

14  -- along with Ms. Vo's help, let me take a look.  But I -- I

15  was, Counsel, thinking of that.

16              MS. FROST:  And just so the Court's aware.

17              THE COURT:  Sure.

18              MS. FROST:  I start jury selection on the 29th, so

19  a week from tomorrow, and then I'm in trial the first and

20  second weeks of April.  So that's what's going on with my

21  schedule.

22              THE COURT:  Sure.  And you want to be present for

23  the hearing too, Counsel?

24              MS. FROST:  Yes, Your Honor.

25              THE COURT:  Oh, I do understand.  In your trial

51

1    schedule, does the -- does the judge have any break days

2    during the week, like not do the -- do you know?

3              MS. FROST:  I'll be down in Arapahoe County.

4              THE COURT:  Oh.

5              MS. FROST:  And I'm good, but I don't think I can

6    get there and here and back.

7              THE COURT:  Oh, yeah.

8              MS. FROST:  The Government might object.  They

9    might think I should be able to do that.

10             THE COURT:  Transfer.  You're going to have to do

11   some kind of weird transmogrifying.

12             MS. FROST:  Yes.

13             THE COURT:  Okay.

14             MS. FROST:  That's why next week would be ideal

15   for us.

16             THE COURT:  Sure.  Well, and -- and Mr. Tew would

17   like to go first, you'd like to have his first?

18             MR. SCHALL:  I --

19             THE COURT:  That's fine.

20             MR. SCHALL:  Yes.

21             THE COURT:  I -- I don't -- I -- I have no -- I

22   have no preference.  Okay.  So here we are at the end of

23   March.  I have -- Ms. Vo, we could do Thursday afternoon,

24   the 28th, yes?

25             THE DEPUTY:  Yes, Your Honor.

52

1          THE COURT:  I think we could.  How does that

2     sound?  We could start as -- do you think, Ms. Weiss, that

3     you and Mr. Fields could get the documents to us?

4          MS. WEISS:  Yes.  The 28th?  Yes.

5          THE COURT:  All right.  And while they're talking,

6     Ms. Vo, perhaps we could get an email out to counsel

7     tomorrow about how to --

8          THE DEPUTY:  Your Honor, actually I was going to

9     raise that issue.  So it is best for IT security purposes,

10     now that I've conferred with our IT department, that counsel

11     would please submit those documents on a USB or a disk, and

12     please just deliver it to the Courthouse or mail it in.

13          THE COURT:  Or deliver it by Pony Express,

14     Counsel.  Could you do that?  Sorry about that link.  I'm

15     not surprised.

16          MR. SCHALL:  I'm not either.

17          THE COURT:  Yeah.  I'm -- I'm not surprised at

18     all.  So Ms. Weiss, with that, so if we -- does the 28th

19     work for you folks?  I know that's right before Ms. Frost

20     starts her jury selection, but I don't think I can get it

21     done any earlier.  I'm sorry.

22          MS. WEISS:  Sure.

23          THE COURT:  What do you think?  28th, what do you

24     think?

25          MR. SCHALL:  I mean, it is Texas Rangers' opening

53

1    day, Your Honor, but I'm skipping this year.  So I -- I can

2    do the 28th.

3              THE COURT:  I'll have to think about that,

4    Counsel.  That's going to be -- that's going to be something

5    I'm going to have to really set aside.  Yeah, yeah.

6    Cardinals, no?

7              MR. SCHALL:  Definitely not.

8              THE COURT:  Oh.

9              MR. SCHALL:  No.  The 28th --

10             THE COURT:  We're going to have an issue here.

11             MR. SCHALL:  We are.  There's always issues, Your

12   Honor.  The afternoon of the 28th is great.

13             THE COURT:  Can we do that, folks?  Shall we just

14   --

15             MR. SCHALL:  Can we start --

16             THE COURT:  We'll block the afternoon out.  What

17   time you want to start?

18             MR. SCHALL:  1:00.

19             THE COURT:  You want to start at 1:00?

20             MR. SCHALL:  1:00.

21             THE COURT:  Let me see here.

22             MR. SCHALL:  1:30.

23             THE COURT:  Folks, let me see what I've got.  I'd

24   rather 1:30, but if you really want to do 1:00, I'll make it

25   work.

54

1           MR. SCHALL:  1:30.

2           THE COURT:  1:30.  Now, Ms. Weiss, what do you

3    think?  Could you -- when can you get the documents, do you

4    think?

5           MS. WEISS:  If we got them to the Court by, say,

6    10:00 a.m. on Wednesday, would that give Your Honor enough

7    time, or we could try the end of the day on Tuesday.

8           THE COURT:  I'll take them Wednesday, Ms. Weiss.

9           MS. WEISS:  Thank you.

10          THE COURT:  I'll take them Wednesday.  Now, how

11   about you folks though?  Because you're going to get them

12   too.  Does that give you enough time?  That may be the more

13   important consideration.

14          MR. SCHALL:  I'm guessing we've got most of them

15   already.

16          THE COURT:  Is that -- is that probable?  Okay.

17   Well, so okay then.  All right.  Ms. Weiss, and you know, if

18   you want to just -- could you drop it off in -- have someone

19   drop it off in chambers?  Would that work okay?

20          MS. WEISS:  Yes, Your Honor.  And if you would --

21          THE COURT:  That might be better.

22          MS. WEISS:  -- permit just a very short brief

23   outline of why we believe these documents are relevant and

24   answering some of the questions that have come up today,

25   we'll keep that very, very brief.  And then you can consider

55

1    us to have said our peace and conduct the ex parte hearing.

2            THE COURT:  And would you want that to -- I

3    presume you'd want to just submit that with your -- with the

4    documents, or do you want to file that?  I mean, because

5    these folks obviously aren't going to be filing anything.

6            MS. WEISS:  Correct.  We can either file it as a

7    Level II restriction so it's visible only to the parties and

8    the Court if it's making specific references to any of the

9    documents themselves.

10           THE COURT:  Why don't you do that, and then that

11   -- then everybody can access it pretty easily, and you won't

12   have to worry about emailing it.  Why don't you do that.

13   Can you do that by 10:00 on Wednesday too?

14           MS. WEISS:  Absolutely, yes.

15           THE COURT:  All right.  Thank you very much for

16   that.  All right.  So that's what we're going to do.

17           Now, if you folks want to give me something ahead

18   of time, you can too.  You know, the earlier you can do it,

19   the better, but I get it.  You can't always do that, right?

20   And you may not know what you want to show me until you see

21   what the Government's shown me, right?  So we'll work --

22   we'll work with that because we'll have time that afternoon,

23   and you can walk me through anything that I might not have

24   had a lot of time to absorb.  How does that sound?

25           So that's what we're going to do.  We're going to

56

1    have Mr. Tew's hearing at 1:30.  We'll block out the rest of

2    the afternoon.

3            Now, let's set Ms. Tew's hearing as well.

4    Obviously we're not doing that next week.  So folks, I'm

5    just clicking through here.

6            Folks, can I tell you the week of April 1 is not

7    great for me.  Ms. -- Ms. Vo, what were you thinking?

8    Perhaps the afternoon of the 3rd though?  I said that -- no.

9    We have a -- we have a really significant hearing that

10   afternoon.  A settlement conference on the 4th now.

11           THE DEPUTY:  Your Honor, I'm looking at April

12   15th, if that looks good to you.

13           THE COURT:  That's pretty close to your hearing,

14   folks, with Judge Domenico.

15           MR. KAPLAN:  What date was that?

16           THE COURT:  April -- she said April 15th, an

17   auspicious date, right?  Okay.

18           MR. KAPLAN:  I mean, I don't -- I don't know.  I

19   don't know that it makes a difference that it gets close to

20   the date.  The question would be --

21           THE COURT:  Just so we --

22           MR. KAPLAN:  -- before or --

23           THE COURT:  -- get it done before, you think?

24           MR. KAPLAN:  Yeah.  I mean, the -- the issue is

25   whether we should get it done or should get it done after.

57

```
1    I mean --

2            THE COURT:  Well, I think we've settled on we're

3    going to go ahead and do, Mr. Kaplan.

4            MR. KAPLAN:  Yeah, right.  Exactly right.

5            THE COURT:  Yeah.

6            MR. KAPLAN:  I said, but once you could decide

7    that, then I don't think it matters except the fact that if

8    you decide that they're no longer eligible --

9            THE COURT:  Well --

10           MR. KAPLAN:  -- there won't be counsel for them on

11   --

12           THE COURT:  Well --

13           MR. KAPLAN:  -- the 22nd.

14           THE COURT:  There -- there are all kinds of issues

15   like that, and you know, I -- I understand, and we're going

16   to be talking through all of that.  Okay.

17           MR. KAPLAN:  Which is one of the practical things

18   that makes this --

19           THE COURT:  I know.

20           MR. KAPLAN:  -- kind of (indiscernible).

21           THE COURT:  And that is what prompts the

22   cogitation remark that beginning of the hearing.  Ms. Weiss?

23           MS. WEISS:  Your Honor, and just to make the

24   record very clear so we don't waive anything that we don't

25   want to waive here, this is an argument about eligibility
```

58

1    for CJA reimbursement.  It is not an argument about whether

2    or not these counsel can remain on the case as privately

3    paid attorneys.  Those are separate legal issues.

4          MR. KAPLAN:  That's -- you know, if that's the

5    case, then that's exactly what Judge Domenico is going to

6    decide.  I don't know why we are -- you know, why we're

7    doing something that -- that's -- that the Government agrees

8    -- and I'm not limiting your evidence as to -- as it relates

9    to it, but agrees that it has to do with whether or not they

10   have a continuing obligation.

11         THE COURT:  Yeah.  Well --

12         MR. KAPLAN:  You know, and so why are we going

13   through -- you know, why are we going through this?  I agree

14   that if they want to make this -- the -- the -- take the

15   position that they should be reimbursed, that's in essence

16   what -- what's still part of what Judge Domenico's doing.

17         Why are we putting us all through -- through the

18   work and the -- and the scheduling just to have the same

19   issue decided that Judge Domenico has reserved for this

20   decision?

21         THE COURT:  Well, that -- that might be a better

22   question to ask him, Counsel, but okay.

23         MR. KAPLAN:  Well, no.  You're right, except that

24   if -- if -- if what the Government wants to do is determine

25   whether they are continually entitled to do it, but that

59

1    they want us to stay, you know, if the Court finds that they

2    no longer qualify, then it seems to me if we're going to go

3    through this, then counsel should walk out the door if

4    that's the determination.

5           If the determination is whether they should

6    reimburse, then -- then that's going to be decided -- you

7    know, that reimbursement is going to be more important from

8    the time that -- that the Government believes that they no

9    longer were eligible, which would be the trial finds, than

10   what is relatively nickels and dimes between the point of --

11   of -- of -- of the current ability to pay and the end of the

12   -- of the case in -- with -- with a sentencing.

13          THE COURT:  Okay.  Well, I'll hear you out further

14   on the day of the hearing.  Does the 15th work for the --

15   for you, folks?  We can do --

16          MS. WEISS:  Yes, Your Honor.

17          THE COURT:  Okay.  Well, and you -- of course you

18   won't be here, Ms. Weiss, but you may -- do you -- do you

19   imagine that you would be submitting separate documents for

20   us to consider regarding Mrs. Tew?

21          MS. WEISS:  Potentially --

22          THE COURT:  Okay.

23          MS. WEISS:  -- yes.  And so I -- and apologize.  I

24   sort of jumped up on that hearing date, but I think we could

25   submit the documents to that on Friday the 12th.

60

1              THE COURT:  Okay.  Does that -- does this date

2    even work for you, Mr. Kaplan?

3              MR. KAPLAN:  April 15th works, but I'd like the --

4    the -- I mean, especially since we're -- we've got that many

5    -- that much time.  I mean, I -- I -- you know, I appreciate

6    that I do work weekends, but I wouldn't --

7              THE COURT:  Well --

8              MR. KAPLAN:  I don't do it by design.

9              THE COURT:  Well, I'm -- I'm with you.  I get it.

10   Ms. Weiss, could you get them a little earlier perhaps?

11   That -- I know that I would -- along with Mr. Kaplan, I know

12   I would appreciate that too.

13             MS. WEISS:  Yeah.  I can try to get them in by the

14   end of the day, not close of business on the 11th, but

15   that's probably the best I can do.

16             THE COURT:  Mr. Kaplan, I -- I don't know.  We --

17   you've probably seen them, I'm -- I'm guessing.

18             MR. KAPLAN:  Well, no.  I mean, obviously I've

19   seen them.  I'm not going to make a big deal of the things

20   that -- that I already have, but can you not get -- I mean,

21   we could have had a hearing date a week earlier, then the

22   Government would have to provide it to me.

23             Why do we have to come right up to two days before

24   -- you know, two working days before when, depending on the

25   schedule, they would have had it done -- to do it a week

61

1    earlier?

2           THE COURT:  Well, okay.  Ms. Weiss and Mr. Fields,

3    and may respectfully ask that you -- here's what I'm going

4    to do, Mr. Kaplan.  Noon on the 10th, could you, please?

5           MS. WEISS:  I will make that happen, Your Honor.

6           THE COURT:  Thank you.  Thank you.  Mr. Kaplan,

7    that work okay, a little better for you?  Okay.  Let's --

8           MR. KAPLAN:  I appreciate the Court's push.

9           THE COURT:  Let's do it that way.  Let -- let's do

10   it that way.  And -- and then would you -- I don't know why

11   we have this amazing open day in the middle of April.  I

12   can't even quite imagine how that happened.  Would you

13   rather morning or afternoon, Mr. Kaplan?

14          MR. KAPLAN:  And that's on the 15th?

15          THE COURT:  Yes, sir.  We could do 1:30 just like

16   we're doing for Mr. Tew.

17          MR. KAPLAN:  Yes.  That would be good.

18          THE COURT:  You want to do that?

19          MR. KAPLAN:  I do have something set in the

20   morning I probably could get covered, but I wouldn't have

21   to.

22          THE COURT:  No.  Let's just do it in the

23   afternoon, okay?  So -- and we'll just block out the whole

24   afternoon, okay?  And so you folks submit to me anything

25   you'd like me to look at in advance too, but will you kind

**PATTERSON TRANSCRIPTION COMPANY**
scheduling@pattersontranscription.com

62

1    of also just do it on the day of the hearing?  That's okay

2    too, okay?

3            All right, folks.  So we have our hearings set.  I

4    very much appreciate the thoughtful arguments from all the

5    counsel today.  And is there anything before we depart here

6    from our status conference that we ought to accomplish

7    today?

8            Mr. Weiss and Mr. Fields, anything on behalf of

9    the United States?

10            MS. WEISS:  No, Your Honor.  Thank you.

11            THE COURT:  Thank you very much.  And Counsel, Mr.

12    Tew's?

13            MR. SCHALL:  I don't think so, Your Honor.

14            THE COURT:  Thank you.  And Mr. Kaplan?

15            MR. KAPLAN:  No, Your Honor.

16            THE COURT:  All right.  Well, again, it's been

17    very, very nice to see all of you.

18            THE DEPUTY:  Your Honor?

19            THE COURT:  Ms. Vo has something, yes.

20            THE DEPUTY:  I just want to say if counsel intends

21    to deliver the USB driver or mail it in, please just have

22    some kind of note on there that says, "Please do not

23    docket," just for -- "Please send directly to Judge Prose's

24    chambers."

25            THE COURT:  Oh, thank you.  We want to make sure

1    that it just gets directly to me obviously.  Okay.  And if

2    you really only have a few documents, you could email too.

3    That would probably be okay.  Go ahead.

4         MR. SCHALL:  I was just going to say once bit,

5    twice scorned or whatever --

6         THE COURT:  Oh.

7         MR. SCHALL:  -- the expression is, I'm going to

8    password protect whatever I get and email it to chambers,

9    the password because --

10        THE COURT:  Of course.  That's fine.

11        MR. SCHALL:  -- in the wrong clerk's hand, the

12   last thing I want is any submission to a peer.

13        THE COURT:  Of course.

14        MR. SCHALL:  Yeah.  So --

15        THE COURT:  Of course.

16        MR. SCHALL:  -- just to be extra safe.

17        THE COURT:  And, Counsel, you may all wish to do

18   that.  Password protection, that's the word of the day.

19   Thank you for bringing that up.  So all right, Counsel.

20   It's so very nice to speak with you.  I'll look forward to

21   receiving the documents from the United States.  I'll look

22   forward to speaking with -- with all of you again on the --

23   on the dates we've chosen.

24        In a very unusual set of circumstances, I am going

25   to actually ask that the courtroom be cleared now for our

64

```
1    next proceeding and that we do so as expeditiously as we

2    can.  It's so nice to see you.

3              (Whereupon, the within proceedings concluded at

4    5:05 p.m.)

5

6                    TRANSCRIBER'S CERTIFICATE

7              I certify that the forgoing is a correct

8    transcript, to the best of my knowledge and belief (pursuant

9    to the quality of the recording) from the record of

10   proceeding in the above-entitled matter.

11

12   /s/Brittany Payne                 January 28, 2025

13   Signature of Transcriber                 Date

14

15

16

17

18

19

20

21

22

23

24

25
```

**PATTERSON TRANSCRIPTION COMPANY**
scheduling@pattersontranscription.com